Angela Swan, #213793
THE LAW OFFICES OF ANGELA SWAN,
A PROFESSIONAL CORPORATION
21151 South Western Avenue, Suite 177
Torrance, CA  90501
Office Telephone:     (310)755-2515
Facsimile:              (310)878-0349
Email:           aswan@angelaswanlaw.com

Attorney for Plaintiffs MELODY J. RODGERS; JUDY G. RODGERS; LUCILLE D. GAY; MELONY RODGERS; HARMONY RODGERS; SYMPHONY BROWN; and PRESTON BROWN

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION-LOS ANGELES

| | |
|---|---|
| MELODY J. RODGERS; JUDY G. RODGERS; LUCILLE D. GAY; MELONY RODGERS; HARMONY RODGERS; SYMPHONY BROWN; and PRESTON BROWN, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF CALIFORNIA; LOS ANGELES COUNTY; DEPARTMENT OF CHILDREN AND FAMILY SERVICES; LOS ANGELES POLICE DEPARTMENT and CHILDREN'S LAW CENTER; and DOES 1 through 10, Inclusive,<br><br>Defendants. | CASE NO.:  2:22-cv-02418-FMO-PLA<br>Courtroom:  6D<br>Dist. Judge: Hon. Fernando M. Olguin<br>Complaint Filed:  January 25, 2022<br><br>**[PROPOSED] SECOND AMENDED COMPLAINT FOR DAMAGES, and DECLARATORY AND INJUNCTIVE RELIEF**<br>  1.  VIOLATION OF 42 U.S.C. 1983<br>  2.  VIOLATION OF 42 U.S.C. 1985<br>  3.  VIOLATION OF 42 U.S.C. 1986<br>  4.  MONELL RELATED CLAIMS – (LAW ENFORCEMENT EXCESSIVE FORCE/FALSE IMPRISONMENT/ SOCIAL WORKER MISCONDUCT/ PROSECUTORIAL MISCONDUCT)<br>  5.  MALICIOUS PROSECUTION/ ABUSE OF PROCESS<br>  6.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br>  7.  DEFAMATION OF CHARACTER – SLANDER and LIBEL |

## SECOND AMENDED COMPLAINT FOR DAMAGES

1

)     8.   BREACH OF FIDUCIARY
)     9.   LEGAL MALPRACTICE
)     10.  FRAUD UPON THE COURT
)     11.  ULTRA VIRES ACTS
)     12.  DECLARATORY RELIEF
)     13.  TEMPORARY RESTRAINING
) ORDER, PRELIMINARY AND
) PERMANENT INJUNCTION

**JURY TRIAL DEMANDED**

## I.    <u>JURISDICTION AND VENUE</u>

1.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1346 (civil action against the United States founded upon the Constitution, an Act of Congress, or an executive regulation), 28 U.S.C. § 1361 (action to compel officer or agency to perform duty owed to Plaintiff), and 5 U.S.C. §§ 701-706 (Administrative Procedure Act). An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 705-706.

2.   The United States District Courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs…  pursuant to 28 U.S.C. § 1332 (a).

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**2**

3.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e), because this is a judicial district in which the State of California resides and this action seeks relief for the State against federal agencies and officials acting in their official capacities.

## II.   CERTIFICATION OF COMPLIANCE CALIFORNIA TORT NOTICES & CLAIM FORM REQUIREMENTS

4.   I, MELODY J. RODGERS, hereby declare that Claim for Damage Notices were not mailed to the "Clerk of the Board of Supervisors" for the County of Los Angeles.

5.   In addition, civil rights actions the exhaustion of state remedies is not a prerequisite to the commencement of an action in federal court. *Cf. Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).  *See Heath v. Cleary* (9th Cir 1983) 708 2d 1376, 1378 (concluding that contrary pre-*Patsy* decisions Ninth Circuit are no longer authoritative).  As the Court stated in *Monroe v. Pope*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), "The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is involved."

6.   The doctrine of judicial exhaustion does not apply to § 1983 actions in federal court and it is well established that a § 1983 plaintiff need not exhaust State remedies prior to bringing a federal civil rights claim. *Embury v. King*, 191 F. Supp. 2d 1071, 1082-83 (N.D. Cal. 2001).

7.   Here, Plaintiffs have properly pled a cause of action under the **Federal Civil Rights Act**, in addition to other causes of action

## III.   <u>THE PARTIES</u>

8.   MELODY J. RODGERS ("Plaintiff MJR"), a natural person, is a private individual within the meaning of California law and is a citizen of the United States, and at all times relevant hereto a resident of North Carolina.  Plaintiff is the mother of minor children, Melony Rodgers, Harmony Rodgers, Symphony Brown, and Preston Brown.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

9.  JUDY G. RODGERS ("Plaintiff JR"), a natural person, is a private individual within the meaning of California law and is a citizen of the United States, and at all times relevant hereto a resident of Alaska.  Plaintiff is the grandmother of minor children, Melony Rodgers, Harmony Rodgers, Symphony Brown, and Preston Brow.

10. LUCILLE D. GAY ("Plaintiff LG"), a natural person, is a private individual within the meaning of California law and is a citizen of the United States.

11. Minor children Melony Rodgers ("Plaintiff MR"), Harmony Rodgers ("Plaintiff HR"), Symphony Brown ("Plaintiff SB"), and Preston Brown ("Plaintiff PB"), natural persons, are private individuals within the meaning of California law and are citizens of the United States.  Plaintiffs SB and PB, at all times relevant hereto a resident of California and children of Plaintiff MJR.  Plaintiffs MR and HR, at all times relevant hereto a resident of California and Alaska.

12. STATE OF CALIFORNIA ("Defendant CALIF"), acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint, is a California government that bears responsibility, in whole or in part, for the acts complained of in this Complaint, doing business in the County of Los Angeles, within the laws of the State of California.  It oversees official(s) to properly operate the Foster Care System, including the portions of the system operated by Defendant DCFS, relating to dependency cases, foster care, and termination of parental rights, *inter alia*, pursuant to the Adoption and Safe Families Act and the Family First Prevention Services Act of 2018.

13. LOS ANGELES COUNTY ("Defendant LA COUNTY"), acting under color of law, is a government that is defined and authorized under the California Constitution, California law, and the Charter of the County of Los Angeles.  The County government provides countywide services such as … law enforcement, jails, and social services.  Defendant LA COUNTY bears responsibility, in whole or in part, for the acts complained of in this Complaint.

---

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**4**

14. LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES ("Defendant DCFS") is an agency of the government of Los Angeles County, doing business within the laws of the State of California, acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint, and has a special relationship with Plaintiff MJR and owed a duty to comply with State laws, Federal Laws and the U.S. Constitution.  Defendant DCFS's operations involve investigating child welfare and abuse allegations, foster care, and adoption. Defendant DCFS files child welfare allegations in Edmund D. Edelman Children's Court, located in Monterey Park, California, and the Alfred J. McCourtney Juvenile Justice Center in Lancaster, California.  Defendant DCFS is represented by Los Angeles County Counsel.  Los Angeles Dependency Lawyers represents the parents and Children's Law Center represents the children.  Defendant DCFS breached its duties owed by taking Plaintiff MJR's children and placed them with foster parents or persons other than the biological parents without probable cause.  Defendant DCFS's Deputy County Counsel, Dependency Investigators, and Social Workers falsified reports and suppressed material evidence.

15. THE CITY OF LOS ANGELES POLICE DEPARTMENT ("Defendant LAPD"), acting under color of law, a government agency that bears responsibility, in whole or in part, for the acts complained of in this Complaint, doing business in the County of Los Angeles, within the laws of the State of California.  Defendant LAPD at accomplishing its mission on behalf of Plaintiffs; its mission is of safeguard the lives and property of the people they serve, to reduce the incidence and fear of crime, and to enhance public safety while working with the diverse communities to improve their quality of life. Its mandate is to do so with honor and integrity, while at all times conducting themselves with the highest ethical standards to maintain public confidence.

16. CHILDREN'S LAW CENTER ("Defendant CLC"), acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint, doing business in the County of Los Angeles, provides legal representation for children

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**5**

and youth under the jurisdiction of the dependency court; specifically, Angela Torres, Jamie N. Kim, Margaret Lee, and Alyson Bashor.  "Every staff member at CLC contributes to infusing every proceeding and decision that's made with the premise that kids should be with their parents whenever possible."

17. At times relevant rethroughout this complaint, Plaintiffs will collectively be referred to as "Plaintiffs."

18. At times relevant thoughout this complaint, Defendants will collectively be referred to as "Defendants."

19. Plaintiff is informed and believe, and on the basis allege, that during the times mentioned herein, Defendants collectively, and each of them are the agents, employees, partners, joint venturers, representatives, coconspirators, and assigns of their co-defendants and were, as such, acting within the scope, course, and authority of such agency, employment, partnership, joint venture, representation, conspiracy, and/or assignment, unless the context states otherwise.

## IV.   CONSPIRACY

20. Plaintiff MJR has demonstrated herein how Defendants conspired against her, inflicting continuous emotional distress, for one cause, "to permanently separate Plaintiff MJR's children from her."  The scheme consisted of removing Plaintiff MJR's children from their home, denying reunification services, terminating parental rights without cause, violating her Constitutional Rights, inter alia.

21. Defendants acted in concert and conspired together to commit the tortious acts described herein. Accordingly, these Defendants should be held jointly and severally liable for any damages awarded to Plaintiffs, as a result of this action.

## V.   STATEMENT OF FACTS

22. Plaintiff MJR, has four minor children: Plaintiffs MR, HR, SB, and PB.  Plaintiff MJR is a college graduate of the University of North Carolina at Chapel Hill and is

**SECOND AMENDED COMPLAINT FOR DAMAGES**

currently a 2nd-year law student at the Northwestern California University School of Law.  Plaintiff is also an award-winning, well-respected, former public-school teacher; she taught inner-city youth in Baltimore MD and Washington DC for 5 years through non-profit programs "Teach for America, Education Based Latino Outreach, and Financial Literacy Foundation."

23. Plaintiff taught all elementary school subjects including 1st Grade & 5th Grade, as well as, High School Finance, which is a category of Home Economics curriculum.  All Plaintiff MJR's students passed the end-of-year testing regardless of disability or aptitude.

24. Furthermore, Plaintiff MJR is a God-fearing mother of four whose aim has always been to raise her children to be respectful, hardworking, and contributing members of society with good morals and ethics based on the Holy Bible.

25. Plaintiff's Civil Rights and Due Process rights have been violated by the State of California and Los Angeles County officials and employees since 2016.

**A. Plaintiffs MR and HR**

26. Plaintiff MJR and her children became homeless due to financial hardship.

27. On February 2016, Plaintiff MJR told her therapist; ER Social Worker, Monica Rosenblum ("Rosenblum"), that she has been doing poorly in school and had wanted to drop her class; she told her therapist she needs a doctor's note stating that she could not handle the stress, in order to withdraw from her classes at the university. Rosenblum falsely reported to Defendant DCFS that Plaintiff MJR had expressed or implied that she planned on harming her kids, despite Plaintiff MJR, during that time, denying all those statements. Moreover, Rosenblum falsely stated she was a medical doctor.

28. On February 23, 2016, Defendant DCFS conducted an assessment at Plaintiff MJR's apartment and Defendant DCFS referred Plaintiff MJR to Kedren Community Health Center.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

7

29. On or about February 29, 2016, Michel H. Eisner, Deputy County Counsel, collectively with Co-Defendants filed a false Juvenile Dependency Petition against Plaintiff MJR and her children.

30. On or about February 29, 2016, Defendant MARPET announced false statements to the public regarding Plaintiff MJR's criminal history, as means of preventing Plaintiff MJR from obtaining gainful employment. Additionally, Defendant DCFS prevented Plaintiff MJR from adequate visits with her children and never allowed "reunification services" as normally provided under Welfare & Institutions Code § 300 et. seq..

31. On March 22, 2016, Juvenile Dependency Court unlawfully found that Plaintiffs MR and HR were children described by section 300, subdivision (b)(l) without a valid cause. The sustained section 300 Petition documented that Plaintiff suffered from mental and emotional problems that rendered her incapable of providing regular care for Plaintiff MR and HR.

32. Plaintiff MJR was getting psychological counseling and declared fit by her Psychologist and the same was communicated in a letter to Defendant DCFS's Social Worker, "It appears that Melody has now corrected most of the areas of difficulty and is a fully committed mother. She spent considerable time this Christmas season making a nice holiday for her children, and her neighbors in her new apartment; helping others who were alone."

33. In a report by Psychologist, Sharon Valentino ("Valentino"), states that she began seeing Plaintiff MJR, December 2016 until about the end of January. Valentino states in her report that Plaintiff MJR saw her for issues relating to her children and her parenting of her children.  It concluded that all problems that Plaintiff MJR previously had are now resolved, that she is now able to be a good mother, and she could have them full time to properly raise her children. However, Defendant DCFS did not communicate the latest medical update to the Court, which misled the Court in making a prejudicial error in its judgment.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**8**

34. On March 27, 2016, after Plaintiff MR informed her mother, Plaintiff MJR, that her Foster Parent spanked her, Plaintiff MJR refused to return the children to the Foster Parent; instead, Plaintiff MJR took the to the police station. The police and an in-house social worker found no evidence of abuse and released the children to the caregiver.

35. On April 06, 2016, the Juvenile Dependency Court made an order placing Plaintiffs MR and HR with their maternal grandmother, Plaintiff JR.

36. From April through September 2016, Plaintiff MJR resumed therapy at Kedren Community Health Center ("Kedren") with a Psychiatrist, where she participated in at least seven sessions ranging in duration from 30 to 90 minutes; after evaluation, she was not recommended medication.

37. During the month of December 2016, Plaintiff MJR underwent online services with a therapist.

38. August 2017, a Kedren therapist reported that Plaintiff MJR had "been working on treatment goals which include utilizing positive coping skills to manage daily stressors and positive parenting psycho-education." He reported that Plaintiff MJR had been compliant over the past four months with her mental health treatment and that she denied ideations of self-harm and harm to others. The therapist also reported that she presents engaged in sessions and motivated to complete the court-ordered plan.

39. On September 20, 2017, Defendant DCFS recommended terminating family reunification services.  Despite, Defendant DCFS acknowledging that Plaintiff MJR appeared to be in literal compliance with her court-ordered programs, including individual therapy and parenting classes, and relayed Plaintiff MJR's expression of love and affection for her daughters, it sustained that it believed "mother's continued unpredictable behavior would be detrimental to Plaintiffs MR and HR's health and safety, particularly at their young ages."

40. During the weekend of October 7 - 8, 2017, Plaintiff MJR and her maternal grandmother had an argument that led to a physical altercation.  Plaintiff MJR had taken maternal grandmother's car to the carwash and while there, threw away some items that

**SECOND AMENDED COMPLAINT FOR DAMAGES**

9

was in the car. Maternal grandmother became outraged when she found out. The argument became physical and maternal grandmother reported to Defendant DCFS that she filed a police report.  Plaintiff MJR immediately told her DCFS Social Workers that when her maternal grandmother found out that she had thrown out her things, she pushed and scratched her and was acting like "a crazy maniac."  This event would play a significant role in the Court's ultimate decision regarding the removal of Plaintiff MJR's children.

41. On November 15, 2017, Defendant DCFS filed an Ex-Parte Application pursuant to section 385 to modify Plaintiff MJR's visitations from unmonitored to monitored.

42. By January 2017 Plaintiff MJR completed at least 12 sessions of parental education classes.

43. On February 13, 2018, the Juvenile Dependency Court terminated Plaintiff MJR's family reunification services stating that she failed to take responsibility for her actions and also failed to recognize how her behavior was alarming and could potentially be harmful to her children.

44. In May 2019, the Juvenile Dependency Court ordered legal guardianship for Plaintiffs MR and HR with their maternal grandmother, Plaintiff JR.


**B.  <u>Plaintiffs SB and PB</u>**

45.     Kernell Sterling Brown Jr. ("Kernell") is the father of Plaintiffs SB and PB.

46. Plaintiff MJR met Kernell in 2016.  At that time, Plaintiff MJR was emotionally traumatized and devasted, because her first two children Plaintiffs MR and HR were recently taken by Defendant DCFS, without cause.

47. Kernell was nice to Plaintiff MJR on most occasions but, as neighbors can testify, when he drank alcohol he became a completely different person. Kernell would become angry, get into arguments with the neighbors, and physically abuse Plaintiff MJR for any reason. On one of these occasions, Kernell demanded Plaintiff MJR's key to her white Ford Explorer. When Plaintiff MJR refused to give him the key, he hit her in the head

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**10**

and made her give him the key.  After he took the key, he drove Plaintiff MJR's SUV into the neighbor's car that was parked in the same parking lot.  After the collision with the parked vehicle, Kernell fell asleep in the driver's seat.  A male neighbor came and pull him from the car, and put the vehicle brakes on. The neighbor complained to Kernell that he had ruined her car and he promised to pay her $100 a month for the car which was worth about $600. Kernell begged Plaintiff MJR for the money to pay their neighbor and when Plaintiff MJR refused to give it to him, he smacked her, stole the debit card, and stole her money.

48. According to Cal. Pen. Code § 13701 (b), "Every law enforcement agency in this state shall develop, adopt, and implement written policies and standards for officers' responses to domestic violence calls by January 1, 1986. These policies shall reflect that domestic violence is alleged criminal conduct. Further, they shall reflect existing policy that a request for assistance in a situation involving domestic violence is the same as any other request for assistance where violence has occurred."

49. Here, each time Kernell hit Plaintiff MJR, she called the police and reported the incidents, but Defendant LAPD Officers refused to arrest Kernell, because Plaintiff MJR didn't have any physical marks or bruises. As to the records, there were seven domestic violence calls for this address, but Kernell was never arrested.

50. Plaintiff MJR, at that time, victim of domestic violence and without law protection, began making plans to leave Kernell and started saving money and looking for another apartment.  Plaintiff MJR had two jobs, she drove for Uber on weekends, and worked as a substitute teacher for private schools on the weekday.  Kernell noticed Plaintiff MJR was making plans to leave and started accusing her of cheating.

51. On September 19, 2018, Plaintiff MJR came home from the gym.  Kernell was drunk out of his mind and started accusing her of cheating.  Plaintiff MJR kindly ignored the accusations and went into the kitchen to make dinner for the family. Kernell started shouting obscenities and Plaintiff MJR called him "a drunk." Kernell went into the bedroom and got his baseball bat and started hitting Plaintiff MJR with it on the bottom

half of her body. Each time the baseball bat hit her body, Plaintiff MJR apologizes for calling him a drunk.  Kernell then dragged Plaintiff MJR by her braids, stripped her of her house robe, and threw her outside completely naked.  The upstairs neighbor heard Plaintiff MJR screaming and threw her a house robe to wear so she would not be naked outside.  Alecia Ward, another neighbor, called the police and a third neighbor allowed Plaintiff MJR to wait in her house until the police arrived. This time, Kernell was finally arrested and taken to jail.

52. While Kernell was in jail he sent his family members to harass Plaintiff MJR. On October 20, 2018, Plaintiff MJR had to call the police to get Kernell's adult daughter to leave the home after Kernell gave her the keys to enter Plaintiff MJR's home.

53. On October 26, 2018, Plaintiff MJR was granted a Restraining Order against Kernell and his adult daugther, as well as, sole physical custody of minor children, Plaintiffs SB and PB.

54. On December 23, 2018, Kernell came back to Plaintiff MJR 's home despite the Restraining Order.  Kernell came back with his adult daughters and tried to get into the home using force.  Kernell drilled the locks off the door and came in with his daughters. When Plaintiff MJR tried to shut the door and keep them out, a physical altercation began to occur, and Plaintiff MJR was forced to use physical force to expel the aggressors and protect herself.  Kernell and his daughter called the police and Defendant SANDATE arrested Plaintiff MJR for PC-245(A)(1).

55. According to Cal. Pen. Code § 13701 (b), LAPD Officers "shall encourage the arrest of domestic violence offenders if there is probable cause that an offense has been committed. These policies also shall require the arrest of an offender, absent exigent circumstances, if there is probable cause that a protective order issued under Chapter 4 (commencing with Section 2040) of Part 1 of Division 6, Division 10 (commencing with Section 6200), or Chapter 6 (commencing with Section 7700) of Part 3 of Division 12, of the Family Code, or Section 136.2 of this code, or by a court of any other state, a commonwealth, territory, or insular possession subject to the jurisdiction of the United

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**12**

States, a military tribunal, or a tribe has been violated. These policies shall discourage, when appropriate, but not prohibit, dual arrests. Peace officers shall make reasonable efforts to identify the dominant aggressor in any incident. The dominant aggressor is the person determined to be the most significant, rather than the first, aggressor. **In identifying the dominant aggressor, an officer shall consider the intent of the law to protect victims of domestic violence from continuing abuse, the threats creating fear of physical injury, the history of domestic violence between the persons involved, and whether either person acted in self-defense.**"

56. Immunity does not apply when excessive use of force by a police officer or negligent performance of a police officer's duties. (*Robinson v. Solano County* (9th Cir. 2002) 278 F.3d 1007, 1016.)

57. A victim who has acted reasonably to defend oneself or another from harm is not subject to arrest. This provision is intended to prevent police officers from arresting the victim along with the abuser, and recognizes the fact that victims have the right and may try to defend themselves without being subject to arrest. If an officer investigates and has probable cause to believe that a domestic abuse assault occurred but the victim was not injured, the officer may arrest the abuser, although is not required to do so. Moreover, the officer must find out if there are any no-contact or protective orders in effect against the abuser, and enforce such orders. Here, Defendant SANDATE did not arrest Kernell even though he knew that Kernell was the dominant aggressor, that he was out on bail and had violated a restraining order; he refused to hear Plaintiff MJR and the testimony of neighbors that would immediately clarify the facts that she acted in self-defense and he indeed arrested the victim, Plaintiff MJR.

58. On December 23, 2018, Defendant DCFS received a referral alleging that Plaintiffs SB and PB were victims of emotional abuse, due to a reported altercation between mother and father, where mother attempted to attack father with a butcher knife and she was arrested.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

59. On January 2019, Defendant DCFS's Social Worker reported after an unannounced visit at Plaintiff MJR's home and found that Plaintiff MJR and her two minor children, Plaintiff SB and PB were no longer in the home.  In an effort to protect Plaintiff MJR and her minor children from Kernell, Plaintiff MJR moved to North Carolina, her home state.

60. On February 14, 2019, Defendant DCFS filed an initial section 300 Petition on behalf of Plaintiff MJR's children, Plaintiffs SB and PB.  The Petition alleged that the children "were at substantial risk of suffering serious physical harm based on the violent physical and verbal altercation between mother and father (counts a-1 and b-1), and mother's mental and emotional problems (count b-2)."

61. On February 15, 2019, neither parent, Plaintiff MJR nor Kernell, appeared for the Detention Hearing.  The Juvenile Dependency Court made an order to detain the children, Plaintiffs SB and PB, from both parents and issued protective custody warrants for the children and a no-bail arrest warrant for Plaintiff MJR.

62. Notice of the date, time, and location of the hearing, with a copy of the petition attached, must be served, as soon as, possible after the petition is filed and no less than 24 hours in advance of the hearing if the child is detained. (§§ 290.1, 290.2.) If the whereabouts of the parents are unknown, the agency must exercise due diligence (i.e., conduct a good faith inquiry that is thorough and systematic) to locate and notice the parent. Failure to give notice to a parent of dependency proceedings violates due process and is "fatal" to the court's jurisdiction. (*In re Claudia S.* (2005) 131 Cal.App.4th 236.) Insufficient notice would mean that the jurisdictional and subsequent findings are subject to reversal on appeal. (*In re Arlyne A.* (2000) 85 Cal.App.4th 591, 598–600.) The court cannot assume jurisdiction over a minor when his whereabouts were unknown. (*In re Baby Boy M.* (2006) 141 Cal.App.4th 588, 601-602.)

63. Here, Plaintiff MJR, who resides in North Carolina, was not present at the Detention Hearing, because she had not received Notice.  Defendant DCFS, as reported, knew that Plaintiff MJR and her children's whereabouts were unknown; yet, did not

**SECOND AMENDED COMPLAINT FOR DAMAGES**

perform due diligence in attempting to locate them in order to provide appropriate Notice for the Detention Hearing.

64. On March 05, 2019, Kernell informed Defendant DCFS that "he is a Truck driver and he is currently in Oklahoma (where he'll be for the next two months); afterward, he will be in Texas.  Kernell denied knowing the mother and children's exact whereabouts but reported that they were "somewhere in North Carolina.  Kernell was informed about the protective custody warrants on the children and warrant for arrest on the mother…. Kernell reported that the children are safe and well cared by mother as she often FaceTime's him so that he is able to see/speak with the children.  Kernell stated that he is not pressing criminal charges against mother but mentioned that he is no longer in a relationship with mother due to their discord."

65. On March 07, 2019, Plaintiff MJR 's grandmother, reported "They (children) are with Melody in North Carolina."

66. On July 17, 2019, Defendant DCFS received an immediate response referral alleging Kernell sexually abused his granddaughter, R.B.

67. On July 31, 2019, Plaintiff MJR was in Los Angeles, California to address criminal charges pending against her.  At the trial, Plaintiff MJR was exonerated of all charges by an impartial jury who decided that Plaintiff MJR was acting in self-defense in her own home.  At the trial, Defendant SANDATE committed perjury during his testimony.

68. After the trial, declared not guilty of any crime, Plaintiff MJR returned to pick up his children from Kernell's sister's house who was helping her as a babysitter, and found out that Kernell had taken their children. Plaintiff MJR went immediately to Kernell's house to retrieve their children and was forcibly retrained/locked inside the bathroom by Kernell.

69. On the same day, Defendant MARPET sent law Enforcement Officer, Defendant SANDATE and Defendant DCFS's Social Workers to Kernell's home who refused to let them in without a warrant.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**15**

70. That evening, Defendant MARPET granted Defendant DCFS requests for an expedited removal order and requests to dispense with Notice of the Removal Order to Detain the children from mother and father.  Defendant DCFS did not present substantial evidence that Plaintiff MJR was failing at fulfilling any of her responsibilities or had any criminal record related to mental illness.

71. Defendant MARPET and Defendant SANDATE were aware of the outcome of the criminal case against Plaintiff MJR and knew that she did not pose any threat to her children based on actions taken in self-defense; they were aware or should have been aware that Plaintiff MJR has full custody of her children and that they cannot remove custody from Kernell who had already lost it. Therefore, the order was unsupported by probable cause; therefore, violated Plaintiff MJR's Federal Constitutional Rights against unreasonable searches and seizures.

72. Defendant DCFS's Social Workers and Law Enforcement Officer, Defendant SANDATE, witnessed via the video recorded by Plaintiff MJR, that Plaintiff MJR and her children were locked in Kernell's bathroom; they knew or should have known that Plaintiff MJR was a victim of domestic violence by Kernell and that Kernell had already imprisoned Plaintiff MJR at other times against her will; however, instead of protecting Plaintiff MJR and her children and keeping them safe from the aggressor, Defendant DCFS's Social Workers detained the children and Defendant SANDATE arrested Plaintiff MJR pursuant to the no-bail arrest warrant and again breached his duty to protect Plaintiff MJR.

73. Defendant DCFS's Social Workers falsely declared on their report that the parents actively concealed the children. In fact, as previously reported, Plaintiff MJR had been a resident of North Carolina for nearly seven (7) months and she had sole physical custody of her children who were also residents of Charlotte, North Carolina.  Defendant DCFS's Social Workers were aware that Plaintiff MJR had relocated to North Carolina immediately after the attack from Kernell and was only visiting California temporarily to address the criminal case, which she was exonerated from all charges.  Plaintiff MJR

**SECOND AMENDED COMPLAINT FOR DAMAGES**

relocating away from Kernell with children and supporting them independently demonstrated a change in circumstance that Defendant DCFS refused to acknowledge. Unless Defendant DCFS had a reason to believe that the children were in danger, it did not have a compelling reason to separate the children from their mother. On information and belief, Defendant LAPD Officer, Defendant SANDATE and Defendant DCFS's Social Worker acted with malice and with the intent to cause injury to Plaintiff MJR or acted with a willful and conscious disregard to the rights of Plaintiff MJR in a despicable, vile and contemptible manner.

74. Making false statements in a dependency petition with the intent that the court rely on it, causing the parents to temporarily lose custody, seriously infringes on a parent's constitutional rights. See *Beltran*, 2008 WL 193319, at *1 (no absolute immunity where a social worker "fabricated evidence during an investigation or made false statements in a dependency petition affidavit.").

75.     According to California Code, Government Code - GOV § 820.21:

(a) "Notwithstanding any other provision of the law, the civil immunity of juvenile court social workers, child protection workers, and other public employees authorized to initiate or conduct investigations or proceedings pursuant to Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code shall not extend to any of the following, if committed with malice:

(1) Perjury.

(2) Fabrication of evidence.

(3) Failure to disclose known exculpatory evidence.

(4) Obtaining testimony by duress, as defined in Section 1569 of the Civil Code , fraud, as defined in either Section 1572 or Section 1573 of the Civil Code , or undue influence, as defined in Section 1575 of the Civil Code .

(b) As used in this section, "malice" means conduct that is intended by the person described in subdivision (a) to cause injury to the plaintiff or despicable

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**17**

conduct that is carried on by the person described in subdivision (a) with a willful and conscious disregard of the rights or safety of others."

76. On August 2, 2019, forty-eight (48) hours after the children were detained, Plaintiff MJR was to appeared at the Initial Detention Hearing pursuant to federal procedure; however, after heading to the Edelman Children's Court on the bus from jail, Plaintiff MJR was told to return back to jail for the weekend, as the matter had been continued without reason. (Cal. Juv. Rule 5.670).

77. Here, Defendant MARPET, after issuing a warrant to arrest Plaintiff MJR on a non-arrestable offense, held Plaintiff MJR in prison longer than the forty-eight (48) hour Detention hearing window; thus, depriving Plaintiff MJR of her substantive and procedural Due Process Rights.  Although, Plaintiff MJR case was set for hearing, Defendant MARPET continued it without justification. Defendants MARPET, DCFS, AND SANDATE's actions in detaining and mistreating Plaintiff MJR were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, in violation of the constitutional right, power, privilege, or immunity, and without observance of procedure required by law.

78. On August 5, 2019, Defendant MARPET exacted cruel and unusual punishment upon Plaintiff MJR, when he refused to allow her to return to the location that contained her clothing and personal property.  Defendant MARPET released Plaintiff MJR from jail, where she had to wear a black paper suit as clothing.  As a result of this suit, Plaintiff MJR faced public shame and humiliation and was regarded as a criminal although she never committed any crime.

79. On August 5, 2019, Frank Ostrov, Court-Appointed Attorney for Plaintiff MJR, signed a document from Defendant LA COUNTY, providing Plaintiff MJR's children's personal information; including their date of birth and social security numbers, while Plaintiff MJR was behind bars, in jail, and under duress.   Moreover, Ostrov gave Plaintiff MJR false information and bad legal advice when he stated that "it is not

**SECOND AMENDED COMPLAINT FOR DAMAGES**

possible to appeal the case until the end of the trial." This essentially denied Plaintiff MJR of effective legal counsel to preserve her right to a fair hearing.

80. On August 23, 2019, Defendant DCFS filed an Amended Section 300 Petition on behalf of the children. The Amended Petition contained the original counts and additional allegations that the children were at substantial risk of suffering serious physical harm and sexual abuse based upon the father's sexual abuse of his granddaughter and his adult children when they were children (counts b-3, d-1, and j-1). DCFS perseveres with the same allegations against Plaintiff MJR by omitting with malice exculpatory evidence on their records.

81. On December 3, 2019, Court held a trial-setting conference and appointed new counsel to represent Plaintiff MJR. Counsel for Plaintiff MJR requested that the Dependency Investigator (DI) and Defendant DCFS's Social Worker be placed on call for the Adjudication Hearing. The court ordered the DI on call.

82. On December 17, 2019, the Court, along with its Officers of the Court, conspired together to prevent the Court from receiving evidence in Plaintiff MJR's favor. According to WIC § 317, providing for the appointment of counsel in dependency cases, a parent could waive counsel at any point and had the right to represent him or herself. Here, Defendant SUN denied Plaintiff MJR's request to proceed pro se and refused to hear her case until Plaintiff MJR agreed to Court-Appointed Attorney, Defendant MEL HATAMIAN, to represent her. Defendant SUN suppressed Plaintiff MJR's right to present evidence and denied Plaintiff MJR's her right to have a fair and unbiased hearing; Plaintiff MJR was not allowed witnesses to present before the Court to testify on behalf of Plaintiff MJR. Moreover, Defendant SUN continued the case beyond the statutory limits, which was to the convenience of the opposing side and to the detriment of Plaintiff MJR and her children who are languishing in Foster Care and removed from their home and their relatives' love.

83. At this Section 300 Petition Hearing, Defendant CLC's Appointed Attorney, Alyson Bashor ("Bashor"), breached her fiduciary duty to Plaintiff MJR's children by

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**19**

going along with a scam that harmed them and was in direct opposition to their expressed and verbalized wishes.   Bashor lied and said that the children could not talk and therefore could not make a meaningful statement to the court when indeed they have expressed their wishes to the attorney on several occasions.  Plaintiff MJR has evidence by way of phone recording of her children saying that they want to be returned home and also the Foster Parent, Nakeya Clark ("Clark"), wanted to testify to that.

84. Defendant CLC's Attorney, Alyson Bashor ("Bashor") lied to the Court in order to mislead the Court by stating for the record on December 17, 2021 that the children and Foster Mom, Clark, were not present to testify in court, when indeed they were present in Court and wanted to testify.  Bashor had in fact told them to leave and come back later when she calls.  Bashor, never called them to come back. When Plaintiff MJR called Clark, she told her that she was still waiting to testify, but was told to come back later. Mother managed to get Ms. Clark admitted to court although her device was muted.

85. Minor's Counsel carries a lot of weight with the courts. According to 2020 California Rules of Court Rule 5.242, Counsel is charged with the representation of the child's best interest. Their role is to consider what is in the child's best interests. They are a neutral voice for the child, without compromising the child's rights or emotional well-being. According to 2020 California Rules of Court Rule 5.242, Counsel is charged with the representation of the child's best interest. The role of the child's counsel is to gather evidence that bears on the best interest of the child and present that admissible evidence to the court in any manner appropriate for the counsel of a party. If the child so desires, the child's counsel must present the child's wishes to the court.

86. On February 15, 2020, Defendant DCFS's Social Worker Investigator, Teela Allen ("Allen"), provided a report with knowingly false statements and intentional omissions of exculpatory evidence in order to obtain a court judgment against Plaintiff MJR.  Allen specifically made misrepresentations to conceal the fact that the aggressor and domestic violence perpetrator was Kernell, not Plaintiff MJR and omitted a large

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**20**

portion of Kernell's lengthy criminal record to conceal his previous crimes of moral turpitude.

87. Specifically, Defendant DCFS's Social Worker falsely asserted that in December 2018, Plaintiff MJR struck father's back and chased him while holding a butcher knife and was arrested for assault with a deadly weapon.  Defendant DCFS's Social Worker also asserted that on prior occasions Plaintiff MJR refused to take her psychotropic medication and suffers from paranoia, suicidal ideation, depression, anxiety, isolation, and erratic behavior.  On this basis, Defendant DCFS's Social Worker alleged that the children were in danger of suffering physical harm based on domestic violence between mother and their father (counts a-1 and b-1), and mother's mental and emotional problems (count b-2).

88. Here, Defendants maliciously and fraudulently omitted exculpatory evidence. Defendants knew or should have known that Plaintiff MJR was declared not guilty by a jury, because she acted in self-defense; therefore, she cannot be considered a danger to her children. Defendants maliciously omitted to inform the Court that Plaintiff MJR had already obtained a Retraining Order against Kernell at the time of the incident and that Plaintiff MJR has been relocated to North Carolina, far away from the aggressor, to protect her and her children.  Moreover, regarding Plaintiff MJR's purported mental and emotional problems, Defendant DCFS's Social Worker Investigator's Report continues to refer to contested hearsay allegations of 2016, even when Defendant DCFS's Social Worker Investigator knew or should know that Plaintiff MJR followed the Court Order and had been observed by several psychiatrists who have always stated that Plaintiff MJR has no mental and emotional problems and does not need drug therapy.  Defendant DCFS has never presented substantial evidence of Plaintiff MJR's mental and emotional health.

89. Defendant CAGLE, demonstrated bad faith business practices under the UCC, when he signed the aforementioned reports that did not contain any actual child abuse or neglect allegations to support a Petition under the Welfare and Institutions Code of California.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

90. On February 20, 2020, after several continuances and without good cause, the Court proceeded with the combined Jurisdiction and Disposition Hearing.  The Court has continued the case several times in violation of the California Welfare Institutions Code Section 352, even though the Jurisdiction Hearings cannot be held past 6 months from when the children were detained on July 31, 2019.  Defendant MARPET held a hearing for a continuance on his own motion, January 2021, more than 18 months past the children's detention.

91. At the hearing, Defendant DCFS's Social Worker's Report and police reports were used as evidence to substantiate false claims and no witnesses were called. Defendant HATAMIAN tried to convince Plaintiff MJR not to express her true wishes to cross-examine Defendant DCFS's accusing Social Workers.  Defendant HATAMIAN did not act in the best interest of Plaintiff MJR, when she gave Plaintiff MJR bad advice.  However, Plaintiff MJR insisted that Defendant HATAMIAN cross-examine the DI on the report that was submitted to determine where the DI obtained the evidence to support the allegations.  The court denied Plaintiff MJR's request and said that it saw no basis to have the DI present before the Court to be cross-examined**.**

92. The Court declared the children Dependents of the Court and made an order to remove them from both parents' custody. The Court ordered "no Family Reunification Services for Plaintiff MJR.  However, according to section 361.5, subdivision (b)(l0) Cal. Rules of Court, rule 1456(c), the court must find that the welfare of the child requires that she be removed from parental custody because of substantial danger, or risk of danger, to her physical health if she is returned home and that there are no reasonable means to protect her without removing her.  Moreover, Here, Defendant DCFS did not present evidence that Plaintiff MJR was not fulfilling any of her responsibilities or had any actual allegations related to mental illness.

93. The California Welfare & Institutions Code mandates Defendant DCFS to make reasonable efforts to return the child home, when the danger or threat no longer exists.  Here, there is no evidence presented by Defendant DCFS that it attempted to return the

**SECOND AMENDED COMPLAINT FOR DAMAGES**

22

children and there is no evidence presented by Defendant DCFS supporting the allegations against Plaintiff MJR.

94. At the same hearing, although Plaintiff MJR was exonerated from all charges due to self-defense, Defendant DCFS's Social Workers committed perjury in open Court and announced that Plaintiff MJR had been convicted of lesser charges.

95. Defendant DCFS's Social Worker did not present evidence to substantiate this claim and deliberately misled the court in order to maliciously prosecute Plaintiff MJR. Dependency proceedings are not to be prosecutorial in nature. Defendant DCFS intentionally and willfully withheld exculpatory evidence that would have proven that Plaintiff MJR was not mentally ill. They disregarded statements from all parties that spoke favorably of Plaintiff MJR and attested to her intelligence and mental health in order to distort character and true identity of Plaintiff MJR.

96. Defendant MARPET assisted Defendant DCFS's Social Workers make their arguments by suggesting they re-word phrases in such a way as to make it appear as if Plaintiff MJR was physically violent.  In this instance, Defendant MARPET expressed an appearance of partiality.  "Fraud or impartiality in a court makes the order and judgment void, because the court is not impartial."

97. At each hearing and trial, Plaintiff MJR requested in open Court that her children be placed with their grandmother, Plaintiff JR and siblings, because it would be in the best interest of the children to be with family; and Plaintiff JR expressed a willingness to care for her grandchildren. This request was expressly denied until "after the Dispositional Hearing", still not commenced to this day.

98. Here, Defendant SUN should have dismissed the case, because the court must have subject matter jurisdiction in order to hear a case. (In *re Nelson B.* (2013) 215 Cal.App.4th 1121, 1128.).

99. Under section 300, subdivision (b), the court can assume jurisdiction if it finds there is a substantial risk the child will suffer serious physical harm as a result of the parent's failure or inability to provide regular care. A finding of the parent abuses

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**23**

substances is prima facie evidence the parent is unable "to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M. (*2012) 211 Cal. App. 4th 754, 767; Welf. & Inst. Code § 300, subd. (b).)

100.      However, a parent's use of controlled substances, without something more, is not itself sufficient. (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 453.) The Department must show the parent's substance abuse poses a "specific, non-speculative and substantial" risk the child will suffer serious physical harm. (*In re Drake M.*, supra, 211 Cal.App.4th at p. 767; *In re Destiny S.*, supra, at p. 1003; In re David M. (2005) 134 Cal.App.4th 822, 830.)

101.      Domestic violence only supports the exercise of jurisdiction under section 300, subdivision (b) if there is substantial evidence the domestic violence is ongoing or likely to continue and either directly harmed or placed the child at risk of suffering physical harm. (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717.)

102.      Removal at disposition may not be warranted due to the heightened standard of proof[1] or changes in circumstances during the passage of time[2]. Substantial risk of future harm requires that this risk exists at the time of the jurisdictional hearing. *In re R.M.* (2009) 175 CA4th 986, 989, 96 CR3d 655; *In re Destiny S.* (2012) 210 CA4th 999, 1004, 248 CR3d 800 (conduct occurred 9 years before current petition was filed).

103.      Although jurisdiction may be established under WIC § 300 (a), (b)(1), or (d), by a showing that the child has suffered prior physical harm under WIC § 300(b)(1),

---

[1] Even though jurisdictional finding may be based on substantial evidence, dispositional findings have a different focus and heightened burden of proof – clear and convincing evidence (§ 361, subd. (c)(1); *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996, 1011.) This heightened standard is premised on the notion that even after parents have been found to have abused or neglected their children "keeping children with their parents while proceedings are pending, whenever safely possible, serves not only to protect parents' rights but also children's and society's best interest. (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1066-1067.)

[2] Even though children may be dependents of the juvenile court, they shall not be removed from their parents unless there is clear and convincing evidence of a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being and there are no "reasonable means" by which the child can be protected without removal. (§ 361, subd. (c)(1).) When considering if the child will be in substantial danger if permitted to remain in the parent's custody, the court must consider not only the parent's past conduct, but also current circumstances and the parent's response to the conditions that gave rise to juvenile court intervention. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 451-452.)

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**24**

jurisdiction may not be continued unless the risk of harm continues. An allegation in a petition or evidence simply that there was a prior allegation of unfitness is not substantial evidence without evidence the allegation was substantiated. (*In re Miguel E.* (2004) 120 Cal.App.4th 521, 547.)

104.      In *In re I.R.* (2021) 61 Cal. App. 5th 510, the Second Appellate District found that there was insufficient evidence to justify removing a minor under section 361, subdivision (c)(1).  Jurisdiction over the minor was based on a single incident of domestic violence between the parents, where Father slapped Mother. By disposition, Father no longer lived or communicated with Mother and did not display violent behavior outside of the relationship with Mother. The Second Appellate District found that the sole source of potential danger to the minor while in Father's care, which was supported in the record, was his history of domestic violence with Mother, but **the record did not contain substantial evidence that the domestic violence between Mother and Father was likely to continue. There had been no contact between Father and Mother since the minor's detention and neither Mother nor Father expressed an intention to reconcile their relationship and there was no demonstrated unwillingness to stay away from each other.**

105.      In addition, children may be found described by WIC § 300(b)(1) although they have suffered no direct harm when there is a pattern of domestic violence that has not been corrected. In such situations of "secondary abuse," evidence that the child was present and witnessed domestic violence with the expected result that the child suffered emotional abuse is sufficient to sustain a petition.  In *re Healther A.* (1996) 52 CA4th 183, 194, 60 CR2d 554 (mother had permitted unsupervised visit with perpetrator of domestic violence). However, if the evidence does not establish that the child was present and witnessed the violence, the fact of domestic violence in the home may not be sufficient to sustain the petition. See, *e.g., In re Alysha S.* (1996) 51 CA4th 393, 398, 58 CR2d 494.

106.     To determine whether domestic violence is ongoing and likely to continue, courts look at a number of factors, including the proximity of the event to the filing of the petition, whether the child was present or exposed to the violence, the number and severity of the incidents, and the parents' subsequent actions. (See e.g. *In re Daisy H.*, supra, 192 Cal.App.4th at p. 717.)

107.     Here, there is no substantial evidence that children were exposed to danger or that Plaintiff MJR posed a danger to her children.  Plaintiff MJR presented evidence of operative Restraining Order for both Kernell and his adult daughter from the Los Angeles Superior Court; yet, ignored.  Plaintiff MJR also presented evidence from the Clara Shortridge Foltz Criminal Justice Court that proved she was acting in self-defense in the episode reported by Defendant DCFS.  Plaintiff MJR took every legal remedy in the State of California to protect herself and her children from Kernell; moreover, January 2017, moved to North Carolina far away from him.  Kernell is restrained in jail, and Plaintiff MJR has a new and happy life in North Carolina; therefore, there are no possibilities that domestic violence is likely to continue.

108.     Dependency may not be based on WIC § 300(b)(1) when any mental disorder or substance abuse cannot be tied to any harm or risk of harm to the children who are well cared for and loved, and when the parents' problems do not impact their ability to care for the children. *In re David M.* (2005) 134 CA4th 822, 829-839, 36 CR3d 411; see also *In re A.L.* (2017) 18 CA5th 1044, 1049-1051, 227 CR3d 3 (mental illness alone not enough even with one incident of violence).

109.     Mental illness alone is not enough for jurisdiction unless DCFS can show it caused harm to the child. *In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318 ["The Department has the burden of showing specifically how the minors have been or will be harmed and harm may not be presumed from the mere fact of mental illness of a parent."]

110.     "'Harm to the child cannot be presumed from the mere fact of mental illness of the parent and it is fallacious to assume the children will somehow be "infected" by the parent. The proper basis for a ruling is expert testimony giving specific

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**26**

examples of the manner in which the mother's behavior has and will adversely affect the child or jeopardize the child's safety. . . . It cannot be presumed that a mother who is proven to be "schizophrenic" will necessarily be detrimental to the mental or physical well-being of her offspring. . . . The social worker must demonstrate with specificity how the minor has been or will be harmed by the parents' mental illness.'" (*In re Jamie M.* (1982) 134 Cal.App.3d 530, 540; *In re Heather P.* (1988) 203 Cal. App. 3d 1214, 1228-1229, overruled on other grounds, *In re Richard S.* (1991) 54 Cal. 3d 857, 866, fn. 5, internal citations omitted, italics in original; *In re David D.* (1994) 28 Cal.App.4th 941, 953; *In re Janet T.* (2001) 93 Cal.App.4th 377, 390.)

111.     Defendant DCFS offered no evidence to substantiate the claim that Plaintiff MJR had mental and emotional problems or had failed to take psychotropic medications. There was no medical record or diagnoses presented by a qualified physician to support those claims.  Lacking a medical diagnosis, the evidence presented by Defendant DCFS to support their claim was a list of an assortment of assertions from a variety of non-ailments.  Plaintiff MJR today is happily married and has a happy life in North Carolina.

112.     On February 27, 2020, Plaintiff MJR filed a Notice of Intent to file a Petition for Writ, challenging the February 20, 2020, Court Orders.

113.     On June 05, 2020, Niti Gupta, assistant of Defendant HATAMIAN, filed a letter to the Appeals Court stating that Plaintiff MJR could find no reason to file an appeal.

114.     On June 5, 2020, Plaintiff MJR's Counsel, Defendant HATAMIAN, advised the Court that he was unable to file a Petition for Writ on behalf of Plaintiff MJR.

115.     On July 23, 2020, Plaintiff MJR, as an in pro per litigant, filed a Petition for Extraordinary Writ Relief, pursuant to 8.452 in the Court of Appeal, seeking to challenge the juvenile court's jurisdiction and disposition orders at February 20, 2020, adjudication hearing.  In part of her brief, Plaintiff MJR. argues that there was insufficient evidence to sustain the domestic violence and mental health allegations pursuant to WIC § 300,

**SECOND AMENDED COMPLAINT FOR DAMAGES**

27

subdivision (a) and (b).  Plaintiff MJR pointed out that Defendant DCFS's Social Workers did not testify and the statements in the reports were hearsay.

116.    On July 30, 2020, the Court of Appeal of the State of California Second Appellate District, Division Three, issued an order to show cause stating our intent to decide the matter on the merits.

117.    On October 21, 2020, the Court of Appeal granted the petition for extraordinary relief and concluded that the Court violated Plaintiff MJR's right to Due Process by denying her the opportunity to cross-examine the dependency investigator and social worker. The Court guaranteed order that "A peremptory writ of mandate shall issue directing the juvenile court to reverse its jurisdictional findings sustaining counts b-1 and b-2, and dispositional orders as to Plaintiff MJR only, entered on February 20, 2020. In addition, the court shall vacate any subsequent order terminating parental rights. On remand, the court shall conduct a new jurisdiction and disposition hearing as to Plaintiff MJR consistent with the views expressed in this opinion." *Melody R. v. Super.* Ct. CA2/3.

118.    On March 11, 2021, Defendant CAGLE and Defendant DCFS's Social Workers, Marcal Maye-Henderson and Aliana Darted, submitted a report with the same fabricated evidence against Plaintiff MJR, stating that "Pursuant to WIC §361.5(b)(10), Defendant DCFS recommends No Reunification Services for Plaintiff MJR, as the Court terminated Family Reunification Services for children's half-siblings and no subsequent effort to treat problems that led to the removal of those children."  The report presented the same original false allegations against Plaintiff MJR.

119.    On December 12, 2021, Defendant CAGLE and Defendant DCFS's Social Workers Regina Minor and Darryllisha Burch-Parker continued with malicious and fraudulent intent, their practice of fabricating evidence and omitting exculpatory evidence in their reports.  In addition to the previous false and inaccurate allegations against Plaintiff MJR Defendant DCFS's Social Worker reports that Clark stated that, when Plaintiff MJR, calls the children, Plaintiff SB's behavior noticeably changes and the calls

cause "more harm, then good." However, Ms. Clark, is ready to testify that she never made such a statement.

120.       On June 9, 2022, "the Court finds there is no full .26 Report and no In and Out for father. The .26 Hearing is continued to 08/17/2022 for receipt of a full .26 report and for an In and Out for father to be transported to court."

121.       On June 2022, Plaintiff MJR filed an appeal on the order to continuance.

122.       Defendants' conduct, as set forth herein, is a substantial factor in causing Plaintiffs harm, which constitutes gross negligence such that Defendants are liable and Plaintiffs are entitled to Punitive damages, and Attorney's cost and expenses for which Plaintiffs seeks judgment of this Court.

123.       Plaintiffs intend to show that the factors the jury may consider in determining the amount of punitive damages, which should be awarded include:

a.  The nature of the wrong committed by Defendants;

b.  The character of Defendants' conduct;

c.  The degree of culpability of Defendants;

d.  The situation and sensibilities of the parties concerned; and

e.  The extent to which Defendants' conduct offends a public sense of justice and propriety.

## V.   RELEVANT INFORMATION

### A.  <u>Customs, Policy and Practices Adopted by California's Foster System to Snatch Children from their Birth Parents in violation of their Civil Rights</u>

124.       This suit addresses the unlawful practices pursued by the Governor and those subordinates of his, who operate the foster care system, letting the operators of the system essentially have their choice of the minor children placed into the state's foster custody, interfering with the children's relationships with their families, contrary to law and seeks injunctive relief against the foster system personnel that conspired using the foster care system to take children from biological parents.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

125.     Plaintiff MJR also seeks Injunctive Relief condemning the unlawful child-snatching practices that Defendants have been practicing.

126.     Defendants developed, implemented, enforced, encouraged, and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to the Plaintiff MJR's constitutional rights which caused the violation of such rights. Specifically, Plaintiff contends that these policies, practices, or customs were willfully implemented with the specific intent to deprive Plaintiff's rights under the Fourteenth Amendment of the Constitution, by, but not limited to:

a)  The policy of removing a child from the care, custody, and control of her parent without good cause;

b)  The policy of using trickery, duress, fabrication and/or false testimony and/or evidence, and in failing to disclose ***exculpatory evidence***, in preparing and presenting reports and court documents to the court, causing an interference with Plaintiff's rights, including those as to familial relations;

c)  By acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourteenth Amendment, when performing actions related to child abuse and ***dependency*** type proceedings;

d)  The policy of setting forth allegations in ***Juvenile Dependency*** Petitions against parents claiming they suffer from psychological disorders and/or are influencing the minor child to make false reports of sexual abuse, regardless of whether or not reasonable and articulable evidence exists at the time to support the claims set out in the petition or reports under penalty of perjury;

e)  The policy, practice, or custom of making knowingly false allegations of misconduct in ***juvenile dependency*** petitions and/or reports as a means of intimidating parents, by coercion, into accepting the wrongful

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**30**

recommendations and orders based on falsified evidence, whether justified by extant evidence or not, thereby enabling the county to keep the family in the ***juvenile dependency*** system and record the case as a positive outcome for purposes of statistical analysis related to funding by the State and Federal governments;

f) The custom, policy, and or practice of fraudulently accusing parents of making false allegations where no evidentiary basis exists.

(This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and ***juvenile dependency*** type proceedings.  Plaintiff MJR reserves the right to amend this pleading as more information becomes available.)

127.      Defendants, including through their respective entities, breached their duties and obligations to Plaintiff MJR including, but not limited to, failing to establish, implement and follow well known and clearly established, "bright line" Constitutional policies, procedures, customs and practices.

128.       By failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by permitting Defendant LA COUNTY Police Officers and Defendant DCFS's Social Worker's to engage in the unlawful and unconstitutional conduct as herein alleged.

129.      Biological parents have a clearly established due process right under the Fourteenth Amendment to be free from the deliberate use of perjured testimony and fabricated evidence during juvenile dependency proceedings. See, e.g., *Hardwick v. County of Orange*, 844 F.3d 1112, 1116–17 (9th Cir. 2017); see also *Greene v. Camreta*, 588 F.3d 1011, 1035 (9th Cir. 2009) (holding that "the 'constitutional right to be free from the knowing presentation of false or perjured evidence' is clearly established" (quoting *Devereaux v. Perez*, 218 F.3d 1045, 1055–56 (9th Cir. 2000))).

130.      Defendants knew, or should have known, that by breaching the above-mentioned duties and obligations it was foreseeable that they would, and did, cause

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**31**

Plaintiff MJR to be injured and damaged by their wrongful policies, or deliberate lack thereof or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in contravention of public policy and their legal duties and obligations to Plaintiff MJR; and that such policies would subject them to Injunctive Relief which Plaintiff asserts herein.

**B. California's Foster System Increasingly Serves as a Child Snatching "Internal Diversion" System Taking Children from Families and Relatives and Letting Foster System Connected Staff Take Them**

131.    This suit also addresses the failure of the Defendants to follow the laws relating to the minor children in California Foster Care System and their biological relatives entitled to participate with those children, as provided by California and federal laws prioritizing the placement and permanency rights of biological and other family members.

132.    To operate the system for internal diversion of children, Defendants executing their responsibilities [including Defendant DCFS, and Defendant DCFS's contracted lead agencies] use a number of artifices and devices, and other outright unlawful actions, including, but not limited to:

a. Not providing the dependency court, or Birth Parents and their attorneys, with pertinent exculpatory information;

b. Taking advantage of many dependency judges' lack of knowledge of the foster system and the resulting inappropriate reliance on the Foster System Operators;

c. Playing "hide the ball" with information needed by family members, blocking family members from access to hearings and information about how the system works, and what the case plans for permanency for the child are;

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**32**

d.   Fabricating "evidence" against relatives and obstructing access to key information relating to parents and children needed by the dependency court for a fair and impartial hearing;

e.   Failing to conduct the requisite diligent searches for biological relatives of the child when a child is sheltered and then again throughout the case, and again, as required after a TPR judgment;

f.   Choosing a nonrelative system-connected person for placement of a child instead of complying with the law and placing the child with relatives;

g.   Having the lead agency [and, at times, a subcontracted case management agency] work with DCFS to divert children to favored non-relatives, rather than conducting the required diligent searches for relatives;

h.   Willfully disregarding safety statutes and time limitations in the Rules of Juvenile Procedure in order to intentionally inflict further emotional stress on families ;

i.   Tampering with witnesses and preventing them from testifying in court;

j.   Intentionally writing misleading statements in order to create a false record that will allow agencies to collect federal and state funds by taking children who do not fit the WIC definition of abused or neglected

k.   Ignoring frequently [if not as often as possible] the due process rights of Birth Parents and other Relatives to be present with advance notice of judicial review proceedings and blocking Relatives from being heard in dependency court proceedings by their misuse of the "Participant/Party" Rule of Juvenile Procedure and related California's statutory definitions.

l.   Compromising the ethical obligations of the attorneys for Birth Parents by paying the attorney for system-connected services inconsistent with the attorney's obligations to his or her clients;

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**33**

m. Fabricating false reports of abuse attributed to a relative to justify failing to approve a relative for placement while attempting to place a child with a non-relative.

133.    When relatives who realized how their related youngsters had been essentially kidnapped, snatched, or internally diverted, complained to Governor directly or through the Inspector General for one or more of the Departments, the Governor and his subordinates, including the supposedly Independent Inspector General, took no independent action other than to redirect the complaints to Defendant DCFS to handle, with no accountability or redress for the relatives of the snatched, diverted children.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION FOR VIOLATION OF 42 USC § 1983
(Against all Defendants)

134.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

135.    To state a Section 1983 claim, the plaintiff is required to allege that (1) the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived the plaintiff of a constitutional right.

136.    Plaintiff MJR complied with Defendant DCFS's Court Ordered plan; yet, her children were removed without good cause by individuals who are/were employed for the government, acting under color of color, ignoring statutory law and refusing to adhere to Court orders.

137.    Judge, social work, court appointed did wrong, she filed a Writ.

138.    Plaintiff MJR took every legal remedy in the State of California to protect herself and her children from Kernell, Plaintiffs SB and PB's father, whom is violent, January 2017, they moved to North Carolina far away from him.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

139.     On July 30, 2020, the Court of Appeal of the State of California, Second Appellate District, Division Three issued an order to show cause RE Intent to Decide the Matter on its Merits.

140.     On October 21, 2020, the Court of Appeal granted Plaintiff MJR's Petition for Extraordinary Relief and ruled that the Court violated Plaintiff MJR's rights to Due Process by denying her the opportunity to cross-examine the DIs and Defendant DCFS's Social Workers.

141.     On or about Feb. 29, 2016, Defendants made comments about race and socioeconomic status "black women are supposed to be strong "Defendants stated "That plaintiffs should have gone to school and got married before having kids".

142.     Defendant DCFS's Social Workers falsified their Detention Reports and Jurisdictional Reports, left out pertinent information regarding Kernell in order to reflect him in a positive light, detained Plaintiff MJR and her children without good cause, lied to Plaintiff MJR and recommend therapy to get her children back, never attempted to reunify Plaintiff MJR and her children, suppressed material evidence including evidence of physical abused against Plaintiff MR, and made unreasonable searches in Plaintiff MJR's home without a warrant and without justified cause.  Defendant DCFS's Social Workers never attempted to reunify Plaintiff MJR with her children as they promised.

143.     Commencing February 29, 2016, (WHO?) the Superior Court of California for Defendant LA COUNTY, Juvenile Dependency Court ordered that Defendant DCFS be authorized to detain Plaintiff MJR's children without a valid cause.  The aforementioned government agencies owed a duty of care to Plaintiff MJR to ensure that Defendant State of California does not make nor enforce any laws that abridges the rights of the citizens.

144.     However, Defendants did endorse, contribute, and enforce the statutes within Welfare & Institutions Code §§ 300-378, which involve "one-sided" and unconstitutional Juvenile Dependency Laws that allow Social Workers to take a parents children without a warrant, that allow warrants to be issued without probable cause, that

**SECOND AMENDED COMPLAINT FOR DAMAGES**

35

allow the quartering of Soldiers or Social Workers in the homes of families, and allow the violation of the Due Process Right of a parent to bring up a child without governmental interference.

145.     During the same time, Defendants made false statements to the public in regards to Plaintiff MJR's criminal history, as means in preventing Plaintiff MJR from obtaining gainful employment.  Additionally, Defendants prevented Plaintiff MJR adequate visits with her children (PC § 278.5) and never allowed "reunification services" as normally provided under Welfare & Institutions Code § 300 et. seq.  Defendants filed a false Juvenile Dependency Petition against Plaintiff MJR and her children, which resulted in them being denied their right to present evidence on their behalf; denied their Due Process.

146.     Defendant MARPET was a partial judge, in favor of Defendant DCFS's Officers of the Court.  Day one in his courtroom he yelled at Plaintiff MJR and told her to take medication without even hearing Plaintiff MJR's testimony; she was denied her right to be heard and denied her right to present her case until she agreed to Defendant HATAMIAN, as her counsel.  Defendant MARPET repeatedly assigned Public Defenders to Plaintiff MJR, who refused to present Plaintiff MJR's material evidence.

147.     Defendants participated with all other Defendants and acted in concert, and denied Plaintiff MJR her Due Process, and denied Plaintiff MJR her right to bring up her children without governmental interference.  All of the Defendants violated Plaintiffs Constitutional Rights and each participated in the acts, while acting under color of law.  Plaintiffs hereby allege that each Defendant caused and participated the acts or omissions regarding the facts herein alleged either by "direct conduct, neglect or conspiracy". (See *Monell v. Department of Soc. Servs.* (1978) 436 US 658, 56 L Ed 2d 611, 98 S Ct 2018; *Pmerantz v County of Los Angeles* (9th Cir 1982) 674 F2d 1288, 1291.

148.     To establish personal liability, it is enough to show that an official, acting under color of state law, caused deprivation of federal right. (See *Kentucky v. Graham* (1985) 473 US 159, 165, 87 L Ed 2d 114, 121, 105 S Ct 3099. Local governments,

**SECOND AMENDED COMPLAINT FOR DAMAGES**

municipal corporations, and their agents acting under color of "state" law (which may encompass implementation or enforcement of a municipal, local law, regulation, policy, or custom, are "persons" subject to liability under 42 USC § 1983. *See Monell v. Department of Soc. Servs.* (1978) 436 US 658, 56 L Ed 2d 611, 98 S Ct 2018. California counties have been treated as municipalities for § 1983 purposes. *See Moor v. County of Alameda* (1973) 411 US 693, 36 L Ed 2d 596, 93 S Ct 1785. Also, *see Hernandez v. County of San Bernardino* (2004) 117 CA4th 1055, 12 CR3d 452 (erroneous wage garnishment against plaintiff by county's family support division may render county liable under § 1983 if family support division is determined to be the policymaker for the county.

149.     Additionally, a public entity may be held liable for a constitutional violation caused by a policy, custom, or practice of the public entity. *See Monell v. Department of Soc. Servs.* 436 US at 690, 56 L Ed 2d at 635.  Plaintiffs hereby allege that each defendant participated, caused, conspired and acted under "color of law" to deprive plaintiffs of their Constitutional Rights based on the policies, customs and practices of the entities sued as public entities, in addition to "malice" and intentional fraud" based on hatred towards the race, creed and religion of Plaintiffs.

150.     The heart of Plaintiffs' Civil Rights claim is that Defendants, directors, supervisors, and employees for Defendant LA COUNTY conspired against plaintiffs to "wrongfully separate the family without a standard of care or process of law", which is an Abuse of Process.  There is, in general, no constitutional duty of state officials to protect members of the public at large from crime and child neglect. See *Martinez v. California*, 444 U.S. 277, 284-85, 100 S.Ct. 553, 558-59, 62 L.Ed.2d 481 (1980); *Ketchum*, 811 F.2d 1243, 1247 (9th Cir.1987); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982). However, such a duty may arise by virtue of a "special relationship" between state officials and a particular member of the public. *Ketchum*, 811 F.2d at 1247; *Escamilla v. Santa Ana*, 796 F.2d 266, 269 (9th Cir.1986). Several courts have held that, to determine whether a "special relationship" exists, a court may look to a number of factors, including (1)

**SECOND AMENDED COMPLAINT FOR DAMAGES**

whether the state created or assumed a custodial relationship toward the plaintiff; (2) whether the state affirmatively placed the plaintiff in a position of danger; (3) whether the state was aware of a specific risk of harm to the plaintiff; or (4) whether the state affirmatively committed itself to the protection of the plaintiff. *See Ketchum*, 811 F.2d at 1247; *Escamilla*, 796 F.2d at 269-70; *Jensen v. Conrad*, 747 F.2d 185, 194 (4ᵗʰ Cir.1984).

151.     In this particular circumstance, Defendants violated Plaintiffs' rights to equal privileges and protection of the laws in that Defendants failed to provide a fair trial for Plaintiff MJR, prevented Plaintiff MJR from presenting evidence in the trial. Thereafter, Defendants placed Plaintiff MJR's children in a home with convicted criminals, knowing that they were likely to endanger Plaintiff MJR's children.

152.     Additionally, Defendants prevented Plaintiff MJR from having adequate visits with her children (PC § 278.5) and never allowed "reunification services" as normally provided under Welfare & Institutions Code § 300 et. seq..

153.     In the recent case of *DeShaney v. Winnebago County of Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), however, the Supreme Court limited the circumstances giving rise to "a special relationship." Joshua DeShaney fell into a life-threatening coma after he was severely beaten by his father. Prior to this beating, the social services agency recorded multiple incidents indicating that someone in the DeShaney household was physically abusing Joshua and temporarily placed Joshua in the custody of the juvenile court. In the course of explaining its holding that Joshua DeShaney and his mother failed to make out an actionable Sec. 1983 claim, the Court explained that its previous decisions recognizing "affirmative [constitutional] duties of care and protection.... stand only for the proposition that when the State takes a person into its custody and hold him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general wellbeing.... The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* 109 S.Ct. at

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1005-06.  We conclude that the State's knowledge of DeShaney's plight and its

expressions of intent to help him were no greater than its knowledge of Balistreri's plight

and its expressions of intent to help her. *See id*. at 1010-11 (*Brennan, J.*, dissenting)

("Wisconsin law invites--indeed, directs--citizens and other governmental entities to

depend on local departments of social services such as respondent to protect children

from abuse.... Through its child-protection program, the State actively intervened in

Joshua's life and, by virtue of this intervention, acquired ever more certain knowledge

that Joshua was in grave danger.").


## SECOND CAUSE VIOLATION OF 42 U.S.C. 1985
### (Against all Defendant)

154.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

155.     (1)Preventing officer from performing duties:

If two or more persons in any State or Territory conspire to prevent, by force,

intimidation, or threat, any person from accepting or holding any office, trust, or place of

confidence under the United States, or from discharging any duties thereof; or to induce

by like means any officer of the United States to leave any State, district, or place, where

his duties as an officer are required to be performed, or to injure him in his person or

property on account of his lawful discharge of the duties of his office, or while engaged

in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder,

or impede him in the discharge of his official duties;

156.     (2)Obstructing justice; intimidating party, witness, or juror:

If two or more persons in any State or Territory conspire to deter, by force,

intimidation, or threat, any party or witness in any court of the United States from

attending such court, or from testifying to any matter pending therein, freely, fully, and

truthfully, or to injure such party or witness in his person or property on account of his

having so attended or testified, or to influence the verdict, presentment, or indictment of

**SECOND AMENDED COMPLAINT FOR DAMAGES**

any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

157.    (3)Depriving persons of rights or privileges:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

158.    If as a result of the conspiracy, one or more persons are injured in person or property, or is deprived of any of their rights or privileges, the party so injured or deprived may have an action for the recovery of damages, against the conspirators.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**40**

However, it is necessary that a plaintiff suing under 42 U.S.C. § 1985 should show the existence of a conspiracy.  The existence of a conspiracy may also be inferred from the surrounding circumstances.

159.      State limitation periods apply to actions brought pursuant to 42 U.S.C. § 1985.  The plaintiff must plead facts with specificity and particularity.  Nominal, compensatory, and punitive damages are available to successful § 1985 Plaintiffs.

160.      The above-listed Defendants have a policy, custom, and pattern of practice, and act under color of law in their capacities as employees for local, county and state public entities, and on a daily basis falsify reports, engage in acts of Abuse of Process, defraud the general public by filing false reports in the Juvenile Dependency Court to justify excessive expenditures of taxpayers' money and fail to notify the courts as to the truth of matters and circumstances as their informed. Defendants conspired to deprive Plaintiff MJR of her Constitutional Right to bring up her children without governmental interference.  Defendants and each of them, knowingly and willfully conspired, "acted in concert" and agreed among themselves to harm Plaintiff MJR by depriving her of the privileges and rights within the Constitution of the United States of America, because she belongs to a protected class and because of her religious beliefs and creed.

161.      On or about Feb. 29, 2016, Defendants made comments about race and socioeconomic status "black women are supposed to be strong "Defendants stated "That plaintiffs should have gone to school and got married before having kids".

162.      Defendant DCFS's Social Workers falsified their Detention Reports and Jurisdictional Reports, left out pertinent information regarding Kernell in order to reflect him in a positive light, lied to Plaintiff MJR recommending therapy to get her children back, never attempted to reunify Plaintiff MJR and her children, and made unreasonable searches in Plaintiff MJR's home, without a warrant, and without justified cause.  She did not attempt to reunify plaintiff with the children as she had promised.

163.      Commencing February 29, 2016, the Superior Court of California for Defendant LA COUNTY, Juvenile Dependency Court ordered that Defendant DCFS be

**SECOND AMENDED COMPLAINT FOR DAMAGES**

authorized to detain Plaintiff MJR's children without a valid cause.  The aforementioned government agencies owed a duty of care to Plaintiff MJR to ensure that Defendant State of California does not make nor enforce any laws that abridges the rights of the citizens.

164.     During the same time, Defendants made false statements to the public in regards to Plaintiff MJR's criminal history, as means in preventing Plaintiff MJR from obtaining gainful employment.  Additionally, Defendants prevented Plaintiff MJR adequate visits with her children (PC § 278.5) and never allowed "reunification services" as normally provided under Welfare & Institutions Code § 300 et. seq.  Defendants filed a false Juvenile Dependency Petition against Plaintiff MJR and her children, which resulted in them being denied their right to present evidence on their behalf; denied their Due Process.

165.     Defendant MARPET was a partial judge, in favor of Defendant DCFS's Officers of the Court.  Day one in his courtroom he yelled at Plaintiff MJR and told her to take medication without even hearing Plaintiff MJR's testimony; she was denied her right to be heard and denied her right to present her case until she agreed to Defendant HATAMIAN, as her counsel.  Defendant MARPET repeatedly assigned Public Defenders to Plaintiff MJR, who refused to present Plaintiff MJR's material evidence.

166.     Defendants participated with all other Defendants and acted in concert, and denied Plaintiff MJR her Due Process, and denied Plaintiff MJR her right to bring up her children without governmental interference.  All of the Defendants violated Plaintiffs Constitutional Rights and each participated in the acts, while acting under color of law.

167.     Plaintiffs hereby allege that each Defendant caused and participated the acts or omissions regarding the facts herein alleged either by "direct conduct, neglect or conspiracy". (See *Monell v. Department of Soc. Servs.* (1978) 436 US 658, 56 L Ed 2d 611, 98 S Ct 2018; *Pmerantz v County of Los Angeles* (9th Cir 1982) 674 F2d 1288, 1291.

168.     To establish personal liability, it is enough to show that an official, acting under color of state law, caused deprivation of federal right. (See *Kentucky v. Graham*

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**42**

(1985) 473 US 159, 165, 87 L Ed 2d 114, 121, 105 S Ct 3099. Local governments, municipal corporations, and their agents acting under color of "state" law (which may encompass implementation or enforcement of a municipal, local law, regulation, policy, or custom, are "persons" subject to liability under 42 USC § 1983. *See Monell v. Department of Soc. Servs.* (1978) 436 US 658, 56 L Ed 2d 611, 98 S Ct 2018. California counties have been treated as municipalities for § 1983 purposes. *See Moor v. County of Alameda* (1973) 411 US 693, 36 L Ed 2d 596, 93 S Ct 1785. Also, *see Hernandez v. County of San Bernardino* (2004) 117 CA4th 1055, 12 CR3d 452 (erroneous wage garnishment against plaintiff by county's family support division may render county liable under § 1983 if family support division is determined to be the policymaker for the county.

169.    Defendants, and each of them, maintain, and at all times relevant to this Complaint maintained, customs and practices which were the driving force behind their conspiracy to interfere with Plaintiff MJR's civil rights in violation of 42 U.S.C. section 1985.  Such customs and practices include unlawful removal of minor children; and the procuring of false testimony, fabrication of evidence, and refusal to disclose exculpatory evidence in preparing and presenting reports and documents to the Court, all in violation of the right to familial association under the Due Process Clause of the Fourteenth Amendment.

170.    Defendants and each of them, have, and at all times relevant to this complaint had, knowledge of the customs and practices that led to the conspiracy to interfere with Plaintiff's civil rights.  All Defendants knew Co-Defendants' wrongs to be committed and that they were going to commit them.

171.    Defendants, and each of them, had the power to prevent the commission of these wrongs, through the notification of the proper superiors and authorities, and/or through the implementation of policies, procedures, and training programs that would educate and enlighten employees as to the civil rights of the citizens of the United States and the State of California.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**43**

172.    Despite their knowledge, Defendants, and each of them, refused or neglected to prevent the remaining Defendants from committing these wrongs in violation of 42 U.S.C. section 1985.

173.    Defendants, and each of them, engaged in said conspiracies for the purpose of depriving Plaintiffs of equal protection of the laws of the State of California and of the United States and depriving them of their rights under the Constitutions of the United States and the State of California.

174.    Defendants, and each of them, acting under color of state law, conspired to deprive and did deprive, Plaintiffs of her rights under the laws of the United States. Specifically, Defendants conspired to, and did act, agree and/or conspire to unlawfully examine, investigate, threaten, and make false reports resulting in the removal of the minor child from the custody of Plaintiff MJR.  In addition, Defendants, and each of them, conspired to use trickery, duress, fabrication and/or false testimony or evidence and failed to disclose ***exculpatory evidence*** in preparing and presenting reports and court documents to the court.

175.    Defendants, and each of them, took several acts in furtherance of the conspiracy, including but not limited to, acting, agreeing and/or conspiring to unlawfully examine, investigate, threaten, and make false reports resulting in the removal of the minor child from the custody of Plaintiff MJR; and by procuring false testimony, fabricating evidence, suppress evidence, and failing to disclose ***exculpatory evidence*** in preparing and presenting reports and court documents to the court in relation to [minor child's] ***dependency*** proceedings.

176.    Despite lacking any evidence of harm, children are still being detained.

177.    Defendants acted with malice and with the intent to cause injury to Plaintiffs or acted with a willful and conscious disregard to the rights of Plaintiffs in a despicable, vile, and contemptible manner.

178.    Plaintiffs' injuries were the direct and proximate result of the actions of Defendants, which could have, through reasonable diligence, been prevented.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**44**

179.     As the direct and proximate result of the Defendants' actions, Plaintiffs have suffered and will continue to suffer, physical, mental, and emotional injury. Plaintiff has also incurred and will continue to incur, attorneys' fees, costs and expenses, including those authorized by 42 U.S.C. section 1988.

180.     As a result, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing Defendants and to deter them and others in the future.

## THIRD CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. 1986
### (Against All Defendants)

181.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

182.     Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefore, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

183.     The following Defendants had the power by reasonbale diligence to prevent the wrongdoings or to stop the wrongdoing; yet, the wrongdoing was ignored, or they neglected and/or refused to prevent the wrongdoing:

**SECOND AMENDED COMPLAINT FOR DAMAGES**

45

184.     Defendant SUN, Judge of the Superior Court of Los Angeles County, Juvenile Dependency Court, acting under color of law, was to determine issues such as whether certain facts are true, whether the children should be removed from Plaintiff MJR, what types of services should be offered to the family and whether the child should be returned to the family and the community or placed permanently in another setting. Defendant SUN could have prevented the wrongfuldoing, as soon as, it was determined that the Court did not have subject matter jurisdiction; yet, Defendant SUN failed to dismiss and allowed the wrongdoing against Plaintiff to cointinue on.

185.     Defendant MARPET, Commissioner of the Superior Court of Los Angeles County, Juvenile Dependency Court, acting under color of law, is an attorney selected by the judges of the court to perform various judicial functions as prescribed by law and given powers to hear and make decisions concerning certain legal matters, including family and juvenile court cases… However, in Plaintiff MJR and her children's Juvenile Dependency Case, Defendant MARPET had a disregard for applying statutory law in the interest of the children when making a ruling, which contributed to the ongoing wrongdoing of Defendants.

186.     Defendant SANDATE, an employee of Defendant LAPD, acting under color of law, failed to acknowledge and enforce a Restraining Order to protect Plaintiff MJR and her children against children's father ("Kernell"), properly investigate, falsely imprisoned Plaintiff MJR, unlawfully detained Plaintiff MJR's children, falsified a report, and committed perjury on the stand, which resulted in Plaintiff MJR's children being removed from her home to present.

187.     Defendant CAGLE was the Director of the Los Angeles County Defendant DCFS, acting under color of law and at all times relevant to Plaintiff MJR and her children's Juvenile Dependency Case, Defendant CAGLE was a government employee for Defendant LA COUNTY, that had a duty to protect Plaintiffs and to ensure that Plaintiffs' constitutional rights were not violated.  Also, Plaintiff CAGLE was Defendant LA COUNTY's Foster Care System official, responsible for the proper operation of the

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**46**

Foster Care System and to ensure that the system operated in accordance with Federal and State laws, for which the federal government provides annual funding to operate the system.

188.    Defendant HATAMIAN, Plaintiff MJR's Court Appointed Attorney, by Defendant MARPET, acting under color of law, and represented Plaintiff MJR at all times relevant to the Juvenile Dependency Case involving Plaintiffs SB and PB. Defendant HATAMIAN suppressed evidence, denied Plaintiff MJR's right to be heard; moreover, denied Plaintiff MJR a fair trial.

189.    As a proximate result of Defendants' actions, Plaintiffs have suffered severe anguish, stress, anxiety and general damages.

190.    Plaintiffs allege that such severe emotional distress has included without limitations embarrassment, anger, chagrin, disappointment, shame, worry, nausea and other forms of mental and emotional anguish.

191.    As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered economic, psychological, emotional, and physical damages.

192.    Pursuant to California Civil Code §3294 "where is it proven by clear and convincing evidence that Defendants are guilty of oppression, fraud, or malice, Plaintiffs, in addition to the actual damages, may recover damages for the sake of example and by way of punishing Defendants."

193.    Defendants' conduct intentionally and recklessly caused extreme emotional distress to Plaintiffs and have been intentional, malicious and oppressive, thereby entitling Plaintiffs to recover punitive damages.

194.    Plaintiffs are obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**47**

## FOURTH CAUSE OF ACTION FOR MONELL RELATED CLAIMS (LAW ENFORCEMENT EXCESSIVE FORCE/FALSE IMPRISONMENT/SOCIAL WORKER MISCONDUCT/PROSECUTORY MISCONDUCT)
### (Against All Defendants)

195.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

196.     Monell claims are aimed at the government entity as the employer, supervisor and policymaker.  To successfully sue under the Monell doctrine and hold the city (or other government entity) liable for an officer's actions, the plaintiff must first show the officer violated a clearly established Constitutional Right.  Defendants denied Plaintiff MJR Due Process, under the fifth and fourteenth Amendments to the United States Constitution.

197.     The Monell decision allows plaintiffs a method to sue municipalities for unconstitutional policies and practices that led to an incident that harmed an individual or group. • Employees may be sued individually for misconduct.

198.     The agency failed to investigate and used the same old "recycled copy and paste "allegations which were unsubstantiated in an old case. They carried over old lies from a previous case to a recent case with Plaintiffs SB and PB. At every hearing the prosecution failed to present any evidence or present evidence that children are in danger.

199.     (WHAT YEAR?) In XXXX, Plaintiff MJR and her children became homeless due to financial hardship.  (IS THIS HOW DCFS CAME INTO YOUR LIFE?)

200.     On February 2016, Plaintiff MJR told her therapist; Defendant DCFS, ER Social Worker, Monica Rosenblum ("Rosenblum"), that she has been doing poorly in school and had wanted to drop her class.  Rosenblum falsely reported to Defendant DCFS that Plaintiff MJR had expressed or implied that she planned on harming her kids.

201.     On February 23, 2016, Plaintiff MJR was referred to Kedren Community Health Center.  On or about February 29, 2016, Michel H. Eisner, Deputy County

---

**SECOND AMENDED COMPLAINT FOR DAMAGES**

Counsel, collectively with Co-Defendants filed a false Juvenile Dependency Petition against Plaintiff MJR and her children.

202.        On or about February 29, 2016, Defendant MARPET announced false statements to the public regarding Plaintiff MJR's criminal history, as means of preventing Plaintiff MJR from obtaining gainful employment. Additionally, Defendant DCFS prevented Plaintiff MJR from adequate visits with her children and never allowed "reunification services."

203.        On March 22, 2016, despite the many letters from Plaintiff MJR's Psychologist stating that she was fit to care for her children, Juvenile Dependency Court unlawfully found that Plaintiffs MR and HR were children described by section 300, subdivision (b)(l) without a valid cause. The sustained Section 300 Petition documented that Plaintiff MJR suffered from mental and emotional problems that rendered her incapable of providing regular care for Plaintiff MR and HR.

204.        On March 27, 2016, after Plaintiff MR informed her mother, Plaintiff MJR, that her Foster Parent spanked her, the police and Defendant DCFS's Social Worker stated that they found no evidence of abuse and returned Plaintiff MJR's children to that Foster Parent. However, the next month, April 06, 2016, Plaintiff MJR's children were placed with their maternal grandmother, Plaintiff JR.  Plaintiff MJR continued with therapy and despite the reports of Plaintiff MJR's compliance and good mental health, on September 20, 2017, Defendant DCFS recommended terminating family reunification services.

205.        Based on a misunderstanding, which escalated to a phsycial altercation with Plaintiff MJR and her grandmother, on November 15, 2017, Defendant DCFS filed an Ex-Parte Application pursuant to section 385 to modify Plaintiff MJR's visitations from unmonitored to monitored.  On February 13, 2018, Plaintiff MJR's family reunification services were terminated.  In May 2019, the Court ordered legal guardianship for Plaintiffs MR and HR with Plaintiff JR.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

206.        2016 Plaintiff MJR began a relationship with Kernell, who eventually became very abusive; she was a victim of domestic violence.  Plaintiff MJR called the Police on several occasions and Kernell was never taken to jail.  Plaintiff MJR was working two (2) jobs, preparing to leave Kernell.  Kernell was suspecting that she was planning to leave him and he began accusing her of cheating and the abusive escalated.  On September 19, 2018, during an argument, Kernell began hitting Plaintiff MJR with his baseball bat, stripped her naked and threw her outside, where neigbor came to her rescue.  Kernell was finally arrested.

207.        On October 20, 2018, Plaintiff MJR had to call the police to get Kernell's adult daughter to leave the home after Kernell gave her the keys to enter Plaintiff MJR's home.  On October 26, 2018, Plaintiff MJR was granted a Restraining Order against Kernell and his adult daugther, as well as, sole physical custody of minor children, Plaintiffs SB and PB.  On December 23, 2018, Kernell and his daughter came back to Plaintiff MJR 's home, despite the Restraining Order, to abuse Plaintiff MJR forcing her to use a deadly weapon, acting in self-defense.  Kernell and his daughter called the police and Defendant SANDATE arrested Plaintiff MJR, the Domestic Violence victim, and ignored the fact the Kernell and his daugther violated their Restraining Order.  Defendant SANDATE also refused to take neigbors testimonies.

208.        On December 23, 2018, Defendant DCFS received a referral alleging that Plaintiffs SB and PB were victims of emotional abuse, due to a reported altercation between mother and father, falsely stating that mother attempted to attack father with a butcher knife and she was arrested.

209.        On January 2019, Defendant DCFS's Social Worker reported after an unannounced visit at Plaintiff MJR's home and found that Plaintiff MJR and her two minor children, Plaintiff SB and PB, were no longer in the home.  In an effort to protect Plaintiff MJR and her minor children from Kernell, Plaintiff MJR moved to North Carolina, her home state.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**50**

210.     On February 14, 2019, Defendant DCFS filed a Section 300 Petition on behalf of Plaintiff MJR's children, Plaintiffs SB and PB.  The Petition falsely alleged that the children "were at substantial risk of suffering serious physical harm based on the violent physical and verbal altercation between mother and father…"  Plaintiff MJR and children were safely living in North Carolina.

211.     On February 15, 2019, neither parent, Plaintiff MJR nor Kernell, appeared for the Detention Hearing due to never receiving a Notice.  Defendant DCFS did not exercise due diligence in attempting to locate Plaintiff MJR.  The Court made an order to detain the children, Plaintiffs SB and PB, issued protective custody warrants for the children, and a no-bail arrest warrant for Plaintiff MJR.

212.     On July 31, 2019, Plaintiff MJR was in Los Angeles, California to address criminal charges pending against her; Plaintiff MJR was exonerated of all charges by an impartial jury who decided that Plaintiff MJR was acting in self-defense in her own home.  At the trial, Defendant SANDATE committed perjury during his testimony.

213.     After trial, Plaintiff MJR returned for her children at Kernell's sister's residence, Kernell had taken them, Plaintiff MJR went to Kernell residence to retreive her children, where Kernell forcibly locked her inside his bathroom.  Defendant MARPET sent law Enforcement Officer, Defendant SANDATE and Defendant DCFS's Social Workers to Kernell's home who refused to let them in without a warrant.  That evening, Defendant MARPET granted Defendant DCFS requests for an expedited removal order…, which was without probable cause and they both knew that Plaintiff MJR was a victim of domestic violence.  Defendant DCFS's Social Worker prepared a false report, stating that Plaintiff MJR and Kernell were actively concealing the children.  Plaintiff MJR had sole custody and she and her children lived in North Carolina, where they are safe against Kernell.  Plaintiff MJR did not pose any threat to her children based on actions taken in self-defense and charges dismissed.  Defendant DCFS's Social Workers detained the children and Defendant SANDATE arrested Plaintiff MJR pursuant to the

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**51**

no-bail arrest warrant.  As a result, Plaintiff MJR and her children never returned to North Carolina together again.

214.	On August 2, 2019, forty-eight (48) hours after the children were detained, the Detention Hearing was continued without reason; therefore, Defendant MARPET, after issuing a warrant to arrest Plaintiff MJR on a non-arrestable offense, held Plaintiff MJR in prison longer than the forty-eight (48) hour, depriving her of substantive and procedural Due Process Rights.

215.	On August 5, 2019, Defendant MARPET exacted cruel and unusual punishment upon Plaintiff MJR, when he refused to allow her to return to the location that contained her clothing and personal property.  Defendant MARPET released Plaintiff MJR from jail, where she had to wear a black paper suit as clothing.  As a result of this suit, Plaintiff MJR faced public shame and humiliation and was regarded as a criminal although she never committed any crime.

216.	On August 23, 2019, Defendant DCFS filed an Amended Section 300 Petition on behalf of the children. The Amended Petition contained false allegations against Plaintiff MJR.  On December 17, 2019, the Court, along with its Officers of the Court, conspired together to prevent the Court from receiving evidence in Plaintiff MJR's favor.  Defendant SUN denied Plaintiff MJR's request to proceed pro se and refused to hear her case until Plaintiff MJR agreed to Court-Appointed Attorney, Defendant HATAMIAN, to represent her.  Defendant SUN suppressed Plaintiff MJR's right to present evidence and denied Plaintiff MJR's her right to have a fair and unbiased hearing; Plaintiff MJR was not allowed witnesses to present before the Court to testify on her behalf. Moreover, Defendant SUN continued the case beyond the statutory limits, which was to the convenience of the opposing side and to the detriment of Plaintiff MJR and her children.

217.	On February 15, 2020, Defendant DCFS's Social Worker Investigator, Allen, provided a report with knowingly false statements and intentional omissions of exculpatory evidence in order to obtain a court judgment against Plaintiff MJR.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

Specifically, Defendant DCFS's Social Worker falsely asserted that in December 2018, Plaintiff MJR struck father's back and chased him while holding a butcher knife and was arrested for assault with a deadly weapon…

218.    Defendants maliciously omitted to inform the Court that Plaintiff MJR had already obtained a Retraining Order against Kernell at the time of the incident and that Plaintiff MJR has been relocated to North Carolina, far away from the aggressor, to protect her and her children.

219.    Defendant CAGLE, signed the aforementioned reports that did not contain any actual child abuse or neglect allegations to support a Petition under the Welfare and Institutions Code of California.

220.    Defendant MARPET held a hearing for a continuance on his own motion, January 2021, more than 18 months past the children's detention on July 31, 2019.

221.    Defendant MATAMIAN did not present exculpatory evidence, he did not cross-examine, he just merely denied Plaintiff MJR a fair trial and the Court agreed with his decisions.  As a result, the Court declared the children Dependents of the Court and made an order to remove them from both parents' custody. The Court ordered "no Family Reunification Services for Plaintiff MJR.

222.    At the same hearing, although Plaintiff MJR was exonerated from all charges due to self-defense, Defendant DCFS's Social Workers committed perjury in open Court and announced that Plaintiff MJR had been convicted of lesser charges.

223.    Also, Defendant MARPET assisted Defendant DCFS's Social Workers make their arguments by suggesting they re-word phrases in such a way as to make it appear as if Plaintiff MJR was physically violent.

224.    At each hearing and trial, Plaintiff MJR requested in open Court that her children be placed with their grandmother, Plaintiff JR and siblings, because it would be in the best interest of the children to be with family and her request was denied.

225.    On February 27, 2020, Plaintiff MJR filed a Notice of Intent to file a Petition for Writ, challenging the February 20, 2020, Court Orders.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

226.     On June 05, 2020, Niti Gupta, assistant of Defendant HATAMIAN, filed a letter to the Appeals Court stating that Plaintiff MJR could find no reason to file an appeal.

227.     On June 5, 2020, Plaintiff MJR's Counsel, Defendant HATAMIAN, advised the Court that he was unable to file a Petition for Writ on behalf of Plaintiff MJR.

228.     On July 23, 2020, Plaintiff MJR, as an in pro per litigant, filed a Petition for Extraordinary Writ Relief, pursuant to 8.452 in the Court of Appeal, seeking to challenge the juvenile court's jurisdiction and disposition orders at February 20, 2020, adjudication hearing.  In part of her brief, Plaintiff MJR. argues that there was insufficient evidence to sustain the domestic violence and mental health allegations pursuant to WIC § 300, subdivision (a) and (b).  Plaintiff MJR pointed out that Defendant DCFS's Social Workers did not testify and the statements in the reports were hearsay.

229.     On October 21, 2020, the Court of Appeal granted Plaintiff MJR's Petition for Extraordinary Relief and concluded that the Court violated Plaintiff MJR's right to Due Process by denying her the opportunity to cross-examine the Dependency Investigator and Social Workers. The Court guaranteed order that "A peremptory writ of mandate shall issue directing the juvenile court to reverse its jurisdictional findings sustaining counts b-1 and b-2, and dispositional orders as to Plaintiff MJR only, entered on February 20, 2020. In addition, the court shall vacate any subsequent order terminating parental rights. On remand, the court shall conduct a new jurisdiction and disposition hearing as to Plaintiff MJR consistent with the views expressed in this opinion." *Melody R. v. Super.* Ct. CA2/3.

230.     On March 11, 2021, Defendant CAGLE and Defendant DCFS's Social Workers, Marcal Maye-Henderson and Aliana Darted, submitted a report with the same fabricated evidence against Plaintiff MJR and ignored the order made by the Court of Appeal on October 21, 2020.

231.     It is apparent that many of the officials of the court are covert abusers and whenever they see a mother suffering from domestic violence they punish the mother for

**SECOND AMENDED COMPLAINT FOR DAMAGES**

speaking out against it by taking her children. They are trying to silence abuse victims with their Strategic Lawsuits against Public Participation.

### FIFTH CAUSE OF ACTION FOR MALICIOUS PROSECUTION/ ABUSE OF PROCESS
#### (Against All Defendants)

232.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

233.     Defendants filed frivolous claims againt Plaintiff MJR, not based on merits of the claim, rather some ulterior purpose and Plaintiff MJR suffered damages, as a result.

234.     On February 2016, Melody told her therapist; Defendant DCFS, ER Social Worker, Monica Rosenblum ("Rosenblum"), that she has been doing poorly in school and had wanted to drop her class.  Rosenblum falsely reported to Defendant DCFS that Plaintiff MJR had expressed or implied that she planned on harming her kids.

235.     On February 23, 2016, Plaintiff MJR was referred to Kedren Community Health Center.  On or about February 29, 2016, Michel H. Eisner, Deputy County Counsel, collectively with Co-Defendants filed a false Juvenile Dependency Petition against Plaintiff MJR and her children.

236.     On March 22, 2016, despite the many letters from Plaintiff MJR's Psychologist stating that she was fit to care for her children, Juvenile Dependency Court unlawfully found that Plaintiffs MR and HR were children described by section 300, subdivision (b)(l) without a valid cause. The sustained section 300 Petition documented that Plaintiff MJR suffered from mental and emotional problems that rendered her incapable of providing regular care for Plaintiff MR and HR.

237.     On November 15, 2017, Defendant DCFS filed an Ex-Parte Application pursuant to section 385 to modify Plaintiff MJR's visitations from unmonitored to monitored.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

238.     On December 23, 2018, Defendant DCFS received a referral alleging that Plaintiffs SB and PB were victims of emotional abuse, due to a reported altercation between mother and father, falsely stating that mother attempted to attack father with a butcher knife and she was arrested.

239.     On February 14, 2019, Defendant DCFS filed a Section 300 Petition on behalf of Plaintiff MJR's children, Plaintiffs SB and PB.  The Petition falsely alleged that the children "were at substantial risk of suffering serious physical harm based on the violent physical and verbal altercation between mother and father…"  Plaintiff MJR and children were safely living in North Carolina.

240.     On February 15, 2019, neither parent, Plaintiff MJR nor Kernell, appeared for the Detention Hearing due to never receiving a Notice.  Defendant DCFS did not exercise due diligence in attempting to locate Plaintiff MJR.  The Court made an order to detain the children, Plaintiffs SB and PB, issued protective custody warrants for the children, and a no-bail arrest warrant for Plaintiff MJR and arrested Plaintiff MJR and detained the children on July 31, 2019.

241.     Defendant DCFS's Social Worker prepared a false report, stating that Plaintiff MJR and Kernell were actively concealing the children.  Plaintiff MJR had sole custody and she and her children lived in North Carolina, where they are safe against Kernell.  As a result, Plaintiff MJR and her children never returned to North Carolina together again.

242.     On August 23, 2019, Defendant DCFS filed an Amended Section 300 Petition on behalf of the children. The Amended Petition contained false allegations against Plaintiff MJR.

243.     On February 15, 2020, Defendant DCFS's Social Worker Investigator, Allen, provided a report with knowingly false statements and intentional omissions of exculpatory evidence in order to obtain a court judgment against Plaintiff MJR. Specifically, Defendant DCFS's Social Worker falsely asserted that in December 2018,

**SECOND AMENDED COMPLAINT FOR DAMAGES**

56

Plaintiff MJR struck father's back and chased him while holding a butcher knife and was arrested for assault with a deadly weapon…

244.     Defendant MATAMIAN did not present exculpatory evidence, he did not cross-examine, he just merely denied Plaintiff MJR a fair trial and the Court agreed with his decisions.  As a result, the Court declared the children Dependents of the Court and made an order to remove them from both parents' custody.

245.     On March 11, 2021, Defendant CAGLE and Defendant DCFS's Social Workers, Marcal Maye-Henderson and Aliana Darted, submitted a report with the same fabricated evidence against Plaintiff MJR and ignored the order made by the Court of Appeal on October 21, 2020.

246.     Defendants participated with all other Defendants and acted in concert, and denied Plaintiff MJR her Due Process, and denied Plaintiff MJR her right to bring up her children without governmental interference.  All of the Defendants violated Plaintiffs Constitutional Rights and each participated in the acts, while acting under color of law.

247.     The above-listed Defendants have a policy, custom, and pattern of practice, and act under color of law in their capacities as employees for local, county and state public entities, and on a daily basis falsify reports, engage in acts of Abuse of Process, defraud the general public by filing false reports in the Juvenile Dependency Court to justify excessive expenditures of taxpayers' money and fail to notify the courts as to the truth of matters and circumstances as their informed. Defendants conspired to deprive Plaintiff MJR of her Constitutional Right to bring up her children without governmental interference.  Defendants and each of them, knowingly and willfully conspired, "acted in concert" and agreed among themselves to harm Plaintiff MJR by depriving her of the privileges and rights within the Constitution of the United States of America, because she belongs to a protected class and because of her religious beliefs and creed.

248.     To establish personal liability, it is enough to show that an official, acting under color of state law, caused deprivation of federal right. (See *Kentucky v. Graham* (1985) 473 US 159, 165, 87 L Ed 2d 114, 121, 105 S Ct 3099. Local governments,

---

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**57**

municipal corporations, and their agents acting under color of "state" law (which may encompass implementation or enforcement of a municipal, local law, regulation, policy, or custom, are "persons" subject to liability under 42 USC § 1983. *See Monell v. Department of Soc. Servs.* (1978) 436 US 658, 56 L Ed 2d 611, 98 S Ct 2018. California counties have been treated as municipalities for § 1983 purposes. *See Moor v. County of Alameda* (1973) 411 US 693, 36 L Ed 2d 596, 93 S Ct 1785. Also, *see Hernandez v. County of San Bernardino* (2004) 117 CA4th 1055, 12 CR3d 452 (erroneous wage garnishment against plaintiff by county's family support division may render county liable under § 1983 if family support division is determined to be the policymaker for the county.

249.     The aforesaid acts that defendants committed, as alleged in the foregoing paragraphs were done to justify the inheritance of tax dollars, without any true basis, by fraud. In addition to the above-stated facts, employees employed by the County of Los Angeles, illegally ran criminal background checks on all plaintiffs and disseminated the findings in the criminal history reports to individuals "outside of the juvenile courts". [See California Penal Code § 13303] Any person authorized by law to receive a record or information obtained from a record who knowingly furnishes the record or information to a person who is not authorized by law to receive the record or information is guilty of a misdemeanor. Penal Code § 13304. Any person, except those specifically referred to in Section 1070 of the Evidence Code, who, knowing he is not authorized by law to receive a record or information obtained from a record, knowingly buys, receives, or possesses the record or information is guilty of a misdemeanor. (A criminal record report is defined in Penal Code § 13300.)]

250.     These Defendants have a custom, policy and normal practice of obtaining criminal records to family members who are a party or family member of a minor child involved in a Juvenile Dependency Case and thereafter disseminate the record and its contents to "third parties" who are not entitled to receive such information. In fact, any record of criminal conviction to a potential caregiver of a child who is a party to a

Juvenile Dependency Case, should not even be subjected to having "irrelevant" convictions reported to any person, including the Court, that would not bar that person from being a good candidate as a caregiver for the child.

251.    As a proximate result of the actions of all Defendants have damaged all Plaintiffs in this action and have been damaged generally by loss of property, time, money, costs incurred, loss of liberty and damage to their emotional health.

252.    At all times mentioned herein, all Defendants acted willfully with the wrongful intention of injuring and from an improper or evil motive amounting to malice in that Defendants willfully and intentionally conspired to defraud and injure Plaintiffs.

## SIXTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

253.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

254.    "The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct....

255.    Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.  It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware.

256.    On or about Feb. 29, 2016, Defendants made comments about race and socioeconomic status- that "black women are supposed to be strong "Defendants stated that "Plaintiffs should have gone to school and got married before having kids".

**SECOND AMENDED COMPLAINT FOR DAMAGES**

59

257.     Defendant DCFS's Social Workers falsified their Detention Reports and Jurisdictional Reports, left out pertinent information regarding Kernell in order to reflect him in a positive light, detained Plaintiff MJR and her children without good cause, lied to Plaintiff MJR and recommend therapy to get her children back, never attempted to reunify Plaintiff MJR and her children, suppressed material evidence including evidence of physical abused against Plaintiff MR, and made unreasonable searches in Plaintiff MJR's home without a warrant and without justified cause.  Defendant DCFS's Social Workers never attempted to reunify Plaintiff MJR with her children as they promised.

258.     Commencing February 29, 2016, the Superior Court of California for Defendant LA COUNTY, Juvenile Dependency Court ordered that Defendant DCFS be authorized to detain Plaintiff MJR's children without a valid cause.  The aforementioned government agencies owed a duty of care to Plaintiff MJR to ensure that Defendant State of California does not make nor enforce any laws that abridges the rights of the citizens.

259.     During the same time, Defendants made false statements to the public in regards to Plaintiff MJR's criminal history, as means in preventing Plaintiff MJR from obtaining gainful employment.  Additionally, Defendants prevented Plaintiff MJR adequate visits with her children (PC § 278.5) and never allowed "reunification services" as normally provided under Welfare & Institutions Code § 300 et. seq.  Defendants filed a false Juvenile Dependency Petition against Plaintiff MJR and her children, which resulted in them being denied their right to present evidence on their behalf; denied their Due Process.

260.     Defendant DCFS's basis for its Juvenile Dependency Petition against Plaintiff MJR and her children, was based on an allegation that the parents were not good parents.

261.     Defendants participated with all other Defendants and acted in concert, and denied Plaintiff MJR her Due Process, and denied Plaintiff MJR her right to bring up her children without governmental interference.  All of the Defendants violated Plaintiffs Constitutional Rights and each participated in the acts, while acting under color of law.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**60**

262.     These Defendants have a custom, policy and normal practice of obtaining criminal records to family members who are a party or family member of a minor child involved in a Juvenile Dependency Case and thereafter disseminate the record and its contents to "third parties" who are not entitled to receive such information. In fact, any record of criminal conviction to a potential caregiver of a child who is a party to a Juvenile Dependency Case, should not even be subjected to having "irrelevant" convictions reported to any person, including the Court, that would not bar that person from being a good candidate as a caregiver for the child.

263.     Worst of all, Defendants and each of them Abused Process, because they falsified information to the Superior Court by stating that Plaintiff MJR was a criminal. Defendants made false statements to the public in regards to Plaintiff MJR's criminal history, as means in preventing Plaintiff MJR from obtaining gainful employment. Additionally, Defendants prevented Plaintiff from adequate visits with her child (PC § 278.5) and never allowed "reunification services" as normally provided under Welfare & Institutions Code § 300 et. seq.

264.     On or about Feb. 29, 2016, Michel H. Eisner, Deputy County Counsel, collective with Co-Defendants filed a false Juvenile Dependency Petition against Plaintiff MJR and her children.

265.     The conduct of Defendants and each of them as alleged herein was outrageous, reckless, and intended to and did cause Plaintiffs severe emotional distress.

266.     On or about the above-mentioned dates, Defendants, and each of them, did each of their acts to intentionally inflict emotional distress upon Plaintiffs, which resulted in "outrageous conduct." Wherefore, Plaintiffs did or does seek medical attention to sooth the anguish and mental suffering caused by Defendants.

267.     As a proximate result of Defendants' actions, Plaintiffs have suffered severe anguish, stress, anxiety and general damages.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

268.     Plaintiffs allege that such severe emotional distress has included without limitations embarrassment, anger, chagrin, disappointment, shame, worry, nausea and other forms of mental and emotional anguish.

269.     As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered economic, psychological, emotional, and physical damages.

270.     Pursuant to California Civil Code §3294 "where is it proven by clear and convincing evidence that Defendants are guilty of oppression, fraud, or malice, Plaintiffs, in addition to the actual damages, may recover damages for the sake of example and by way of punishing Defendants."

271.     Defendants' conduct intentionally and recklessly caused extreme emotional distress to Plaintiffs and have been intentional, malicious and oppressive, thereby entitling Plaintiffs to recover punitive damages.

272.     Plaintiffs are obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

## SEVENTH CAUSE OF ACTION FOR DEFAMATION OF CHARACTER
### (Slander and Libel)
### (Against All Defendants)

273.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

274.     The elements of a California Defamation case:  An intentional publication of a statement of fact; that is false; that is unprivileged; that has a natural tendency to injure or causes "special damage;" and, the defendant's fault in publishing the statement amounted to at least negligence.

275.     On December 12, 2021, Defendant CAGLE and Defendant DCFS's Social Workers Regina Minor and Darryllisha Burch-Parker continued with malicious and fraudulent intent, their practice of fabricating evidence and omitting exculpatory evidence

in their reports.  In addition to the previous false and inaccurate allegations against Plaintiff MJR, Defendant DCFS's Social Worker reports that Clark stated that, when Plaintiff MJR calls the children, Plaintiff SB's behavior noticeably changes and the calls cause "more harm, then good." However, Ms. Clark, is ready to testify that she never made such a statement.

276.    December 17, 2021, Defendant DCFS's Social Workers wrote Dehumanizing, embarrassing reports about Plaintiff MJR, which they knew were untrue and phrased it in a way to cast Plaintiff MJR in a false light.  As a result Plaintiff MJR has suffered and continues to suffer emotional harm. One of the most hurtful things they continued to say is that Plaintiff MJR is depressed, anxious, delusional among other things.  The legal abuse that Plaintiff MJR has been put through has caused her to experience emotional harm; yet, they are making it seem like she has a mental disease that is incurable and putting forth ideas that she may harm her children as a result.

277.    The Court worked together with Defendants to deliberately and intentionally prevent without exculpatory evidence from ever making it into the Court Record.  There is evidence that Plaintiff MJR has been evaluated by several mental health professionals, including going to therapy and Defendant DCFS's professional of choice. These doctors and nurses provided reports that Plaintiff MJR was completely sane and fit to care for her children, but Defendants collectively kept these documents from making it into the Court Record.

## EIGHTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY
### (Against All Defendants)

278.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

279.    Breach of Fiduciary Duty Law and Legal Definition. A fiduciary duty is an obligation to act in the best interest of another party. ... A person acting in a fiduciary capacity is held to a high standard of honesty and full disclosure in regard to the client and must not obtain a personal benefit at the expense of the client ...

**SECOND AMENDED COMPLAINT FOR DAMAGES**

280.     A fiduciary duty is the highest standard of care. The person who has a fiduciary duty is called the fiduciary, and the person to whom he owes the duty, is typically referred to as the principal or the beneficiary.

281.     To state a cause of action for a breach of fiduciary duty, a plaintiff must allege (1) the existence of a fiduciary duty relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.

282.     "A fiduciary relationship is ' " 'any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmostgood faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and insuch a relation the party in whom the confidence is reposed, if he voluntarilyaccepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge orconsent. . . .' " ' " (*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29 [130Cal.Rptr.2d 860], internal citations omitted.)• "Whether a fiduciary duty exists is generally a question of law. Whether the defendant breached that duty towards the plaintiff is a question of fact." (*Marzecv. Public Employees' Retirement System* (2015) 236 Cal.App.4th 889, 915 [187Cal.Rptr.3d 452], internal citation omitted.)

283.     The following Defendants had a special relationship with Plaintiff MJR and her children to protect them and to ensure that Plaintiffs' constitutional rights were not violated.  Plaintiff MJR and her children should have been able to trust them with the utmostgood faith for the benefit and interest of she and her children:

284.     Defendant SUN, Judge of the Superior Court of Los Angeles County, Juvenile Dependency Court, acting under color of law, was to determine issues such as whether certain facts are true, whether the children should be removed from Plaintiff MJR, what types of services should be offered to the family and whether the child should be returned to the family and the community or placed permanently in another setting. Defendant SUN could have prevented the wrongfuldoing, as soon as, it was determined

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**64**

that the Court did not have subject matter jurisdiction; yet, Defendant SUN failed to dismiss and allowed the wrongdoing against Plaintiff to coitinue on.

285.     Defendant MARPET, Commissioner of the Superior Court of Los Angeles County, Juvenile Dependency Court, acting under color of law, is an attorney selected by the judges of the court to perform various judicial functions as prescribed by law and given powers to hear and make decisions concerning certain legal matters, including family and juvenile court cases… However, in Plaintiff MJR and her children's Juvenile Dependency Case, Defendant MARPET had a disregard for applying statutory law in the interest of the children when making a ruling, which contributed to the ongoing wrongdoing of Defendants.

286.     Defendant SANDATE, an employee of Defendant LAPD, acting under color of law, failed to acknowledge and enforce a Restraining Order to protect Plaintiff MJR and her children against children's father ("Kernell"), properly investigate, falsely imprisoned Plaintiff MJR, unlawfully detained Plaintiff MJR's children, falsified a report, and committed perjury on the stand, which resulted in Plaintiff MJR's children being removed from her home to present.

287.     Defendant CAGLE was the Director of the Los Angeles County Defendant DCFS, acting under color of law and at all times relevant to Plaintiff MJR and her children's Juvenile Dependency Case, Defendant CAGLE was a government employee for Defendant LA COUNTY, that had a duty to protect Plaintiffs and to ensure that Plaintiffs' constitutional rights were not violated.  Also, Plaintiff CAGLE was Defendant LA COUNTY's Foster Care System official, responsible for the proper operation of the Foster Care System and to ensure that the system operated in accordance with Federal and State laws, for which the federal government provides annual funding to operate the system.

288.     Defendant HATAMIAN, Plaintiff MJR's Court Appointed Attorney, by Defendant MARPET, acting under color of law, and represented Plaintiff MJR at all times relevant to the Juvenile Dependency Case involving Plaintiffs SB and PB.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**65**

Defendant HATAMIAN suppressed evidence, denied Plaintiff MJR's right to be heard; moreover, denied Plaintiff MJR a fair trial.

289.     Three Potential Consequences of Breach of Fiduciary Duty:  Compensatory Damages. If an alleged breach of fiduciary duties leads to litigation then one of the most common outcomes is for the victim to receive compensatory damages. ...

290.     Punitive Damages. ... Professional Consequences.  Defendants' acts were intentional, malicious and oppressive, thereby entitling Plaintiffs to recover punitive damages.

291.     As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered economical, psychological, emotional, and physical damages.

292.     As a further direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs are obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiffs.

## NINTH CAUSE OF ACTION FOR LEGAL MALPRACTICE
### (Against All Defendants)

293.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

294.     To prove legal malpractice you must establish the following four elements: (1) duty, (2) breach, (3) causation, and (4) harm. These are the basic elements for most torts in California, as demonstrated herein.

295.     Duty:  Defendant CLC, acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint, provides legal representation for children and youth under the jurisdiction of the dependency court. "Every staff member at CLC contributes to infusing every proceeding and decision that's made with the premise that kids should be with their parents whenever possible."

**SECOND AMENDED COMPLAINT FOR DAMAGES**

Defendant CLC owed Plaintiffs a duty to examine the matter and uncover the truth;  yet, it stuck its head in the sand while Plaintiff MJR children were being removed without probable cause and Plaintiff MJR was victimized; denied her right to be heard and denied her right to a fair trial.

296.     Defendants had a duty to protect Plaintiffs and to ensure that Plaintiffs' constitutional rights were not violated.

297.     Defendant HATAMIAN, Plaintiff MJR's Court Appointed Attorney, by Defendant MARPET, acting under color of law, and represented Plaintiff MJR at all times relevant to the Juvenile Dependency Case involving Plaintiffs SB and PB. Defendant HATAMIAN suppressed evidence, denied Plaintiff MJR's right to be heard; moreover, denied Plaintiff MJR a fair trial.

298.     Breach of Duty:  Defendants CLC and HATAMIAN breached it duty to Plaintiff MJR and children, when it conspired with Co-Defendants and falsified reports, ignored statutory laws, and denied Plaintiff MJR a fair trial.  Defendant CLC was charged to advocate for Plaintiff MJR's children, but instead it failed to adhere to statutory law and denied the children of a fair hearing/trial, resulting in their removal from their mother.  Defendant CLC did the opposite of its mission.

299.     Defendant HATAMIAN owed Plaintiff MJR a duty to advocate in her interest; instead, Defendant HATAMIAN actively worked against Plaintiff MJR in his legal writings, presentation of evidence, and refused to object to untrue hearsay evidence. Defendant HATAMIAN refused to assist in providing arguments for Plaintiff MJR's appeal and refused to obtain court documents for Plaintiff MJR's review.  This dereliction and deviation from the standard of care and a failure to exercise reasonable care in fulfilling his duties has resulted in tremendous loss to Plaintiff MJR by way of not having custody of her children, and the financial consequences of fighting a court case in other state Pro Per.

300.     Causation:  But for Defendants ignoring statutory laws, denying Plaintiff MJR fair hearings and trial, Plaintiff MJR's children would have never been removed

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**67**

from her, away from their mother and family since July 31, 2019, more than three (3) years ago.

301.     Harm:  As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered economical, psychological, emotional, and physical damages.

302.     Punitive Damages. ... Professional Consequences.  Defendants' acts were intentional, malicious and oppressive, thereby entitling Plaintiffs to recover punitive damages.

303.     As a further direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs are obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiffs.

## TENTH CAUSE OF ACTION FOR FRAUD UPON THE COURT
### (Against All Defendants)

304.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

305.     Fraud upon the court" makes void the orders and judgments of that court. It is also clear and well-settled California law that any attempt to commit "fraud upon the court" vitiates the entire proceeding.

306.     The Court worked together with Defendants to deliberately and intentionally prevent exculpatory evidence from ever making it into the Court Record. There is evidence that Plaintiff MJR has been evaluated by several mental health professionals, including going to therapy and Defendant DCFS's professional of choice. These doctors and nurses provided reports that Plaintiff MJR was completely sane and fit to care for her children, but Defendants collectively kept these documents from making it into the Court Record.  The Court and Defendants committed Fraud Upon the Court, in

**SECOND AMENDED COMPLAINT FOR DAMAGES**

an effort to remove Plaintiff MJR's children from her on July 31, 2019, without probable cause.

307.     Defendant CLC's Attorney, Bashor lied to the Court in order to mislead the Court by stating for the record on December 17, 2021 that the children and Foster Mom, Clark, were not present to testify in court, when indeed they were present in Court and wanted to testify.  Bashor had in fact told them to leave and come back later when she calls.  Bashor, never called them to come back. When Plaintiff MJR called Clark, she told her that she was still waiting to testify, but was told to come back later.  Mother managed to get Ms. Clark admitted to court although her device was muted.

308.     Defendant DCFS's Social Workers wrote Dehumanizing, embarrassing reports about Plaintiff MJR, which they knew were untrue and phrased it in a way to cast Plaintiff MJR in a false light. As a result, Plaintiff MJR has suffered and continues to suffer emotional harm. One of the most hurtful things they continued to say is that Plaintiff MJR is depressed, anxious, delusional among other things.  The legal abuse that Plaintiff MJR has been put through has caused her to experience emotional harm; yet, they are making it seem like she has a mental disease that is incurable and putting forth ideas that she may harm her children as a result. Plaintiff MJR is happy and will continue to be happy when her children are returned and justice is served.

309.     In *Fernandez v. Bailey*, concealment is a factor that may be taken into account because concealment tactics, including frequent relocations, the use of aliases, and abstaining from school or community activities to avoid detection, may preclude a child from forming stable attachments. *Lozano*, 134 S. Ct. at 1236 (*Alito, J.,* concurring). Thus, although analysis of the concealment factor examines the removing parent's behavior, the focus remains on the child's connections to their new environment.

310.     In *Heartland Academy Community Church v. Waddle*, Furthermore, Plaintiffs allege in this case that Mr. Waddle procured the orders through misrepresentations and material omissions, actions which are not protected by absolute immunity. "[I]t [is] clearly established law that government officials ' procurement

**SECOND AMENDED COMPLAINT FOR DAMAGES**

`through distortion, misrepresentation and omission,'. . . of a court order to seize a child is a violation of the Fourth Amendment." *Malik*, (internal citation omitted). See also *Brokaw*, 235 F.3d at 1012 (noting "to the extent the defendants [a social worker and other government officers] knew the allegations of child neglect were false, or withheld material information, and nonetheless caused, or conspired to cause, [the juvenile's] removal from his home, they violated the Fourth Amendment."). "The fact that the order was allegedly obtained by omissions, rather than affirmative misstatements, is irrelevant, so long as the `omissions are so probative they would vitiate probable cause.'"*Malik* 191 F.3d at 1316, (quoting *DeLoach v. Bevers* 31, Thus, because Mr. Waddle did not merely execute the Juvenile Court's orders to seize the children from Heartland, but instead actually petitioned the court for such orders, as well as misstating material facts to the Juvenile Court Judge and omitting known material facts from his papers presented to the Juvenile Judge, the Court finds that his actions are not protected by the absolute immunity doctrine. As such, the Court will now address the issue of whether he violated the Plaintiffs' Fourth Amendment rights in procuring the orders for removal.

311.    Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself.  It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

312.    Punitive Damages. ... Professional Consequences.  Defendants' acts were intentional, malicious and oppressive, thereby entitling Plaintiffs to recover punitive damages.

313.    As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered economical, psychological, emotional, and physical damages.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**70**

314.     As a further direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs are obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiffs.

## ELEVENTH CAUSE OF ACTION FOR ULTRA VIRES ACTS
### (Against All Defendants)

315.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

316.     An "ultra vires" act is one performed without legal authority; something done which is beyond the scope of a corporation's authority. Board Actions. Associations that act outside their authority may have their actions reversed by the courts.

317.     Ultra vires acts are any acts that lie beyond the authority of a corporation to perform. Ultra vires acts fall outside the powers that are specifically listed in a corporate charter or law. This can also refer to any action that is specifically prohibited by the corporate charter.

318.     Defendants did not have legal authority to perform the acts or practices detailed herein; acts performed lie beyond their authority:

319.     Defendant CALIF, acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint, failed to oversee official(s) to properly operate the Foster Care System, including the portions of the system operated by Defendant DCFS, relating to dependency cases, foster care, and termination of parental rights, *inter alia*, pursuant to the Adoption and Safe Families Act and the Family First Prevention Services Act of 2018.

320.     Defendant LAPD, acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint.  Defendant LAPD failed at accomplishing its mission on behalf of Plaintiffs; its mission to safeguard the lives and property of the people they serve, to reduce the incidence and fear of crime, and to

enhance public safety while working with the diverse communities to improve their quality of life.

321.    Defendant LA COUNTY, acting under color of law, is a government that is defined and authorized under the California Constitution, California law, and the Charter of the County of Los Angeles.  The County government provides countywide services such as … law enforcement, jails, and social services.  Defendant LA COUNTY bears responsibility, in whole or in part, for the acts complained of in this Complaint.  Its government agencies failed Plaintiffs.

322.    Defendant DCFS, acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint, and has a special relationship with Plaintiff MJR and owed a duty to comply with State laws, Federal Laws and the U.S. Constitution.  Defendant DCFS's operations involve investigating child welfare and abuse allegations, foster care, and adoption.  Defendant DCFS breached its duties owed to Plaintiff MJR by taking Plaintiff MJR's children and placed them with foster parents or persons other than the biological parents without probable cause.  Defendant DCFS's Deputy County Counsel, Dependency Investigators, and Social Workers falsified reports and suppressed material evidence.

323.    Defendant CLC, acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint, provides legal representation for children and youth under the jurisdiction of the dependency court.  "Every staff member at CLC contributes to infusing every proceeding and decision that's made with the premise that kids should be with their parents whenever possible"; yet, Plaintiff MJR children were removed and she was victimized; denied her right to be heard and denied her right to a fair trial.

324.    Punitive Damages. ... Professional Consequences.  Defendants' acts were intentional, malicious and oppressive, thereby entitling Plaintiffs to recover punitive damages.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**72**

325.    As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered economical, psychological, emotional, and physical damages.

326.    As a further direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs are obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiffs.

### TWELFTH CAUSE OF ACTION FOR DECLARATORY RELIEF
### (Against All Defendants)

327.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

328.    The Declaratory Judgement Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

329.    In order to award declaratory relief, the Court must first determine whether there is "a case of actual controversy." *Id.*; see also *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 893 (9th Cir. 1986).  This requirement is "identical to the Article III's Constitutional Case or Controversy Requirement." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994) (citing *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981)).  Because standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)." *White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).*

330.    A plaintiff has the burden of establishing the elements required for standing . . . ." *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996); see also In *re Dynamic Random Access Memory* (DRAM) *Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008)

**SECOND AMENDED COMPLAINT FOR DAMAGES**

73

("The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction.").  Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

331.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning respective rights and duties under the provisions of Federal and State Laws.

332.     In determining whether there is a case or controversy, the test is whether the alleged facts demonstrate there is a substantial controversy between parties, with adverse legal interests, of such immediacy and existence so to warrant a declaratory judgment.

333.     An actual legal controversay and dispute exist between Plaintiffs and Defendants as to the unconstitutionality conduct of Defendants, resulting in Plaintiff MJR being arrested and her children detained and placed in the Foster Care System, away from their family since July 31, 2019, more than three (3) years, without probable cause, violating their right to Due Process, the Fourteenth Amendment of the United States Constitution, which entitles a parent to bring up his or her child without governmental interference.

334.     (1) Issue a declaratory judgment that arresting Plaintiff MJR and detaining her children on July 31, 2019 was arbitrary and capricious, not in accordance with law, and Defendants acted in excess of statutory authority; (2) Issue an order vacating and setting aside all orders and judgment(s) against Plaintiff MJR and return her children home forthwith; (3) Issue a declaratory judgment that all Defendants violated Plaintiff MJR and her children's United States Constitutional Rights, Due Process Clause; (4)

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**74**

Issue an order enjoining Defendants to stop all prosecutory misconduct; otherwise, unlawful conduct, against Plaintiffs and children.

### THIRTEENTH CAUSE OF ACTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION
#### (Against All Defendants)

335.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

336.     Injunctive relief is generally only granted in extreme circumstances. The party seeking a preliminary injunctive relief must demonstrate: (1) irreparable injury in the absence of such an order; (2) that the threatened injury to the moving party outweighs the harm to the opposing party resulting from the order; (3) that the injunction is not adverse to public interest; and (4) that the moving party has a substantial likelihood of success on the merits. In considering these factors, courts have been described to apply a "sliding scale" approach where the more likely a movant will succeed on the merits, the less irreparable harm (to the movant) needs to be shown in granting the injunction. There is no mathematical means of balancing these factors, therefore, the "sliding scale" approach is based on a court's intuitive judgement. It is worth noting that courts will not find irreparable harm where the damages sustained are calculable. New York has held that in such situations, monetary damages serve as an adequate remedy.

337.     Pursuant to Federal Rules of Civil Procedure 65, (b)(3): …the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

338.     Plaintiff  MJR will be irreparably harmed if a Preliminary Injunction is not issued, because her children was removed from her July 31, 2019 and placed in the Foster Care System, away from family, for over three (3) years.

---

**SECOND AMENDED COMPLAINT FOR DAMAGES**

339.     A temporary injunction differs from a temporary restraining order, in terms of the duration of the restraint granted by a trial court's interlocutory order. Unlike a temporary restraining order, which is limited in duration, a temporary injunction is effective for as long as the Plaintiffs' cause of action remains pending and until final judgment has been entered on the merits of Plaintiffs' cause of action.

340.     Temporary injunctions, unlike temporary restraining orders, cannot be founded simply upon sworn pleadings or affidavits, but require the presentation of evidence. The standard for Temporary Injunction will be satisfied after hearing and presentation of the evidence to the Court.

341.     The wrongful conduct of the above specified Defendants, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiffs.  Plaintiffs will not have their right to bring up their children without the interference of the government.  Plaintiffs have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent further irreparable damage to Plaintiffs.

342.     Plaintiffs have suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined and it is impossible for Plaintiffs to determine an amount of damage that they have and will continue to suffer.

343.     Plaintiffs have alleged causes of actions against Defendants, as indicated in their Verified Second Amended Complaint for Damages, herein, demonstrating a probable right to relief and likelihood of success on the merits that Plaintiffs will suffer imminent and irreparable harm without Court intervention.

344.     Accordingly, Plaintiffs request that the Court provide temporary injunctive relief and a permanent injunction requiring Defendants and all others acting in concert with to:

     a)  Stop, immediately, the current detention and placement of Plaintiff MJR's minor children and return them to her forthwith;

**SECOND AMENDED COMPLAINT FOR DAMAGES**

b) operate the Foster Care System in accordance with the State and Federal Laws in effect;

c) stop the Foster Care System Operators and affiliates from ignoring the procedural and substantive Due Process Rights of parents, children, and other relatives;

d) require the Foster System Operators to immediately and promptly provide Juvenile Dependency Court Judges and birth parents with all exculpatory evidence;

e) compel the Foster System Operators to refrain from using perjured testimony in Juvenile Dependency Court proceedings and to notify the local State Attorney of any perjured testimony that has been offered before the Court;

f) Prohibit Foster System Operators from fabricating false reports in order to try to disqualify relatives as caregivers;

g) require the Foster System Operators to immediately provide any relative disqualified from serving as a relative caregiver the information needed to correct the errors in the reports;

h) require Foster System Operators to promptly correct false statements in home studies and to remove those whom they incorrectly listed on the abuse registry, and never use again;

i) require all attorneys and social workers on behalf of the California Foster Care System to submit an affidavit of personal knowledge certifying the facts in each case with out-of-state relatives of children in State Foster Care, to timely demonstrate California's compliance, at the time of shelter and the first hearing after a TPR judgment, with respect to the notice and hearing requirements of California's Uniform Child Custody Jurisdiction Enforcement Act; and

**SECOND AMENDED COMPLAINT FOR DAMAGES**

77

j)   a Temporary Injunction be issued, after notice to Defendants and an evidentiary hearing, restraining Defendants from directly or indirectly engaging in any of the actions discussed above during the pendency of this case.

### A.  The Preliminary Injunction Should be Granted

345.   Traditional equitable considerations weigh in favor of granting the preliminary injunction. The evidentiary record demonstrates that: Plaintiffs are likely to succeed on the merits of the claim, Plaintiffs are likely to suffer irreparable harm in the absence of preliminary injunctive relief, the balance of the equities tip in Plaintiffs' favor, and an injunction is in the public interest.

346.   In determining whether to grant a motion for a preliminary injunction, courts will generally consider the following equitable factors: (a) whether the moving party is likely to succeed on the merits, (b) whether the moving party is likely to suffer irreparable harm in the absence of preliminary relief, (c) whether the balance of equities tips in the moving party's favor, and (d) whether an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.,* 14 555 U.S. 7, 20 (2008).

### B.  Preliminary Injunctive Relief is Necessary to Protect Against Further Irreparable Harm

347.   The requested preliminary injunction is necessary to prevent irreparable harm during the pendency of the litigation. Without this relief, the court will be unable to render a meaningful judgment on the merits.

### C.  The Court Has Discretion to Grant Preliminary Injunctive Relief

348.   Plaintiffs request for a preliminary injunction is properly within the Court's discretion. The preliminary relief requested is of the same character as the final relief

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**78**

sought in the complaint.  The court has the discretion to issue the preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. The injunctive relief requested does not exceed the court's jurisdiction or conflict with any federal law.

349.    Pursuant to Federal Rule of Civil Procedure 65, a federal court has the authority to issue a preliminary injunction in a case where it has jurisdiction. The court must have personal jurisdiction over the defendant as well as subject matter jurisdiction to issue the injunction. *Enterprise Intern. v. Corporacion Estatal*, 762 F.2d 464, 470 (5th Cir. 1985); Jones v. Cawley, 10-CV-712, at *2 (N.D.N.Y. June 21, 2010).

350.    For cases that are in federal court based on diversity jurisdiction, a court will consider state law in determining the substantive legal issues associated with the parties' dispute and will apply federal procedural law to determine whether the preliminary injunction should issue. *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 15 (2d Cir. 1987); *System Operations, Inc. v. Scientific Games Development Corp.,* 555 F.2d 1131, 1141 (3d Cir. 1977).

351.    The procedure for obtaining an injunction is governed by federal law. Thus, if an issue pertaining to the preliminary injunction is procedural, federal law controls and overrides any contrary state law. *Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991) (holding that Rule 65 of the Federal Rules of Civil Procedure controlled whether a preliminary injunction could issue and rejecting the argument that state law should govern this issue in a diversity case); *Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1244 (N.D. Iowa 1995) (holding that federal procedure, not state law, governed whether a preliminary injunction should issue).

**D.   Plaintiffs will Experience Irreparable Harm in the Absence of the Preliminary Injunction**

352.    The evidence demonstrates that Plaintiffs cannot wait for relief from a final judgment on the merits. The irreparable injury that Plaintiffs would suffer in the interim

would render any final judgment a nullity, and money damages would not be able to compensate Plaintiffs for that harm.

353.    An irreparable injury is an injury for which the court could not compensate the Plaintiff if the Plaintiff prevailed in the final judgment. Injuries that are generally not considered to be "irreparable" include lost income and other economic losses that are calculable and compensable by monetary damages. *Di Biase v. SPX Corp.,* 872 F.3d 224, 230 (4th Cir. 2017).

    1. *An Adequate Remedy at Law is Unavailable for Plaintiffs' Harms*

    There is no adequate remedy at law for Plaintiffs' harms. Any award of damages would not fully compensate Plaintiffs for the harm caused by Defendants' conduct.

    An adequate remedy at law may be deemed unavailable if legal redress may be obtained only by commencement of multiple actions, such as when the defendant repeatedly commits the allegedly harmful acts. *Ecolab Inc. v. Paolo*, 753 F. Supp. 1100, 1110 (E.D.N.Y. 1991).

    Each day that the Defendants delay their compliance with controlling laws, the children and their families are further damaged. There is no plain, adequate, or complete remedy at law, as the ordeals Plaintiffs and her family have encountered, as courthouse doors and case remain locked and case information showing the wrongful deeds of the Foster System remain hidden by Defendants' Foster System Operators.

    2. *The Parties' Relative Hardships Weigh in Favor of the Preliminary Injunction*

    The evidence demonstrates that the hardship to Plaintiffs from denying the injunction would outweigh the hardship experienced by Defendants if the injunction were granted. The preliminary injunction is therefore warranted by the parties' relative hardships.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

In deciding a motion for a preliminary injunction, the court will assess the relative hardships faced by the parties. This assessment involves balancing the injury faced by the moving party against the injury that would be sustained by the opposing party if the injunction were granted. *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008).

### E.  The Injunction Should Be Granted, as Plaintiffs are Likely to Succeed on the Merits

354.    The evidence demonstrates that Plaintiffs are likely to succeed on the merits of the underlying claims. At this stage, Plaintiffs do not need to demonstrate absolute certainty of success on its claims, but the evidence demonstrates that Plaintiffs have a strong likelihood of success.

355.    This factor weighs in favor of granting preliminary injunctive relief. In determining whether to grant a motion for a preliminary injunction, a court must assess the likelihood that the moving party will ultimately succeed on the merits. *Munaf v.Geren*, 553 U.S. 674, 3 (2008) (holding that it is abuse of discretion to grant preliminary injunction without considering merits of underlying claim).

356.    While the moving party must set forth evidence to support a likelihood of success on the merits, this factor is not dispositive in determining whether to grant injunctive relief. The moving party does not need to demonstrate an absolute certainty of success in order to prevail. *Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985).

### F.  Permanent Injunction Relief

357.    "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. c. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993).

358.    If Plaintiffs can demonstrate that they would be greatly harmed by the Court's failure to grant an injunction, then the determination of success on the merits

bears much less weight in the determination to grant an injunction. *Robbins v. Superior Court*, 38 Cal. 3d 199 (1985)

### G. Consolidation would Deprive Plaintiffs of a Jury Trial on the Merits

359.    The evidentiary record establishes sufficient grounds for granting Plaintiffs' requested preliminary injunction, and Plaintiffs can present any additional evidence requested by the Court at the hearing.  However, consolidating the hearing on the preliminary injunction with a trial on the merits would be improper, as Plaintiffs have not waived its right to a jury trial.

360.    A request for a preliminary injunction that could negate the court's authority to render a final judgment in the action may be handled by the court as a request for permanent injunctive relief.  In such a case, the court has the discretion to consolidate a hearing on a motion for a preliminary injunction with a trial on the merits. Fed. R. Civ. P. 65(a)(2).

### H. Because the Statute Violates the First Amendment, the Injunction Must be Granted.

361.    Plaintiffs have demonstrated a strong likelihood of success on the merits of its First Amendment claims.  Having made this showing, it is Defendants burden to demonstrate why an injunction should not issue.  Because Defendants cannot justify the statute infringement of First Amendment rights, the Preliminary injunction must be granted.

362.    In Plaintiffs' Second Amended Complaint, a showing of a substantial likelihood of success on the merits often also establishes irreparable harm. Thus, a showing of substantial likelihood of success on the merits can be the determining factor that warrants the issuance of a preliminary injunction. *Sindicato Puertorriqueño De Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir.  2012); Phelps-Roper v. Nixon, 509 F.3d 480, 485 (8th Cir. 2007).

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**82**

363.     When a plaintiff alleges that a statute violates the First Amendment to the United States Constitution and seeks preliminary injunctive relief on that ground, the burden shifts to the government to show why an injunction should not issue. Specifically, the government must demonstrate that the plaintiff is unlikely to succeed on the merits of the First Amendment claim because the statute is constitutional. *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 666 (2004) (government has burden of proving constitutionality of content-based restrictions on speech).

## I.   The Injunction is Narrowly Tailored to Remedy Specific Harms

364.     The requested preliminary injunction is narrowly tailored to enjoin only Defendants and to remedy only the specific harms established by Plaintiffs. It is therefore proper in scope and should be granted.

365.     A court will grant a preliminary injunction when necessary to protect civil rights. *Clemons v. Board of Education of Hillsboro*, 228 F.2d 853, 857 (6th Cir. 1956) (injunction will issue to protect and preserve basic civil rights); *Cent. Presbyterian Ch. v. Black Liberation Front*, 303 F. Supp. 894, 901 (E.D. Mo. 1969) (preliminary injunction granted to enjoin violation of civil rights laws guaranteeing plaintiffs' right to use their property for religious services).

366.     Irreparable injury may be presumed in cases involving certain deprivations of civil rights, including deprivation of First Amendment rights. *Elrod v. Burns*, 427 U.S. 47, 373 (1976).

367.     A court will find that the civil rights Plaintiffs have established a likelihood of success on the merits when Defendant's proposed actions will clearly violate constitutionally protected rights. *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) (preliminary injunction was granted when plaintiffs established First Amendment violations); *American Federation of Government Employees, Afl-1 Cio, Council 33 v. Meese*, 688 F. Supp. 547, 548 (N.D. Cal. 1988) (compulsory drug testing enjoined as

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**83**

violation of Fourth Amendment "unless and until" plaintiff can show that such testing supersedes constitutional rights of employees).

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment against all Defendants, as to all causes of action, as follows:

1.      A preliminary and permanent injunction against Defendants and its directors, officers, agents, employees and representatives and in and all persons acting in concert with them from engaging in each of the unfair, unlawful, and fraudulent business practices set forth herein;

2.      Injunctive relief, both preliminary and permanent, as allowed by law, (including preliminary injunctive relief to be based upon a separate application);

3.      A declaratory judgment that the practices complained of in this Complaint are unlawful and violate 42 U.S.C. 1988;

4.      Plaintiff suffered damages as a result of the Violations of Civil Rights by Defendants in the amount of $1,000,000.

5.      Plaintiffs pray for a judgment in the amount of  $1000,000.00 against each Defendant for this cause of action;

6.      Plaintiffs suffered damages as a result of the Conspiracy ~~A~~against Plaintiff's Rights by Defendants in the amount of $1,000,000.00.

7.      General damages in the amount of to be proven for all other damages deemed appropriate by the courts and as allowed by statute;

8.      Special damages according to proof;

9.      Plaintiff demands a jury trial as to the issues so triable;

10.     Punitive damages as allowed by law, as against only the individual Defendants and not any municipality, a total of $8,000,000.00;

11.     Attorneys fees pursuant to 42 U.S.C. § 1988, and any other appropriate statute;

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**84**

12.     Costs of suit incurred herein; and

13.     Such other and further relief as the Court deems proper.

Plaintiff hereby **DEMAND FOR JURY TRIAL**.

DATED:  June 15, 2023                    THE LAW OFFICES OF ANGELA
                                                        SWAN, APC


                                                        By: _____
                                                              Angela Swan,
                                                              Attorney for Plaintiffs

**SECOND AMENDED COMPLAINT FOR DAMAGES**

## **VERIFICATION**

I am the Plaintiff in this action.  I have read the foregoing VERIFIED SECOND AMENDED CIVIL COMPLAINT FOR DAMAGES, and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*Executed on* ____*June 15, 2023*_, *at Torrance, California.*


BY:   /s/Melody J. Rodgers_____
MELODY J. RODGERS, Plaintiff


BY:   /s/Judy G. Rodgers_____
JUDY G. RODGERS, Plaintiff


BY:   /s/Lucille D. Gay_____
LUCILLE D. GAY, Plaintiff

---

**SECOND AMENDED COMPLAINT FOR DAMAGES**