Angela Swan, #213793
THE LAW OFFICES OF ANGELA SWAN,
A PROFESSIONAL CORPORATION
21151 South Western Avenue, Suite 177
Torrance, CA  90501
Office Telephone:     (310)755-2515
Facsimile:              (310)878-0349
Email:            aswan@angelaswanlaw.com

Attorney for Plaintiffs MELODY J. RODGERS; JUDY G. RODGERS; LUCILLE D. GAY; MELONY RODGERS; HARMONY RODGERS; SYMPHONY BROWN; and PRESTON BROWN

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION-LOS ANGELES**

| | |
|---|---|
| MELODY J. RODGERS; JUDY G. RODGERS; LUCILLE D. GAY; MELONY RODGERS; HARMONY RODGERS; SYMPHONY BROWN; and PRESTON BROWN, individuals, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF CALIFORNIA; LOS ANGELES COUNTY; DEPARTMENT OF CHILDREN AND FAMILY SERVICES; LOS ANGELES POLICE DEPARTMENT and CHILDREN'S LAW CENTER; KERNELL BROWN; and DOES 1 through 10, Inclusive, <br><br> Defendants. | CASE NO.:  2:22-cv-02418-FMO-PLA <br> Courtroom:  6D <br> Dist. Judge: Hon. Fernando M. Olguin <br> Complaint Filed:  January 25, 2022 <br><br> ~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES, and DECLARATORY AND INJUNCTIVE RELIEF <br> 1.  VIOLATION OF 42 U.S.C. 1983 <br> 2.  VIOLATION OF 42 U.S.C. 1985 <br> 3.  VIOLATION OF 42 U.S.C. 1986 <br> 4.  MONELL RELATED CLAIMS – (LAW ENFORCEMENT EXCESSIVE FORCE/FALSE IMPRISONMENT/ SOCIAL WORKER MISCONDUCT/ PROSECUTORIAL MISCONDUCT) <br> 5.  MALICIOUS PROSECUTION/ ABUSE OF PROCESS <br> 6.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS <br> 7.  DEFAMATION OF CHARACTER – SLANDER  ~~FALSE LIGHT~~and LIBEL |

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES

1



) 8.   BREACH OF FIDUCIARY
) 9.   BREACH OF IMPLIED
) COVENANT OF GOOD FAITH & FAIR
) DEALING
) 10.9.      LEGAL MALPRACTICE
) 11.10.      FRAUD UPON THE
) COURT
) 12.11.      ULTRA VIRES ACTS
) 13.12.      DECLARATORY RELIEF
) 14.13.      TEMPORARY
) RESTRAINING ORDER, PRELIMINARY
) AND PERMANENT INJUNCTION
) 15.  VIOLATION OF RICO ACT under
) 18 USC § 1962 [d]
)
)
)
)
) **JURY TRIAL DEMANDED**
)
)
)
)
)
)
)

---

## I.   JURISDICTION AND VENUE

1.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4).

1.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1346 (civil action against the United States founded upon the Constitution, an Act of Congress, or an executive regulation), 28 U.S.C. § 1361 (action to compel officer or agency to perform duty owed to Plaintiff), and 5 U.S.C. §§ 701-706 (Administrative Procedure Act). An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

2

declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 705-706.

2. The United States District Courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs… pursuant to 28 U.S.C. § 1332 (a).

3.  Many of the acts and conduct complained herein, occurred in substantial part in this District, including the dissemination and recording of Documents, which contained material misstatements and omissions, complained of herein.  28 U.S.C. § 1391(b)(1)(2).

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e), because this is a judicial district in which the State of California resides and this action seeks relief for the State against federal agencies and officials acting in their official capacities.

## II.    CERTIFICATION OF COMPLIANCE CALIFORNIA TORT NOTICES & CLAIM FORM REQUIREMENTS

4. I, MELODY J. RODGERS, hereby declare that claimClaim for damage notices weren't Damage Notices were not mailed to the "Clerk of the Board of Supervisors" for the County of Los Angeles.

5.  However, EXHAUSTION OF STATE REMEDIES In addition, civil rights actions the exhaustion of state remedies is NOT A PREREQUISITE to bringing not a prerequisite to the commencement of an action under 42 USC § 1983.  See in federal court. *Cf.*, *Patsy v. Florida Board of Regents* (1982), 457 USU.S., 496, 73 L Ed 2d 172, 102 S Ct. 2557., 73 L.Ed.2d 172 (1982).  *See Heath v. Cleary,* (9th Cir 1983) 708 2d 1376, 1378 (concluding that contrary pre-*Patsy* decisions I Ninth Circuit are no longer authoritative).  As the Court stated in *Monroe v. Pope*, 365 U.S. 167, 183, 81 S.Ct. 473,

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

3

482, 5 L.Ed.2d 492 (1961), "The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is involved."

6.   The doctrine of judicial exhaustion does not apply to § 1983 actions in federal court and it is well established that a § 1983 plaintiff need not exhaust State remedies prior to bringing a federal civil rights claim. *Embury v. King*, 191 F. Supp. 2d 1071, 1082-83 (N.D. Cal. 2001).

5.7.        Here, plaintiffsPlaintiffs have properly pled a cause of action under the **Federal Civil Rights Act**, in addition to other causes of action

### III.    THE PARTIES

6.8.        MELODY J. RODGERS ("Plaintiff MJR"), a natural person, is a private individual within the meaning of California law and is a citizen of the United States, and at all times relevant hereto a resident of North Carolina.  Plaintiff is the mother of minor children, Melony Rodgers (hereinafter known as M.R.), Harmony Rodgers (hereinafter known as H.R.), Symphony Brown (hereinafter known as S.B.), and Preston Brown (hereinafter known as P.B.).,

7.9.        JUDY G. RODGERS ("herein after known as J.R.").Plaintiff JR"), a natural person, is a private individual within the meaning of California law and is a citizen of the United States, and at all times relevant hereto a resident of Alaska.  Plaintiff is the grandmother of minor children, Melony Rodgers (hereinafter known as M.R.), Harmony Rodgers (hereinafter known as H.R.), Symphony Brown (hereinafter known as S.B.), and Preston Brown (hereinafter known as P.B.).Brow,

8.10.        Plaintiffs and minor children, Melony Rodgers (hereinafter known as M.R.), Harmony Rodgers (hereinafter known as H.R.), Symphony Brown (hereinafter known as S.B.), and Preston Brown (hereinafter known as P.B.), natural persons, are private individuals.

11. Minor children Melony Rodgers ("Plaintiff MR"), Harmony Rodgers ("Plaintiff HR"), Symphony Brown ("Plaintiff SB"), and Preston Brown ("Plaintiff PB"), natural

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

4

persons, are private individuals within the meaning of California law and are citizens of the United States.  Plaintiffs SB and PB, at all times relevant hereto a resident of California and children of Plaintiff MJR.  Plaintiffs MR and HR, at all times relevant hereto a resident of California and Alaska.

12. STATE OF CALIFORNIA ("Defendant CALIF"), acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint, is a California government that bears responsibility, in whole or in part, for the acts complained of in this Complaint, doing business in the County of Los Angeles, within the laws of the State of California.  It oversees official(s) to properly operate the Foster Care System, including the portions of the system operated by Defendant DCFS, relating to dependency cases, foster care, and termination of parental rights, *inter alia*, pursuant to the Adoption and Safe Families Act and the Family First Prevention Services Act of 2018.

13. LOS ANGELES COUNTY ("Defendant LA COUNTY"), acting under color of law, is a government that is defined and authorized under the California Constitution, California law, and the Charter of the County of Los Angeles.  The County government provides countywide services such as … law enforcement, jails, and social services. Defendant LA COUNTY bears responsibility, in whole or in part, for the acts complained of in this Complaint.

14. LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES ("Defendant DCFS") is an agency of the government of Los Angeles County, doing business within the laws of the State of California, acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint, and has a special relationship with Plaintiff MJR and owed a duty to comply with State laws, Federal Laws and the U.S. Constitution.  Defendant DCFS's operations involve investigating child welfare and abuse allegations, foster care, and adoption. Defendant DCFS files child welfare allegations in Edmund D. Edelman Children's Court, located in Monterey Park, California, and the Alfred J. McCourtney Juvenile Justice

Center in Lancaster, California.  Defendant DCFS is represented by Los Angeles County Counsel.  Los Angeles Dependency Lawyers represents the parents and Children's Law Center represents the children.  Defendant DCFS breached its duties owed by taking Plaintiff MJR's children and placed them with foster parents or persons other than the biological parents without probable cause.  Defendant DCFS's Deputy County Counsel, Dependency Investigators, and Social Workers falsified reports and suppressed material evidence.

15.      THE CITY OF LOS ANGELES POLICE DEPARTMENT ("Defendant LAPD"), acting under color of law, a government agency that bears responsibility, in whole or in part, for the acts complained of in this Complaint, doing business in the County of Los Angeles, within the laws of the State of California.  Defendant LAPD at accomplishing its mission on behalf of Plaintiffs; its mission is of safeguard the lives and property of the people they serve, to reduce the incidence and fear of crime, and to enhance public safety while working with the diverse communities to improve their quality of life. Its mandate is to do so with honor and integrity, while at all times conducting themselves with the highest ethical standards to maintain public confidence.

9.16.        CHILDREN'S LAW CENTER ("Defendant") CLC"), acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint, doing business in the County of Los Angeles, provides legal representation for children and youth under the jurisdiction of the dependency court.; specifically, Angela Torres, Jamie N. Kim, Margaret Lee, and Alyson Bashor.  "Every staff member at CLC contributes to infusing every proceeding and decision that's made with the premise that kids should be with their parents whenever possible."

10.KERNELL BROWN ("Defendant"), natural person, is private individuals within the meaning of California law and is a citizen of the United States, and at all times relevant hereto a resident of California and father of Melony Rodgers (hereinafter known as M.R.), Harmony Rodgers (hereinafter known as H.R.), Symphony Brown (hereinafter known as S.B.), and Preston Brown (hereinafter known as P.B.).

---

**FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES**

6

11. Defendants and each of them have denied and prevented plaintiffs from the right
to privacy, the right to familial association, the right to speak to each other freely, and the
due process right to bring up her child without government interference.

**A. DEFENDANTS' EMPLOYEES AND OTHERS**

12. bobby D. Cagle ("Cagle") was the Director of the Los Angeles County Department
of Children and Family Services (DCFS). At all times herein mentioned Defendant
"Cagle" was a government employee for the County of LOS ANGELES, that had a duty
to protect Plaintiffs and to ensure that Plaintiffs' constitutional rights were not violated.

13. Cagle was the LOS ANGELES foster system **official** responsible for the proper
operation of the foster care system and ensuring that the system operated in accordance
with federal and state law, for which the federal government provides annual funding to
operate the system.

14. Cagle maliciously signed numerous false reports regarding Plaintiff M.R. and her
family and presenting them to the juvenile court to maliciously prosecute mother and
obtain an adverse action against her between the dates of March 2021 to present.

15. Cagle also negligently hired numerous social workers who were unlicensed
unqualified and inexperienced for their jobs. DEFENDANT then failed to supervise and
oversee the unlicensed workers who were working under other unlicensed workers which
is a breach of DEFENDANTS duty of care to Plaintiffs.

16. During Cagle's tenure as the head of DCFS he failed to respond to PLAINTIFFS'
numerous complaints and communication regarding social worker misconduct, and the
denial of minor children's kinship care arrangement, which is a willful disregard for
correct policy and procedure.

17. Cagle harmed PLAINTIFFS by separating them without due process and using
perjury and false light misrepresentation of mom's true character. On all occasions he
excluded exculpatory evidence surrounding incidents described in the social workers
report that were presented to the court.

**B. GOVERNOR GAVIN NEWSOM**

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

7

1    18. Newsom is the Governor of the State of California, the head of the executive
2    branch of the California government and the person responsible for the proper operation
3    of the foster care system, including the portions of the system operated by the California
4    Department of Children and Families Services [DCFS]). By law Governor is responsible
5    for the proper administration of DCFS, assuring DCFS operates in conformity with State
6    and federal law and in compliance with the agreement with the federal government under,
7    inter alia, the Adoption and Safe Families Act and the Family First Prevention Services
8    Act of 2018.
9    19. Newsom as executive officer of California, the Governor is responsible not only
10   for the hiring and continued employment of Brandon T. Nicolson, Director of Los
11   Angeles County Department of Children and Family Services but also to make sure that
12   he and the DCFS personnel are not abusing their positions.
13   20. Newsom is also responsible under State law for oversight of DCFS compliance
14   with the mandatory provisions of the California law relating to dependency cases, foster
15   care, and termination of parental rights and is responsible for ensuring DCFS protects the
16   federally protected civil rights of foster children and their biological families by ensuring
17   that once children are removed from their biological parents, they are placed with
18   biological family members if they cannot be safely returned to their Birth Parents.
19   21. Newsom is also responsible for making sure that the Foster System Operators do
20   not provide perjured testimony to the dependency courts, do not withhold pertinent
21   information, or mislead the court about applicable law, and to make sure those operating
22   the California foster system follow the law, rather than ignoring it to unlawfully separate
23   foster children from their relatives, so they can be placed with nonrelative system
24   connected personnel.
25   22. Since Newsom assumed office in January 2019, he has overseen the operations of
26   the California foster care system and tolerated actions taken by the other foster system
27   connected Defendants in a manner contrary to law.
28

---

**FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES**

**8**

23. MICHEL H. EISNER; MARY THERESA MEZA; CARVIN HALL; SONIA VALIENTE and at all times herein mentioned, were government employees who were employed by the County of Los Angeles, acting under color of law, who had a special relationship with Plaintiffs and owed a duty, to comply with State laws, Federal Laws and the U.S. Constitution, but breached their duties owed to Plaintiffs by taking Plaintiff's children and placing them into a foster home, without cause.

24. COUNTY OF LOS ANGELES; Los Angeles Department of Children and Family Services; Superior Court of California for the County of Los Angeles were government agencies and/or entities acting under color of law, who had a special relationship with plaintiff and owed a duty, to comply with State laws, Federal Laws and the U.S. Constitution, but breached their duties owed to Plaintiff by taking Plaintiff's child and placing the child with foster parents or persons other than the biological parents.

25. **JERRY BROWN at such time was Governor** for the state of California, who lives in the Los Angeles County, and at all times herein mentioned resided in the County of Los Angeles:

26. **XAVIER BECERRA – Los Angeles Attorney General, employed for the Los Angeles District Attorney's Office;**

27. **ROB BONTO – Los Angeles Attorney General, employed for the Los Angeles District Attorney's Office**

28. **MARY C. WICKHAM Los Angeles Attorney General, employed for the Los Angeles District Attorney's Office**

29. **RODRIGO A. CASTRO-SILVA – Los Angeles County Counsel**

30. **GEORGE GASCON –** Los Angeles District Attorney conspired and colluded with Kernell Brown to assault, batter, harass, and stalk Plaintiff mom. Gascon failed to prosecute K.B. for his attack

31. **Defendant KERNELL BROWN ("K.B.) – Father of Plaintiff's Children**

32. **MICHEL H. EISNER – Deputy County Counsel for DCFS**

33. **DAE YEON KIM – Deputy County Counsel for DCFS**

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**
9

34. VERONICA J RANDAZZO # 292261  Deputy County Counsel for DCFS

35. JOSEPH S. LEE #295176   Deputy County Counsel for DCFS

LEE acted as Suppressed information about the lengthy criminal record of

Defendant Kernell Brown which includes 7 felonies,

36. LINDA SUN #207108  Judge of Superior Court of Los Angeles County

17. At times relevant rethroughout this complaint, Plaintiffs will collectively be referred to as "Plaintiffs."

18. At times relevant thoughout this complaint, Defendants will collectively be referred to as "Defendants."

37. STEPHEN  C.   MARPET   Commissioner of Superior Court of Los Angeles County

38. MARY THERESA MEZA

39. CARVIN HALL   Social Worker

40. SONIA VALIENTE   Social Worker

41. GENET ABERA   Social Worker

42. HEIDI MARTINEZ  Supervising Social Worker

43. MIA DRAKE   Dependency Investigator Social Worker

44. TEELA ALLEN   Social Worker

45. LASEAN DAVIS   Children's Social Worker

Authorized and Initiated medical procedures upon PLAINTIFF mom's children without consent. Around August 4, 2021 DAVIS

46. GREG CHASE   Supervising Social Worker

47. KENT BENNET  Supervising Social Worker

48. NICOLE WADE   Social Worker

49. RAE'SHONDA LEVINGSTON   Social Worker

50. REGINA MINOR   Children's Social Worker

---

**FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES**

**10**

51. MARCAL MAYE HENDERSON GH22S2217 - Dependency Investigator & Supervising Children's Social Worker

52. ALLANA DARTER - Dependency Investigator o

53. DARRYLLISHA BURCH PARKER - Supervising Children's Social Worker

54. NGIM LOCK - Social Worker

55. YVETTE RAMIREZ - Social Worker

56. MICHEL MOORE - Chief of Los Angeles Police Department

57. PAUL SANDATE #36567 Los Angeles Police Department
    Failed to act as a reasonable police officer when he refused to take statements from neighbors and witnesses to determine the facts of the incidents between PLAINTIFF MOM and BROWN.

58. He also refused to acknowledge and enforce a restraining order PLAINTIFF MOM had obtained from LOS ANGELES SUPERIOUR COURT. Committed perjury on the stand.

59. Asked PLAINTIFF MOM embarrassing personal questions about her sexual identity and preferences while she was handcuffed and falsely imprisoned. Lied to PLAINTIFF MOM and detained children without a Social Worker present while telling her there was one present and that she was

60. Police Officer of Los Angeles Police Department

61. OFFICER CORTEZ #38622 Police Officer Los Angeles Police Department

62. JOSEPH S. CASTIEL # - Mother's Private Criminal Defense Attorney

63. JOE (last name unknown) - Mother's Court Appointed Attorney

64. FRANK OSTROV - Mother's Court Appointed Attorney

65. MELINEH HATAMIAN - Mother's Court Appointed Attorney

66. NITI GUPTA - Mother's Court Appointed Attorney

67. KREE DONALYN FILER - Mother Court's Appointed Attorney

68. LESLIE S. HEIMOV - Executive Director of Children's Law Center of California

---

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

11

69. ANGELA TORRES – Children's Court Appointed Attorney of Children's
Law Center of California

70. JAMIE N. KIM – Children's Court Appointed Attorney of Children's Law
Center of California

71. MARGARET LEE – Children's Court Appointed Attorney of Children's
Law Center of California

72. ALYSON BASHOR – Children's Court Appointed Attorney of Children's
Law Center of California

73. Michael Moore is the Chief of Police (COP) of the Los Angeles Police
Department (LAPD). As a general manager of the Police Department, the COP is
responsible for the planning, efficient administration and operation of the Police
Department under the authority of the Board of Police Commissioners.

74. Michael Moore, the COP directs, plans, and coordinates the enforcement of the
penal divisions of the City Charter, the ordinances of the City, and the laws of the
state and nation for the purpose of protecting persons and property and for the
preservation of the peace of the community. The COP is responsible for testifying
before the City Council, the state and national legislative bodies on law
enforcement matters of importance to the City of Los Angeles, as well as
proposing new or amending existing legislation which could have an impact on
law enforcement.

75. Leslie S. Heimov

76. Heimov is the Executive Director of the Children's Law Center of California.
Children's Law Center of California represents children who have been abused,
neglected, or abandoned that come under the protection of the Los Angeles,
Sacramento, or Placer County Juvenile Dependency Court systems.

77. Leslie S. Heimov; CLC is a public interest law firm that provides legal
representation for children impacted by abuse and neglect. CLC attorneys,
investigators, peer advocates and support staff advocate for their clients utilizing a

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

12

multidisciplinary model of representation. Every staff member at CLC contributes to infusing every proceeding and decision that's made with the premise that kids should be with their parents whenever possible.

78. GAVIN NEWSOM – Governor of California

79. XAVIER BECERRA – California Attorney General

80. ROB BONTO – California Attorney General

81. MARY C WICKHAM – Los Angeles County Counsel (2016-2020)

82. RODRIGO A. CASTRO-SILVA – Los Angeles County Counsel

83. GEORGE GASCON – Los Angeles District Attorney

84. Defendant KERNELL BROWN – Father of Plaintiff's Children

85. MICHEL H. EISNER – Deputy County Counsel of Los Angeles County Department of Children and Family Services

86. DAE YEON KIM – Deputy County Counsel of Los Angeles County Department of Children and Family Services

87. VERONICA J RANDAZZO # 292261- Deputy County Counsel of Department of Children and Family Services

88. JOSEPH S. LEE #295176 – Deputy County Counsel for Los Angeles County

89. LINDA SUN #207108 – Judge of Superior Court of Los Angeles County

90. STEPHEN C. MARPET – Commissioner of Superior Court of Los Angeles County

91. BOBBY D. CAGLE – Director of Los Angeles County Department of Children and Family Services

92. MARY THERESA MEZA – Emergency Investigator of Los Angeles County Department of Children and Family Services

93. CARVIN HALL – Social Worker of Los Angeles County Department of Children and Family Services

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

13

94. SONIA VALIENTE – Dependency Investigator of Los Angeles County
Department of Children and Family Services

95. GENET ABERA – Social Worker of Los Angeles County Department of
Children and Family

96. HEIDI MARTINEZ – Supervising Social Worker of Los Angeles County
Department of Children and Family Services

97. MIA DRAKE – Dependency Investigator Social Worker of Los Angeles
County Department of Children and Family Services

98. TEELA ALLEN – Social Worker of Los Angeles County Department of
Children and Family Services

99. LASEAN DAVIS – Children's Social Worker of Los Angeles County
Department of Children and Family Services

100.      GREG CHASE – Supervising Social Worker of Los Angeles County
Department of Children and Family Services

101.      KENT BENNET – Supervising Social Worker of Los Angeles County
Department of Children and Family Services

102.      NICOLE WADE – Social Worker of Los Angeles County Department
of Children and Family Services

103.      RAE'SHONDA LEVINGSTON – Social Worker of Los Angeles
County Department of Children and Family Services

104.      REGINA MINOR – Children's Social Worker of Los Angeles County
Department of Children and Family Services

105.      MARCAL MAYE HENDERSON GH22S2217 – Dependency
Investigator & Supervising Children's Social Worker of Los Angeles County
Department of Children and Family Services

106.      ALLANA DARTER – Dependency Investigator of Los Angeles County
Department of Children and Family Services

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

14

107.    DARRYLLISHA BURCH-PARKER - Supervising Children's Social Worker of Los Angeles County Department of Children and Family Services

108.    NGIM LOCK - Social Worker of Los Angeles County Department of Children and Family Services

109.    YVETTE RAMIREZ - Social Worker of Los Angeles County Department of Children and Family Services

110.    MICHEL MOORE - Chief of Los Angeles Police Department

111.    PAUL SANDATE #36567 - Police Officer of Los Angeles Police Department

112.    OFFICER CORTEZ #38622 - Police Officer Los Angeles Police Department

113.    JOSEPH S. CASTIEL # - Mother's Private Criminal Defense Attorney

114.    JOE (last name unknown) - Mother's Court Appointed Attorney

115.    FRANK OSTROV - Mother's Court Appointed Attorney

116.    MELINEH HATAMIAN - Mother's Court Appointed Attorney

117.    NITI GUPTA - Mother's Court Appointed Attorney

118.    KREE DONALYN FILER - Mother Court's Appointed Attorney

119.    LESLIE S. HEIMOV, Executive Director of Children's Law Center of California

120.    ANGELA TORRES - Children's Court Appointed Attorney of Children's Law Center of California

121.    JAMIE N. KIM - Children's Court Appointed Attorney of Children's Law Center of California 1

122.    MARGARET LEE - Children's Court Appointed Attorney of Children's Law Center of California

123.    ALYSON BASHOR - Children's Court Appointed Attorney of Children's Law Center of California

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**

**15**

124.   Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associates or otherwise, of the Defendants sued herein by fictitious names, and therefore sues them as Does 1 through 10, inclusive, pursuant to California Code of Civil Procedure, section 474.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff are informed and believe, and on the basis allege, that each of such fictitiously named Defendant is responsible in some manner for the wrongdoing alleged herein and/or liable to Plaintiff.

125.19.   Plaintiff is informed and believe, and on the basis allege, that during the times mentioned herein, Defendants collectively, and each of them are the agents, employees, partners, joint venturers, representatives, coconspirators, and assigns of their co-defendants and were, as such, acting within the scope, course, and authority of such agency, employment, partnership, joint venture, representation, conspiracy, and/or assignment, unless the context states otherwise.

## IV.   CONSPIRACY

20. Plaintiff MJR has demonstrated herein how Defendants conspired against her, inflicting continuous emotional distress, for one cause, "to permanently separate Plaintiff MJR's children from her."  The scheme consisted of removing Plaintiff MJR's children from their home, denying reunification services, terminating parental rights without cause, violating her Constitutional Rights, inter alia.

21. Defendants acted in concert and conspired together to commit the tortious acts described herein. Accordingly, these Defendants should be held jointly and severally liable for any damages awarded to Plaintiffs, as a result of this action.

## IV.V.   STATEMENT OF FACTS

126.   Plaintiff, Melody J. Rodgers (hereinafter Melody), MJR. has four minor children: Melony Rodgers (born January 2013), Harmony Rodgers (born July 2015),

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

16

~~Symphony Brown (born February 2017),~~Plaintiffs MR, HR, SB, and ~~Preston Brown (born February 2018).~~

~~127.~~22.   PB.  Plaintiff MJR is a college graduate of the University of North Carolina at Chapel Hill and is currently a 2nd-year law student at the Northwestern California University School of Law.  Plaintiff is also an award-winning, well-respected, former public-school teacher.~~ She~~; she taught inner-city youth in Baltimore MD and Washington DC for 5 years through non-profit programs "~~Teach for America, Education Based Latino Outreach, and Financial Literacy Foundation~~.".~~"~~

~~128.~~23.   Plaintiff taught all elementary school subjects including ~~the~~ 1st Grade & 5th Grade, as well as, High School Finance, which is a category of ~~the~~ Home Economics curriculum.  All ~~her~~Plaintiff MJR's students passed the end-of-year testing regardless of disability or aptitude.

~~129.~~24.   Furthermore, Plaintiff MJR ~~is also~~ a God-fearing mother of four whose aim has always been to ~~bring~~raise her children to be respectful, hardworking, and contributing members of society with good morals and ethics based on the Holy Bible.

~~130.~~25.   Plaintiff's Civil Rights and Due Process rights have been violated by the State of California ~~Foster System Operators~~and Los Angeles County officials and employees since 2016.

~~a)~~A.   ~~Melony~~Plaintiffs MR **and** ~~Harmony Rodgers~~HR

~~131.   After the birth of her old daughter, Melody and the children were homeless until December 2015, when they moved into an apartment.~~

26. ~~In fact, on~~Plaintiff MJR and her children became homeless due to financial hardship.

~~132.~~27.   On February 2016, ~~Melody~~Plaintiff MJR told her therapist~~,~~; ER ~~worker~~Social Worker, Monica Rosenblum~~,~~ ("Rosenblum"). that she has been doing poorly in school and had wanted to drop her class.~~ She~~; she told her therapist she needs a doctor's note stating that she could not handle the stress, in order to withdraw from her

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES

17

classes at the university. Rosenblum falsely reported to Defendant DCFS that Plaintiff MJR had expressed or implied that she planned on harming her kids, despite Melody Plaintiff MJR, during that time, denying all those statements. Moreover, Rosenblum falsely stated she was a medical doctor.

133.28.   On February 23, 2016, Defendant DCFS conducted an assessment at Melody's Plaintiff MJR's apartment and the Department Defendant DCFS referred Melody Plaintiff MJR to Kedren Community Health Center.

134.29.   On or about Feb.February 29, 2016, DCFS Social Worker, Michel H. Eisner, Deputy County Counsel, collectively with Co-Defendants filed a false Juvenile Dependency Petition against Plaintiff MJR and her children. DCFS's basis for their petition for Juvenile Dependency against the restrained children has based on an allegation that the parents were not good parents. Plaintiff was denied due process and was denied the right to present evidence on their behalf.

135.30.   On or about Feb.February 29, 2016, Commission Stephen Marpet made Defendant MARPET announced false statements to the public regarding Plaintiffs' Plaintiff MJR's criminal history, as means of preventing Plaintiff MJR from obtaining gainful employment. Additionally, Defendants Defendant DCFS prevented Plaintiff MJR from adequate visits with her children and never allowed "reunification services" as normally provided under Welfare & Institutions Code § 300 et. seq..

136.   During the month of December 2016, Melody had online services with a therapist.

137.31.   On March 22, 2016, the juvenile court Juvenile Dependency Court unlawfully found that Melony Plaintiffs MR and Harmony HR were children described by section 300, subdivision (b)(l) without a valid cause. The sustained section 300 petition Petition documented that Plaintiff suffered from mental and emotional problems that rendered her incapable of providing regular care for Melony Plaintiff MR and Harmony HR.

**FIRST SECOND AMENDED COMPLAINT FOR DAMAGES**

**18**

~~138.~~32.    Plaintiff MJR was getting psychological counseling ~~as was~~and declared fit by her ~~psychologist~~Psychologist and the same was communicated in a letter to ~~————Abera,~~Defendant DCFS's Social Worker ~~of the DCFS. It was written in the letter of Plaintiff's psychologist to the Children Social Worker Department of Child and Family Services that~~, "It appears that Melody has now corrected most of the areas of difficulty and is a fully committed mother. She spent considerable time this Christmas season making a nice holiday for her children ~~but also for, and~~ her neighbors in her new apartment~~,~~; helping others who were alone."

~~139.~~33.    ~~Plaintiff has evidence, in the~~In a report ~~of~~from Plaintiff MJR's Psychologist, Sharon Valentino, ~~which~~ ("Valentino"), states that she began seeing ~~Melody in~~Plaintiff MJR, December 2016 until about the end of January.  Valentino states in her report that ~~Melody~~Plaintiff MJR saw her for issues relating to her children ~~&~~and her parenting of ~~the~~her children ~~&.~~.  It concluded that all problems that ~~she~~Plaintiff MJR previously had are now resolved ~~&,~~, that she is now able to be a good mother ~~&,~~, and she could have them full time to properly raise her children. However, Defendant DCFS did not communicate the latest medical update to the ~~court and hence made~~Court, which misled the ~~court make~~Court in making a ~~major~~prejudicial error in its judgment.

~~140.~~34.    On March 27, 2016, after ~~Melony indicated to their~~Plaintiff MR informed her mother ~~the caregiver had,~~ Plaintiff MJR, that her Foster Parent spanked her~~, Melody~~, Plaintiff MJR refused to return the children to ~~their shelter caregiver after a visit~~the Foster Parent; instead, Plaintiff MJR took the ~~children~~ to ~~a~~the police station. The police and an in-house social worker found no evidence of abuse and released the children to the caregiver.

~~141.~~35.    On April 06, 2016, the ~~juvenile court placed Melony~~Juvenile Dependency Court made an order placing Plaintiffs MR and ~~Harmony~~HR with their maternal grandmother, ~~Judy Rodgers~~Plaintiff JR.

~~142.~~36.    From April through September 2016, ~~Melody~~Plaintiff MJR resumed therapy at ~~Keedren~~Kedren Community Health Center ("Kedren") with a Psychiatrist,

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**
**19**

where the assigned psychiatrist after evaluation did not recommend medication and she participated in at least seven sessions ranging in duration from 30 to 90 minutes; after evaluation, she was not recommended medication.

37. On During the month of December 2016, Plaintiff MJR underwent online services with a therapist.

143.38.     August 2017, a Keedren Kedren therapist reported that Melody Plaintiff MJR had "been working on treatment goals which include utilizing positive coping skills to manage daily stressors and positive parenting psycho-education." He reported that Melody Plaintiff MJR had been compliant over the past four months with her mental health treatment and that she denied ideations of self-harm and harm to others. The therapist also reported that she presents engaged in sessions and motivated to complete the court-ordered plan.

144.39.     On September 20, 2017, the Defendant DCFS recommended terminating family reunification services.  Despite the Department, Defendant DCFS acknowledging that Melody Plaintiff MJR appeared to be in literal compliance with her court-ordered programs, including individual therapy and parenting classes, and relayed Plaintiff's Plaintiff MJR's expression of love and affection for her daughters, it sustained that it believed "mother's continued unpredictable behavior would be detrimental to M.R.'s Plaintiffs MR and H.R.'s HR's health and safety, particularly at their young ages."

145.40.     During the weekend of October 7 and 8, 2017, Melody Plaintiff MJR and her maternal grandmother had an argument that led to a physical altercation. Mother Plaintiff MJR had taken maternal grandmother's car to the carwash and, while there, threw away some items that had been was in the car. Maternal grandmother became outraged when she found out. The argument became physical and maternal grandmother reported to Defendant DCFS that she had filed a police report. Melody Plaintiff MJR immediately told to her DCFS social workers Social Workers that, when her maternal grandmother found out that she had thrown out her things, she pushed and scratched her

1  and was acting like "a crazy maniac~~"."~~ This event would play a significant role in the

2  ~~court's~~Court's ultimate decision regarding the removal of Plaintiff MJR's children.

3  ~~146.~~41.    On November 15, 2017, ~~the Department~~Defendant DCFS filed an ~~ex parte~~

4  ~~application~~Ex-Parte Application pursuant to section 385 to modify ~~Plaintiff's~~Plaintiff

5  MJR's visitations from unmonitored to monitored.

6  ~~147.~~42.   By January 2017 ~~Melody has~~Plaintiff MJR completed at least 12 sessions

7  of parental education classes.

8  ~~148.~~43.    On February 13, 2018, the ~~juvenile court~~Juvenile Dependency Court

9  terminated ~~Plaintiff's~~Plaintiff MJR's family reunification services stating that ~~Melody~~she

10  failed to take responsibility for her actions and also failed to recognize how her behavior

11  was alarming and could potentially be harmful to her children.

12  ~~149.~~44.    In May 2019, the Juvenile Dependency Court ordered legal guardianship

13  for ~~Melony~~Plaintiffs MR and ~~Harmony~~HR with their maternal grandmother, Plaintiff JR.

14

15  ~~b)~~B.        ~~Symphony~~**Plaintiffs SB** and ~~Preston Brown~~**PB**

16  ~~150.~~45.       ~~Defendant~~Kenell Sterling Brown Jr. ~~(hereinafter~~ ("Kenell~~)"~~) is the

17  father of ~~Symphony~~Plaintiffs SB and ~~Preston~~PB.

18  ~~151.~~46.   ~~Melody~~Plaintiff MJR met ~~Defendant~~Kenell in 2016.  At that time,

19  ~~Melody~~Plaintiff MJR was emotionally traumatized and devasted, because her first two

20  children ~~Melony~~Plaintiffs MR and ~~Harmony had~~HR were recently ~~been~~taken by

21  Defendant DCFS, without cause.

22  ~~152.~~47.    ~~Defendant~~Kenell was nice to ~~Melody~~Plaintiff MJR on most occasions but,

23  as neighbors can testify, when he drank alcohol he became a completely different

24  person.  ~~He~~Kenell would become angry, ~~used to~~get into arguments with the neighbors,

25  and physically abuse ~~Melody~~Plaintiff MJR for any reason. On one of these occasions,

26  ~~Defendant~~Kenell demanded ~~Melody's keys~~Plaintiff MJR's key to her white Ford

27  Explorer. When ~~Melody~~Plaintiff MJR refused to give him the ~~keys~~key, he hit her in the

28  head and made her give him the ~~keys~~key.  After he took the ~~keys~~key, he drove

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**
**21**

~~Plaintiff's~~Plaintiff MJR's SUV into the neighbor's car that was parked in the same parking lot ~~by flooring the gas pedal and colliding with a neighbor's car.~~. After the collision with ~~a~~the parked vehicle, ~~Defendant~~ Kernell fell asleep in the driver's seat ~~and a~~. A male neighbor ~~had to come~~came and pull him from the car, and put the vehicle brakes on. The neighbor complained to ~~Defendant~~ Kernell that he had ruined her car and he promised to pay her $100 a month for the car which was worth about $600. ~~Defendant~~Kernell begged ~~Melody~~Plaintiff MJR for the money to pay ~~her~~their neighbor and when ~~Melody~~Plaintiff MJR refused to give it to him, he smacked her, stole the debit card, and ~~went to get some~~stole her money.

~~153.~~48.    According to Cal. Pen. Code § 13701 (b), "Every law enforcement agency in this state shall develop, adopt, and implement written policies and standards for officers' responses to domestic violence calls by January 1, 1986. These policies shall reflect that domestic violence is alleged criminal conduct. Further, they shall reflect existing policy that a request for assistance in a situation involving domestic violence is the same as any other request for assistance where violence has occurred."

~~154.~~49.    Here, each time ~~Defendant~~ Kernell hit ~~Melody~~Plaintiff MJR, she called the police and reported the incidents, but ~~Defendant~~ LAPD Officers refused to arrest ~~Defendant~~ Kernell, because ~~Melody~~Plaintiff MJR didn't have any physical marks or bruises. As to the records, there were seven domestic violence calls for this address, but ~~Defendant~~Kernell was never arrested.

~~155.~~50.    ~~Melody~~Plaintiff MJR, at that time, victim of domestic violence and without law protection, began making plans to leave ~~Defendant~~Kernell and started saving money and looking for another apartment. ~~Melody takes~~ Plaintiff MJR had two jobs, she drove for Uber on weekends, and worked as a substitute teacher for private schools on the weekday. ~~Defendant~~ Kernell noticed ~~Melody~~Plaintiff MJR was making plans to leave and started accusing her of ~~adultery~~cheating.

~~156.~~51.    On September 19, 2018, ~~Melody~~Plaintiff MJR came home from the gym. ~~Defendant~~ Kernell was drunk out of his mind and started accusing her of cheating.

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**

**22**

1   ~~Melody~~ Plaintiff MJR kindly ignored the accusations and went into the kitchen to make

2   dinner for the family. ~~Defendant~~ Kernell started shouting obscenities and ~~Melody~~Plaintiff

3   MJR called him "a drunk." Kernell went into the bedroom and got his baseball bat and

4   started hitting ~~Melody~~Plaintiff MJR with it on the bottom half of ~~the~~her body. Each time

5   the baseball bat hit ~~his~~her body, ~~Melody~~Plaintiff MJR apologizes for calling him a

6   drunk.  Kernell then dragged ~~Melody~~Plaintiff MJR by ~~his~~her braids, stripped her of

7   ~~his~~her house robe, and threw her outside completely naked.  The upstairs neighbor heard

8   ~~Melody~~Plaintiff MJR screaming and threw her a house robe to wear so she would not be

9   naked outside.  Alecia Ward, another neighbor, called the police and a third neighbor

10  allowed ~~Melody~~Plaintiff MJR to wait in her house until the police arrived. This time,

11  Kernell was finally arrested and taken to jail.

12      ~~157.~~52.   While Kernell was in jail he sent his family members to harass

13  ~~Melody.~~Plaintiff MJR. On October 20, 2018, ~~Melody~~Plaintiff MJR had to call the police

14  to get Kernell's adult daughter to leave the home after Kernell ~~give~~gave her the keys to

15  enter ~~the house~~Plaintiff MJR's home.

16      ~~158.~~53.   On October 26, 2018, ~~Melody~~Plaintiff MJR was granted a ~~restraining~~

17  ~~order~~Restraining Order against Kernell and his adult daughter, as well as, sole physical

18  custody of minor children ~~Symphony,~~ Plaintiffs SB and ~~Preston~~PB.

19      ~~159.~~54.   On December 23, 2018, Kernell came back to ~~Melody's~~Plaintiff MJR 's

20  home despite ~~a restraining order. He~~ the Restraining Order.  Kernell came back with his

21  adult daughters and tried to get into the home using force.  Kernell drilled the locks off

22  the door and came in with his daughters. When ~~Melody~~Plaintiff MJR tried to shut the

23  door and keep them out, a physical altercation began to occur, and ~~Melody~~Plaintiff MJR

24  was forced to use physical force to expel the aggressors and protect herself.  Kernell and

25  his daughter called the police and ~~LAPD Officer Sandate~~Defendant SANDATE arrested

26  ~~Melody~~Plaintiff MJR for PC-245(A)(1).

27      ~~160.~~55.   According to Cal. Pen. Code § 13701 (b), LAPD Officers "shall encourage

28  the arrest of domestic violence offenders if there is probable cause that an offense has

**~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES**
**23**

been committed. These policies also shall require the arrest of an offender, absent exigent

circumstances, if there is probable cause that a protective order issued under Chapter 4

(commencing with Section 2040) of Part 1 of Division 6, Division 10 (commencing with

Section 6200), or Chapter 6 (commencing with Section 7700) of Part 3 of Division 12, of

the Family Code, or Section 136.2 of this code, or by a court of any other state, a

commonwealth, territory, or insular possession subject to the jurisdiction of the United

States, a military tribunal, or a tribe has been violated. These policies shall discourage,

when appropriate, but not prohibit, dual arrests. Peace officers shall make reasonable

efforts to identify the dominant aggressor in any incident. The dominant aggressor is the

person determined to be the most significant, rather than the first, aggressor. **In

identifying the dominant aggressor, an officer shall consider the intent of the law to

protect victims of domestic violence from continuing abuse, the threats creating fear

of physical injury, the history of domestic violence between the persons involved,

and whether either person acted in self-defense.**"

~~161.~~56.    Immunity does not apply when excessive use of force by a police officer or

negligent performance of a police officer's duties. (*Robinson v. Solano County* (9th Cir.

2002) 278 F.3d 1007, 1016.)

~~162.~~57.    A victim who has acted reasonably to defend oneself or another from harm

is not subject to arrest. This provision is intended to prevent police officers from arresting

the victim along with the abuser, and recognizes the fact that victims have the right and

may try to defend themselves without being subject to arrest. If an officer investigates

and has probable cause to believe that a domestic abuse assault occurred but the victim

was not injured, the officer may arrest the abuser, although is not required to do so.

Moreover, the officer must find out if there are any no-contact or protective orders in

effect against the abuser, and enforce such orders. Here, ~~Officer Sandate~~Defendant

SANDATE did not arrest Kernell even though he ~~know~~knew that Kernell was the

dominant aggressor, that he was out on bail and had violated a restraining order; he

refused to hear ~~Melody~~Plaintiff MJR and the testimony of neighbors that would

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES

24

immediately clarify the facts that she ~~was~~ acted in self-defense and he indeed arrested the
victim, ~~Melody~~Plaintiff MJR.

~~163.~~58.    On December 23, 2018, Defendant DCFS received a referral alleging
~~Symphony~~that Plaintiffs SB and ~~Preston~~PB were victims of emotional abuse, due to a
reported altercation between mother and father, where mother attempted to attack father
with a butcher knife and she was arrested.

~~164.~~59.    On January 2019, ~~the DCFS social worker~~Defendant DCFS's Social
Worker reported ~~completing~~after an unannounced visit at ~~Plaintiff's~~Plaintiff MJR's home
and found that ~~the mother~~Plaintiff MJR and ~~the~~her two minor children ~~Preston~~, Plaintiff
SB and ~~Symphony~~PB were ~~not~~no longer in the home.  In ~~fact, Melody~~an effort to protect
~~herself~~Plaintiff MJR and ~~the~~her minor children from Kernell ~~had already~~, Plaintiff MJR
moved to North Carolina, her home state.

~~165.~~60.    -On February 14, 2019, Defendant DCFS filed an initial section 300
~~petition~~Petition on behalf of ~~the~~Plaintiff MJR's children., Plaintiffs SB and PB.  The
~~petition~~Petition alleged that the children "were at substantial risk of suffering serious
physical harm based on the violent physical and verbal altercation between mother and
father (counts a-1 and b-1), and mother's mental and emotional problems (count b-2)."

~~166.~~61.    On February 15, 2019, ~~at the detention hearing,~~ neither parent, Plaintiff
MJR nor Kernell, appeared ~~in~~for the ~~juvenile court.~~Detention Hearing.  The ~~juvenile~~
~~court detained~~Juvenile Dependency Court made an order to detain the children, Plaintiffs
SB and PB, from both parents and issued protective custody warrants for the children and
a no-bail arrest warrant for ~~Melody.~~Plaintiff MJR.

~~167.~~62.    Notice of the date, time, and location of the hearing, with a copy of the
petition attached, must be served, as soon as, possible after the petition is filed and no
less than 24 hours in advance of the hearing if the child is detained. (§§ 290.1, 290.2.) If
the whereabouts of the parents are unknown, the agency must exercise due diligence (i.e.,
conduct a good faith inquiry that is thorough and systematic) to locate and notice the
parent. Failure to give notice to a parent of dependency proceedings violates due process

and is "fatal" to the court's jurisdiction. (*In re Claudia S.* (2005) 131 Cal.App.4th 236.) Insufficient notice would mean that the jurisdictional and subsequent findings are subject to reversal on appeal. (*In re Arlyne A.* (2000) 85 Cal.App.4th 591, 598–600.) The court cannot assume jurisdiction over a minor when his whereabouts were unknown. (*In re Baby Boy M.* (2006) 141 Cal.App.4th 588, 601-602.)

~~168.~~63.    Here, Plaintiff~~, that~~ MJR, who resides in North Carolina, was not present at the Detention Hearing, because ~~has no notice of the detention hearing.~~she had not received Notice.  Defendant DCFS, as reported, ~~knows~~knew that ~~Melody~~Plaintiff MJR and her ~~children were~~children's whereabouts ~~were~~ unknown ~~but~~; yet, did not ~~make any efforts~~perform due diligence in attempting to locate them ~~and~~in order to ~~give~~provide appropriate ~~notice to Plaintiff of dependency proceedings.~~Notice for the Detention Hearing.

~~169.~~64.    On March 05, 2019, ~~the father~~Kernell ~~Brown Jr.~~ informed Defendant DCFS that "he is a Truck driver and he is currently in Oklahoma (where he'll be for the next two months); afterward, he will be in Texas. ~~Father~~ Kernell denied knowing the mother and children's exact whereabouts but reported that they were "somewhere in North Carolina. ~~Father~~ Kernell was informed about the protective custody warrants on the children and warrant ~~of~~for arrest on the mother…. ~~Father~~Kernell reported that the children are safe and well cared by mother as she often FaceTime's him so that he is able to see/speak with the children. ~~Father~~ Kernell stated that he is not pressing criminal charges against mother but mentioned that he is no longer in a relationship with mother due to their discord."

~~170.~~65.    On March 07, 2019, ~~Melody's~~Plaintiff MJR 's grandmother, ~~Judy Rodgers,~~ reported "They (children) are with ~~her (~~Melody~~)~~ in North Carolina."

~~171.~~66.    On July 17, 2019, Defendant DCFS received an immediate response referral alleging Kernell sexually abused his granddaughter, R.B.

~~172.~~67.    On ~~31~~July 31, 2019 ~~Melody,~~ Plaintiff MJR was in Los Angeles, California to address criminal charges pending against her~~ as a result of the same incident that~~

**~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES**
**26**

1  ~~DCFS is referring to in their reports and allegations.~~.  At the trial, ~~Melody~~Plaintiff MJR
2  was exonerated of all charges by an impartial jury who decided that ~~Melody~~Plaintiff MJR
3  was acting in self-defense in ~~his~~her own home. At the trial, ~~LAPD Officer Paul Sandate~~
4  ~~also~~Defendant SANDATE committed perjury during ~~the~~his testimony ~~on the stand.~~

5  ~~173.~~68.    After the trial, declared not guilty of any crime, ~~Melody~~Plaintiff MJR
6  returned to pick up his children from Kernell's sister's house who was helping her as a
7  babysitter, and found out that Kernell had taken ~~his~~their children. ~~Melody~~Plaintiff MJR
8  went immediately to ~~Kernel's~~Kernell's house to retrieve ~~his~~their children and was forcibly
9  ~~restrained~~retrained/locked inside the bathroom by Kernell.

10  ~~174.~~69.    On the same day, ~~Commission Stephen Marpet~~Defendant MARPET sent
11  law ~~enforcement, officer Sandate,~~Enforcement Officer, Defendant SANDATE and ~~DCFS~~
12  ~~social workers~~Defendant DCFS's Social Workers to Kernell's home who refused to let
13  them in without a warrant.

14  ~~175.~~70.    ~~On the same~~That evening, ~~Commissioner Marpet~~Defendant MARPET
15  granted Defendant DCFS requests for an expedited removal order and requests to
16  dispense with ~~notice~~Notice of the ~~removal order~~Removal Order to ~~detain~~Detain the
17  children from mother and father.  Defendant DCFS ~~does~~did not present substantial
18  evidence that ~~Melody~~Plaintiff MJR was failing at fulfilling any of her responsibilities or
19  had any criminal record related to mental illness.

20  ~~176.~~71.    ~~Commissioner Marpet~~Defendant MARPET and ~~Officer Sandate~~Defendant
21  SANDATE were aware of the outcome of the criminal case against ~~Melody~~Plaintiff MJR
22  and knew that she did not pose any threat to ~~his~~her children based on actions taken in
23  self-defense. ~~They; they~~ were aware or should have been aware that ~~Melody~~Plaintiff MJR
24  has full custody of ~~the~~her children and that they cannot remove custody from Kernell
25  who had already lost it. Therefore, the order was unsupported by probable cause ~~and,;~~
26  therefore, violated ~~Plaintiff's federal constitutional rights~~Plaintiff MJR's Federal
27  Constitutional Rights against unreasonable searches and seizures.

28

---

**~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES**
27

1    ~~177.~~72.    ~~DCFS social workers~~Defendant DCFS's Social Workers and ~~law enforcement~~Law Enforcement Officer ~~Sandate, as~~, Defendant SANDATE, witnessed via the video recorded by Plaintiff, ~~found Melody~~ MJR, that Plaintiff MJR and her children were locked in ~~the~~Kernell's bathroom ~~with her children. They know~~; they knew or should ~~know~~have known that ~~Melody had already been~~Plaintiff MJR was a victim of domestic violence by Kernell and that Kernell had already ~~segregated Melody~~imprisoned Plaintiff MJR at other times against ~~his~~her will ~~but~~; however, instead of protecting ~~Melody~~Plaintiff MJR and her children and keeping them safe from the aggressor, ~~DCFS~~Defendant DCFS's Social Workers detained the children and ~~Officer Sandate~~Defendant SANDATE arrested ~~Melody~~Plaintiff MJR pursuant to the no-bail arrest warrant and ~~violated~~ again ~~breached~~ his duty to protect ~~Melody~~Plaintiff MJR.

12    ~~178.~~73.    ~~DCFS social workers~~Defendant DCFS's Social Workers falsely declared on their report that the parents actively concealed the children. In fact, as previously reported, ~~they know that Melody~~Plaintiff MJR had been a resident ~~in~~of North Carolina for nearly ~~seven (~~7) months and she had sole physical custody of ~~the~~her children who were also residents of Charlotte, North Carolina. ~~They~~ Defendant DCFS's Social Workers were aware that ~~Melody~~Plaintiff MJR had relocated to North Carolina immediately after the attack ~~from Kernell~~ and was only visiting California temporarily to ~~fight a~~address the criminal case. ~~Melody, which she was exonerated  from all charges.~~ Plaintiff MJR relocating away from Kernell with children and supporting them independently demonstrated a change in circumstance that ~~the department~~ Defendant DCFS refused to acknowledge.  Unless ~~social services~~Defendant DCFS had a reason to believe that ~~child was~~children were in danger, it did not have a compelling reason to separate the ~~child~~children from ~~his~~their mother. On information and belief, Defendant LAPD Officer ~~Sandate~~, Defendant SANDATE and ~~DCFS~~ Defendant DCFS's Social ~~worker~~Worker acted with malice and with the intent to cause injury to Plaintiff MJR or acted with a willful and conscious disregard to the rights of Plaintiff MJR in a despicable, vile and contemptible manner.

179.74.   Making false statements in a dependency petition with the intent that the court rely on it, causing the parents to temporarily lose custody, seriously infringes on a parent's constitutional rights. See *Beltran*, 2008 WL 193319, at *1 (no absolute immunity where a social worker "fabricated evidence during an investigation or made false statements in a dependency petition affidavit.").

180.75.       According to California Code, Government Code - GOV § 820.21:

(a) "Notwithstanding any other provision of the law, the civil immunity of juvenile court social workers, child protection workers, and other public employees authorized to initiate or conduct investigations or proceedings pursuant to Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code shall not extend to any of the following, if committed with malice:

(1) Perjury.

(2) Fabrication of evidence.

(3) Failure to disclose known exculpatory evidence.

(4) Obtaining testimony by duress, as defined in Section 1569 of the Civil Code , fraud, as defined in either Section 1572 or Section 1573 of the Civil Code , or undue influence, as defined in Section 1575 of the Civil Code .

(b) As used in this section, "malice" means conduct that is intended by the person described in subdivision (a) to cause injury to the plaintiff or despicable conduct that is carried on by the person described in subdivision (a) with a willful and conscious disregard of the rights or safety of others."

181.76.   On August 2, 2019, forty-eight (48) hours after the kidschildren were detained, Plaintiff MJR was supposed to be an initial/detention hearing, in orderappeared at the Initial Detention Hearing pursuant to meet-federal legal time limitsprocedure; however, after heading to the Edelman Children's Court on the bus from the detention center, Melodyjail, Plaintiff MJR was told to return back to jail for the weekend, as the matter had been continued without reason. (Cal. Juv. Rule 5.670).

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

29

182.77.     Here, Commissioner Stephen MarpetDefendant MARPET, after issuing a warrant to arrest MelodyPlaintiff MJR on a non-arrestable offense, held Plaintiff MJR in prison longer than the forty-eight (48 hours of detention) hour Detention hearing window; thus, depriving herPlaintiff MJR of her substantive and procedural due process rights not to be held without just cause and although herDue Process Rights.  Although, Plaintiff MJR case was set for hearing he, Defendant MARPET continued it without justification. Defendants'Defendants MARPET, DCFS, AND SANDATE's actions in detaining and mistreating Plaintiff MJR were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, in violation of the constitutional right, power, privilege, or immunity, and without observance of procedure required by law.

183.78.   On August 5, 2019, Commissioner Stephen MarpetDefendant MARPET exacted cruel and unusual punishment upon Plaintiff MJR, when he refused to allow her to return to the location that contained her clothing and personal property.  Defendant MARPET released Plaintiff MJR from juvenile court jail cells, where she had to wear a black paper suit as clothing.  As a result of this suit, MelodyPlaintiff MJR faced public shame and humiliation and was regarded as a criminal although she never committed any crime.

184.79.   On August 5, 2019, Frank Ostrov court-appointed attorney, Court-Appointed Attorney for Plaintiff signMJR, signed a document from the countyDefendant LA COUNTY, providing Plaintiff'sPlaintiff MJR's children's personal information; including their date of birth and social security numbernumbers, while shePlaintiff MJR was behind bars, in a children's court jail cell, and under duress.  Moreover, Ostrov gave to his clientPlaintiff MJR false information and bad legal advice when he stated that "it is not possible to appeal the case until the end of the trial."  This essentially denied Plaintiff MJR of effective legal counsel to preserve her right to a fair hearing.

185.80.   On August 23, 2019, Defendant DCFS filed the operative first amended sectionan Amended Section 300 petitionPetition on behalf of the children. The amended petitionAmended Petition contained the original counts and additional allegations that the

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES
30

children were at substantial risk of suffering serious physical harm and sexual abuse based upon the father's sexual abuse of his granddaughter and his adult children when they were children (counts b-3, d-1, and j-1). DCFS perseveres with the same ~~allegation~~allegations against Plaintiff MJR by omitting with malice exculpatory evidence on their records.

~~186.~~81.   -On December 3, 2019, ~~the juvenile court~~Court held a trial-setting conference and appointed new counsel to represent ~~the mother.~~Plaintiff MJR.  Counsel for Plaintiff MJR requested that the ~~dependency investigator~~Dependency Investigator (DI) and ~~the social worker~~Defendant DCFS's Social Worker be placed on call for the ~~adjudication hearing.~~Adjudication Hearing. The court ordered the DI on call.

~~187.~~82.   On December 17, ~~2020~~2019, the ~~Juvenile~~ Court ~~of Los Angeles,~~ along with its ~~court officers~~Officers of the Court, conspired together to prevent the ~~court~~Court from receiving evidence in ~~the mother's~~Plaintiff MJR's favor. According to ~~W & I C~~SWIC § 317, providing for the appointment of counsel in dependency cases, a parent could waive counsel at any point and had the right to represent him or herself.  Here, ~~Judge Sun~~Defendant SUN denied ~~Plaintiff's~~Plaintiff MJR's request to proceed pro se and refused to ~~bear~~hear her case until ~~Melody~~Plaintiff MJR agreed ~~for an appointed attorney, Mel Hatamian~~to Court-Appointed Attorney, Defendant MEL HATAMIAN, to represent her. ~~Judge Sun~~ Defendant SUN suppressed ~~Plaintiff's~~Plaintiff MJR's right to present evidence and denied Plaintiff MJR's ~~her~~ right to have a fair and unbiased hearing ~~when;~~ Plaintiff MJR was not allowed witnesses ~~presented~~ to present before the Court ~~by Melody~~ to testify. on behalf of Plaintiff MJR. Moreover, ~~Judge Sun continues~~Defendant SUN continued the case beyond the statutory limits, which was to the convenience of the ~~parties~~opposing side and to the detriment of ~~Plaintiff's~~Plaintiff MJR and her children who are languishing in ~~foster care~~Foster Care and removed from ~~the~~their home and their relatives' love.

~~188.~~83.   At this ~~hearing, the Children's Law Center appointed attorney~~Section 300 Petition Hearing, Defendant CLC's Appointed Attorney, Alyson Bashor~~,~~ ("Bashor"),

breached ~~his~~her fiduciary duty to ~~Plaintiff's~~Plaintiff MJR's children by going along with a scam that harmed them and was in direct opposition to their expressed and verbalized wishes ~~of the children. They~~.  Bashor lied and said that the children could not talk and therefore could not make a meaningful statement to the court when indeed they have expressed their wishes to the attorney on several occasions.  Plaintiff MJR has evidence by way of phone recording of her children saying that they want to be returned home and also the ~~foster mom~~Foster Parent, Nakeya Clark~~,~~ ("Clark"), wanted to testify to that.

~~189.~~84.   ~~On the same day, the children's appointed attorney deliberately~~Defendant CLC's Attorney, Alyson Bashor ("Bashor") lied to the ~~court~~Court in order to mislead the ~~court~~Court by stating for the record on December 17, 2021 that the children and ~~foster mom~~Foster Mom, Clark, were not present to testify in court, when indeed they were present in ~~court~~Court and wanted to testify. ~~When Melody called the foster mom during court, she told Melody that she was still waiting to testify but Alyson Bashor~~ Bashor had in fact told them to leave and come back later when she ~~called. However, she~~calls. Bashor, never called them to come back. When Plaintiff MJR called Clark, she told her that she was still waiting to testify, but was told to come back later.  Mother managed to get Ms. ~~Clark's declaration~~Clark admitted to court although her device was muted.

~~190.~~85.   -Minor's Counsel carries a lot of weight with the courts. According to 2020 California Rules of Court Rule 5.242, Counsel is charged with the representation of the child's best interest. Their role is to consider what is in the child's best interests. They are a neutral voice for the child, without compromising the child's rights or emotional well-being. According to 2020 California Rules of Court Rule 5.242, Counsel is charged with the representation of the child's best interest. The role of the child's counsel is to gather evidence that bears on the best interest of the child and present that admissible evidence to the court in any manner appropriate for the counsel of a party. If the child so desires, the child's counsel must present the child's wishes to the court.

~~191.~~86.   -On February 15, 2020, ~~DCFS~~Defendant DCFS's Social Worker Investigator, Teela Allen~~,~~ ("Allen"), provided a report with knowingly false statements

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**

**32**

1  and intentional omissions of exculpatory evidence in order to obtain a court judgment
2  against Plaintiff. ~~She~~ MJR.  Allen specifically made misrepresentations to conceal the
3  fact that the aggressor and domestic violence perpetrator was Kernell, not
4  ~~Melody~~Plaintiff MJR and omitted a large portion of Kernell's lengthy criminal record to
5  conceal his previous crimes of moral turpitude.
6  ~~192.~~87.   -Specifically, ~~the Department~~Defendant DCFS's Social Worker falsely
7  asserted that in December 2018, ~~mother~~Plaintiff MJR struck father's back and chased
8  him while holding a butcher knife and was arrested for assault with a deadly weapon. ~~The~~
9  ~~Department~~ Defendant DCFS's Social Worker also asserted that on prior occasions
10  ~~mother~~Plaintiff MJR refused to take her psychotropic medication and suffers from
11  paranoia, suicidal ideation, depression, anxiety, isolation, and erratic behavior.  On this
12  basis, ~~the Department~~Defendant DCFS's Social Worker alleged that the children were in
13  danger of suffering physical harm based on domestic violence between mother and their
14  father (counts a-1 and b-1), and mother's mental and emotional problems (count b-2).
15  ~~193.~~88.   Here, Defendants maliciously and fraudulently omitted exculpatory
16  evidence. ~~Defendant knows~~Defendants knew or should ~~know~~have known that Plaintiff
17  MJR was declared not guilty by a jury, because she acted in self-defense ~~and.~~; therefore,
18  ~~she~~ cannot be considered a danger to ~~his~~her children. ~~Defendant~~Defendants maliciously
19  omitted to inform the Court that Plaintiff MJR had already obtained a ~~restriction~~
20  ~~order~~Retraining Order against ~~father~~Kernell at the time of ~~this event~~the incident and that
21  Plaintiff MJR has been relocated to North Carolina, far away from the aggressor, to
22  protect her and ~~the~~her children.  Moreover, regarding ~~Plaintiff's~~Plaintiff MJR's purported
23  mental and emotional problems, ~~the report of the~~Defendant DCFS's Social Worker
24  ~~Investigator~~Investigator's Report continues to refer to contested hearsay allegations of
25  2016, even ~~if they know~~when Defendant DCFS's Social Worker Investigator knew or
26  should know that ~~Melody had~~Plaintiff MJR followed the ~~plan ordered~~Court Order and
27  had been observed by several psychiatrists who have always stated that ~~Melody~~Plaintiff
28  MJR has no mental and emotional problems and does not need drug therapy.  Defendant

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES

33

1   DCFS has never presented substantial evidence of ~~Plaintiff's~~Plaintiff MJR's mental and

2   emotional ~~problems~~health.

3   ~~194.~~89.   ~~Bobby Cagle, head of DCFS~~Defendant CAGLE, demonstrated bad faith

4   business practices under the UCC, when he signed the aforementioned ~~report~~reports that

5   did not contain any actual child abuse or neglect allegations to ~~sustain~~support a

6   ~~petition~~Petition under the Welfare and Institutions Code of California.

7   ~~195.~~90.   ~~-~~On February 20, 2020, after several ~~contend continuance~~continuances and

8   without good cause ~~of justification~~, the ~~juvenile court~~Court proceeded with the combined

9   ~~jurisdiction~~Jurisdiction and ~~disposition hearing.~~Disposition Hearing.  The Court has

10   continued the ~~cases~~case several times in ~~defiance~~violation of the California Welfare

11   Institutions Code Section 352 ~~for the protection of children in order to give DCFS time to~~

12   ~~find any speck of gossip and slander they can obtain from child abusers, perpetrators or~~

13   ~~domestic violence, and other unreliable sources. Even~~, even though ~~jurisdiction~~

14   ~~hearings~~the Jurisdiction Hearings cannot be held past 6 months from when the children

15   were detained on July 31, 2019. ~~Commissioner Marpet~~ Defendant MARPET held a

16   hearing for a continuance on his own motion ~~for a hearing well into,~~ January 2021, more

17   than 18 months past ~~their~~the children's detention.

18   ~~196.~~91.   At the hearing, ~~the social worker report~~Defendant DCFS's Social Worker's

19   Report and police ~~report~~reports were used as evidence to substantiate ~~their claim~~false

20   claims and no witnesses were called. ~~Plaintiff's court-appointed attorney, Mel~~

21   ~~Hatamian,~~Defendant HATAMIAN tried to convince ~~Melody~~Plaintiff MJR not to express

22   her true wishes to cross-examine ~~the~~Defendant DCFS's accusing ~~social workers. Mel~~

23   ~~Hatamian acted in her own~~ Social Workers.  Defendant HATAMIAN did not act in the

24   best interest ~~and not in Plaintiff's best interest~~of Plaintiff MJR, when she gave ~~her~~Plaintiff

25   MJR bad advice. However, ~~Melody~~Plaintiff MJR insisted that ~~she intended to~~Defendant

26   HATAMIAN cross-examine the DI on the report that was submitted ~~and~~to determine

27   where the DI obtained the evidence to support the allegations.  The court denied

28

---

**~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES**

**34**

Plaintiff'sPlaintiff MJR's request and said that it saw no basis to have the DI present before the Court to be cross-examined.

197.92.    -The courtCourt declared the children dependents and removedDependents of the Court and made an order to remove them from both parents' custody. The courtCourt ordered "no family reunification servicesFamily Reunification Services for Plaintiff MJR.  However, according to section 361.5, subdivision (b)(l0) Cal. Rules of Court, rule 1456(c), the court must find that the welfare of the child requires that she be removed from parental custody because of substantial danger, or risk of danger, to her physical health if she is returned home and that there are no reasonable means to protect her without removing her.  Moreover, Here, Defendant DCFS doesdid not present evidence that MelodyPlaintiff MJR was filing atnot fulfilling any of her responsibilities or had any actual allegations related to mental illness.

198.93.    The California Welfare & Institutions codeCode mandates the department Defendant DCFS to make reasonable efforts to return the child home, when the danger or threat no longer exists. Here, there is no evidence presented by the departmentDefendant DCFS that theyit attempted to return the children and there is no evidence presented by the DepartmentDefendant DCFS supporting the allegations against Plaintiff. This is not referring to reunification services. MJR.

94.-At the same hearing, DCFS submitted perjured testimony when they statedalthough Plaintiff MJR was exonerated from all charges due to self-defense, Defendant DCFS's Social Workers committed perjury in open Court and announced that Plaintiff MJR had been convicted of lesser charges. They

199.95.    Defendant DCFS's Social Worker did not present evidence to substantiate this claim and deliberately misled the court in order to maliciously prosecute Melody.Plaintiff MJR.  Dependency proceedings are not to be prosecutorial in nature. Defendant DCFS intentionally and willfully withheld exculpatory evidence that would have proven that Plaintiff MJR was not mentally ill. They disregarded statements from all

parties that spoke favorably of ~~Melody~~Plaintiff MJR and attested to her intelligence and mental health in order to distort character and true identity of Plaintiff MJR.

~~200.~~96.    ~~Commissioner Marpet~~Defendant MARPET assisted ~~the department in making~~ Defendant DCFS's Social Workers make their ~~argument~~arguments by suggesting they re-word phrases in such a way as to make it appear as if Plaintiff MJR was physically violent.  In this instance, ~~the Commissioner~~Defendant MARPET expressed an appearance of partiality.  "Fraud or impartiality in a court makes the order and judgment void, because the court is not impartial.~~.~~"

~~201.~~97.    At each hearing and trial, ~~setting Melody~~Plaintiff MJR requested in open Court that her children be placed with their grandmother, Plaintiff JR and siblings, because it would be in the best interest of the children to be with family~~, who had~~; and Plaintiff JR expressed a willingness to care for ~~the children.~~her grandchildren. This request was expressly denied until "after the ~~dispositional hearing~~Dispositional Hearing", still not commenced to this day.

~~202.~~98.    Here, ~~Judge Sun~~Defendant SUN should have dismissed the case, because the court must have subject matter jurisdiction in order to hear a case. (In *re Nelson B.* (2013) 215 Cal.App.4th 1121, 1128.).

~~203.~~99.    Under section 300, subdivision (b), the court can assume jurisdiction if it finds there is a substantial risk the child will suffer serious physical harm as a result of the parent's failure or inability to provide regular care. A finding of the parent abuses substances is prima facie evidence the parent is unable "to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M. (*2012) 211 Cal. App. 4th 754, 767; Welf. & Inst. Code § 300, subd. (b).)

~~204.~~100.   However, a parent's use of controlled substances, without something more, is not itself sufficient. (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 453.) The Department must show the parent's substance abuse poses a "specific, non-speculative and substantial" risk the child will suffer serious

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES

36

physical harm. (*In re Drake M.*, supra, 211 Cal.App.4th at p. 767; *In re Destiny S.*, supra, at p. 1003; In re David M. (2005) 134 Cal.App.4th 822, 830.)

~~205.~~101.   -Domestic violence only supports the exercise of jurisdiction under section 300, subdivision (b) if there is substantial evidence the domestic violence is ongoing or likely to continue and either directly harmed or placed the child at risk of suffering physical harm. (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717.)

~~206.~~102.   -Removal at disposition may not be warranted due to the heightened standard of proof[1] or changes in circumstances during the passage of time[2]. Substantial risk of future harm requires that this risk exists at the time of the jurisdictional hearing. *In re R.M.* (2009) 175 CA4th 986, 989, 96 CR3d 655; *In re Destiny S.* (2012) 210 CA4th 999, 1004, 248 CR3d 800 (conduct occurred 9 years before current petition was filed).

~~207.~~103.   Although jurisdiction may be established under ~~Welf & I C~~WIC § 300 (a), (b)(1), or (d), by a showing that the child has suffered prior physical harm under ~~Welf & I C~~WIC § 300(b)(1), jurisdiction may not be continued unless the risk of harm continues. An allegation in a petition or evidence simply that there was a prior allegation of unfitness is not substantial evidence without evidence the allegation was substantiated. (*In re Miguel E.* (2004) 120 Cal.App.4th 521, 547.)

~~208.~~104.   In *In re I.R.* (2021) 61 Cal. App. 5th 510, the Second Appellate District found that there was insufficient evidence to justify removing a minor under section 361,

---

[1] Even though jurisdictional finding may be based on substantial evidence, dispositional findings have a different focus and heightened burden of proof – clear and convincing evidence (§ 361, subd. (c)(1); *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996, 1011.) This heightened standard is premised on the notion that even after parents have been found to have abused or neglected their children "keeping children with their parents while proceedings are pending, whenever safely possible, serves not only to protect parents' rights but also children's and society's best interest. (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1066-1067.)
[2] Even though children may be dependents of the juvenile court, they shall not be removed from their parents unless there is clear and convincing evidence of a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being and there are no "reasonable means" by which the child can be protected without removal. (§ 361, subd. (c)(1).) When considering if the child will be in substantial danger if permitted to remain in the parent's custody, the court must consider not only the parent's past conduct, but also current circumstances and the parent's response to the conditions that gave rise to juvenile court intervention. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 451-452.)

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**
**37**

subdivision (c)(1).  Jurisdiction over the minor was based on a single incident of domestic violence between the parents, where Father slapped Mother. By disposition, Father no longer lived or communicated with Mother and did not display violent behavior outside of the relationship with Mother. The Second Appellate District found that the sole source of potential danger to the minor while in Father's care, which was supported in the record, was his history of domestic violence with Mother, but **the record did not contain substantial evidence that the domestic violence between Mother and Father was likely to continue. There had been no contact between Father and Mother since the minor's detention and neither Mother nor Father expressed an intention to reconcile their relationship and there was no demonstrated unwillingness to stay away from each other.**

~~209.~~105.   In addition, children may be found described by ~~Welf & I C~~WIC § 300(b)(1) although they have suffered no direct harm when there is a pattern of domestic violence that has not been corrected. In such situations of "secondary abuse," evidence that the child was present and witnessed domestic violence with the expected result that the child suffered emotional abuse is sufficient to sustain a petition.  I*n re Healther A.* (1996) 52 CA4th 183, 194, 60 CR2d 554 (mother had permitted unsupervised visit with perpetrator of domestic violence). However, if the evidence does not establish that the child was present and witnessed the violence, the fact of domestic violence in the home may not be sufficient to sustain the petition. See, *e.g., In re Alysha S.* (1996) 51 CA4th 393, 398, 58 CR2d 494.

~~210.~~106.   ~~To~~determine whether domestic violence is ongoing and likely to continue, courts look at a number of factors, including the proximity of the event to the filing of the petition, whether the child was present or exposed to the violence, the number and severity of the incidents, and the parents' subsequent actions. (See e.g. *In re Daisy H.*, supra, 192 Cal.App.4th at p. 717.)

~~211.~~107.   ~~H~~ere, there is no substantial evidence that children ~~assisted and that they~~ were ~~posed in~~exposed to danger ~~by~~or that Plaintiff ~~.~~MJR posed a danger to her children.

Plaintiff MJR presented evidence of ~~active restraining orders~~operative Restraining Order for both Kernell and his adult daughter from the Los Angeles Superior Court~~:~~; yet, ignored.  Plaintiff MJR also presented evidence from the Clara Shortridge Foltz Criminal Justice Court that proved she was acting in self-defense in the episode reported by Defendant DCFS. ~~Melody~~ Plaintiff MJR took every legal remedy in the ~~state~~State of California to protect herself and ~~his~~her children from ~~the violent father and in~~Kernell; moreover, January 2017~~,~~ moved to North Carolina far away from him. ~~Moreover,~~ Kernell is restrained in jail, and ~~Melody~~Plaintiff MJR has a new and happy life in North Carolina~~.~~; therefore~~,~~ there are no possibilities that domestic violence is likely to continue.

~~212.~~108.   Dependency may not be based on ~~Welf & I C~~WIC § 300(b)(1) when any mental disorder or substance abuse cannot be tied to any harm or risk of harm to the children who are well cared for and loved, and when the parents' problems do not impact their ability to care for the children. *In re David M.* (2005) 134 CA4th 822, 829-839, 36 CR3d 411; see also *In re A.L.* (2017) 18 CA5th 1044, 1049-1051, 227 CR3d 3 (mental illness alone not enough even with one incident of violence).

~~213.~~109.   Mental illness alone is not enough for jurisdiction unless DCFS can show it caused harm to the child. *In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318 ["The Department has the burden of showing specifically how the minors have been or will be harmed and harm may not be presumed from the mere fact of mental illness of a parent."]

~~214.~~110.   "'Harm to the child cannot be presumed from the mere fact of mental illness of the parent and it is fallacious to assume the children will somehow be "infected" by the parent. The proper basis for a ruling is expert testimony giving specific examples of the manner in which the mother's behavior has and will adversely affect the child or jeopardize the child's safety. . . . It cannot be presumed that a mother who is proven to be "schizophrenic" will necessarily be detrimental to the mental or physical well-being of her offspring. . . . The social worker must demonstrate with specificity how the minor has been or will be harmed by the parents' mental illness.'" (*In re Jamie M.* (1982) 134 Cal.App.3d 530, 540; *In re Heather P.* (1988) 203 Cal. App. 3d 1214, 1228-

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**
**39**

1229, overruled on other grounds, *In re Richard S.* (1991) 54 Cal. 3d 857, 866, fn. 5, internal citations omitted, italics in original; *In re David D.* (1994) 28 Cal.App.4th 941, 953; *In re Janet T.* (2001) 93 Cal.App.4th 377, 390.)

~~215.~~111.   Defendant DCFS offered no evidence to substantiate the claim that ~~Melody~~Plaintiff MJR had mental and emotional problems or had failed to take psychotropic medications. There was no medical record or diagnoses presented by a qualified physician to support those claims.  Lacking a medical diagnosis, the evidence presented by ~~the department to demonstrate "recognized medical factors"~~Defendant DCFS to support their claim was ~~listed as~~a list of an assortment of assertions from a variety of ~~ailment none of which were substantiated by actual incidents of the behavior being described.~~non-ailments.  Plaintiff MJR today is happily married and has a happy life in North Carolina.

~~216.~~112.   ~~-~~On February 27, 2020, ~~Melody~~Plaintiff MJR filed a ~~notice~~Notice of ~~intent~~Intent to file a ~~writ petition~~Petition for Writ, challenging the February 20, 2020, ~~orders~~Court Orders.

~~217.~~113.   ~~-~~On June 05, 2020, Niti Gupta, assistant of ~~Mel Hatamian~~Defendant HATAMIAN, filed a letter to the Appeals Court stating ~~she~~that Plaintiff MJR could find no reason to file ~~Plaintiff's~~an appeal.

~~218.~~114.   ~~-~~On June 5, 2020, ~~Plaintiff's~~Plaintiff MJR's Counsel, ~~Mel Hatamian~~Defendant HATAMIAN, advised the ~~court~~Court that he was unable to file a ~~writ petition~~Petition for Writ on ~~Plaintiff's~~behalf of Plaintiff MJR.

~~219.~~115.   ~~-~~On July 23, 2020, ~~Melody filed~~Plaintiff MJR, as an in pro per ~~petition for extraordinary writ relief~~litigant, filed a Petition for Extraordinary Writ Relief, pursuant to 8.452 in the Court of Appeal, seeking to challenge the juvenile court's jurisdiction and disposition orders at February 20, 2020, adjudication hearing.  In part of her brief ~~mother,~~Plaintiff MJR, argues that there was insufficient evidence to sustain the domestic violence and mental health allegations pursuant to ~~W&IC section~~WIC § 300, subdivision

---

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES

**40**

(a) and (b). ~~Mother~~ Plaintiff MJR pointed out that ~~the social worker~~Defendant DCFS's
Social Workers did not testify and the statements in the reports were hearsay.

220.116.   On July 30, 2020, the Court of Appeal of the State of California Second
Appellate District, Division Three, issued an order to show cause stating our intent to
decide the matter on the merits.

221.117.   On October 21, 2020, the Court of Appeal granted the petition for
extraordinary relief and concluded that the ~~juvenile court~~Court violated
~~Plaintiff's~~Plaintiff MJR's right to ~~due process~~Due Process by denying her the opportunity
to cross-examine the dependency investigator and social worker. The Court guaranteed
order that "A peremptory writ of mandate shall issue directing the juvenile court to
reverse its jurisdictional findings sustaining counts b-1 and b-2, and dispositional orders
as to ~~mother~~Plaintiff MJR only, entered on February 20, 2020. In addition, the court shall
vacate any subsequent order terminating parental rights. On remand, the court shall
conduct a new jurisdiction and disposition hearing as to ~~mother~~Plaintiff MJR consistent
with the views expressed in this opinion." *Melody R. v. Super.* Ct. CA2/3.

222.118.   On March 11, 2021, ~~DCFS' Director, Bobby D. Cagle,~~Defendant CAGLE
and ~~DCFS~~Defendant DCFS's Social Workers, Marcal Maye-Henderson and Aliana
Darted, submitted a report with the same fabricated evidence against Plaintiff MJR,
stating that "Pursuant to WIC §361.5(b)(10), ~~the Department~~Defendant DCFS
recommends ~~NO~~No Reunification Services for ~~Mother Melody Rodgers~~Plaintiff MJR, as
the Court ~~Terminated~~terminated Family Reunification Services for children's half-
siblings and no subsequent effort to treat problems that led to the removal of those
children."  The report presented the same original false allegations against Plaintiff MJR.

223.119.   On December 12, 2021, ~~DCFS' Director, Bobby D. Cagle,~~Defendant
CAGLE and ~~DCFS~~Defendant DCFS's Social Workers, Regina Minor and Darryllisha
Burch-Parker continued, with malicious and fraudulent intent, their practice of fabricating
evidence and omitting exculpatory evidence in their reports.  In addition to the previous
false and inaccurate allegations against ~~Melody, the department~~Plaintiff MJR Defendant

**~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES**
**41**

DCFS's Social Worker reports that Caregiver, "Ms. C.Clark stated that, when motherPlaintiff MJR, calls the child, Symphony's behaviorschildren, Plaintiff SB's behavior noticeably changes and the calls cause "more harm, then good." However, Ms. Clark, is ready to testify that she never made such a statement.

224.120.   On June 9, 2022, "the Court finds there is no full .26 Report and no In and Out for father. The .26 Hearing is continued to 08/17/2022 for receipt of a full .26 report and for an In and Out for father to be transported to court."

225.121.   On June 2022, Plaintiff presentedMJR filed an appeal on the order to continuance.

226.        2022, Dae Yae Sun assistant county counsel Joseph S. Lee prevented Melody from obtaining court records for review of case status.

227.122.   Defendants' conduct, as set forth herein, is a substantial factor in causing Plaintiffs harm, which constitutes gross negligence such that Defendants are liable and Plaintiffs are entitled to Punitive damages, and Attorney's cost and expenses for which Plaintiffs seeks judgment of this Court.

228.123.   Plaintiffs intend to show that the factors the jury may consider in determining the amount of punitive damages, which should be awarded include:

   a.  The nature of the wrong committed by Defendants;

   b.  The character of Defendants' conduct;

   c.  The degree of culpability of Defendants;

   d.  The situation and sensibilities of the parties concerned; and

   e.  The extent to which Defendants' conduct offends a public sense of justice and propriety.

## V.    BACKGROUND STATEMENT


## V.    RELEVANT INFORMATION

---

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

**42**

**A. Customs, Policy and Practices Adopted by California's Foster System to Snatch Children from their Birth Parents in violation of ~~civil rights~~their Civil Rights**

~~A.~~

~~229.~~124.   This suit addresses the unlawful practices pursued by the Governor and those subordinates of his, who operate the foster care system, letting the operators of the system essentially have their choice of the minor children placed into the state's foster custody, interfering with the children's relationships with their families, contrary to law and seeks injunctive relief against the foster system personnel that conspired using the foster care system to take children from biological parents.

~~230.~~125.   Plaintiff MJR also seeks ~~declaratory relief~~Injunctive Relief condemning the unlawful child-snatching practices ~~the~~that Defendants have been practicing.

~~231.~~126.   Defendants developed, implemented, enforced, encouraged, and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to the ~~Plaintiffs'~~Plaintiff MJR's constitutional rights which caused the violation of such rights. Specifically, Plaintiff contends that these policies, practices, or customs were willfully implemented with the specific intent to deprive Plaintiff's rights under the Fourteenth Amendment of the Constitution, by, but not limited to:

   a) The policy of removing a child from the care, custody, and control of her parent without good cause;

   b) The policy of using trickery, duress, fabrication and/or false testimony and/or evidence, and in failing to disclose ***exculpatory evidence***, in preparing and presenting reports and court documents to the court, causing an interference with Plaintiff's rights, including those as to familial relations;

   c) By acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to

---

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**

**43**

individuals, including those under the Fourteenth Amendment, when performing actions related to child abuse and ***dependency*** type proceedings;

d) The policy of setting forth allegations in ***Juvenile Dependency*** Petitions against parents claiming they suffer from psychological disorders and/or are influencing the minor child to make false reports of sexual abuse, regardless of whether or not reasonable and articulable evidence exists at the time to support the claims set out in the petition or reports under penalty of perjury;

e) The policy, practice, or custom of making knowingly false allegations of misconduct in ***juvenile dependency*** petitions and/or reports as a means of intimidating parents, by coercion, into accepting the wrongful recommendations and orders based on falsified evidence, whether justified by extant evidence or not, thereby enabling the county to keep the family in the ***juvenile dependency*** system and record the case as a positive outcome for purposes of statistical analysis related to funding by the State and Federal governments;

f) The custom, policy, and or practice of fraudulently accusing parents of making false allegations where no evidentiary basis exists.

(This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and ***juvenile dependency*** type proceedings.  Plaintiff MJR reserves the right to amend this pleading as more information becomes available.)

232.127.  Defendants, including through their respective entities, breached their duties and obligations to Plaintiff MJR including, but not limited to, failing to establish, implement and follow well known and clearly established, "bright line" Constitutional policies, procedures, customs and practices.

233.128.  By failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by permitting

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

**44**

the Defendant LA COUNTY Police officers Officers and social workers, Defendant DCFS's Social Worker's to engage in the unlawful and unconstitutional conduct as herein alleged.

234. 129.   Biological parents have a clearly established due process right under the Fourteenth Amendment to be free from the deliberate use of perjured testimony and fabricated evidence during juvenile dependency proceedings. See, e.g., *Hardwick v. County of Orange*, 844 F.3d 1112, 1116–17 (9th Cir. 2017); see also *Greene v. Camreta*, 588 F.3d 1011, 1035 (9th Cir. 2009) (holding that "the 'constitutional right to be free from the knowing presentation of false or perjured evidence' is clearly established" (quoting *Devereaux v. Perez*, 218 F.3d 1045, 1055–56 (9th Cir. 2000))).

235. 130.   Defendants knew, or should have known, that by breaching the above-mentioned duties and obligations it was foreseeable that they would, and did, cause Plaintiff MJR to be injured and damaged by their wrongful policies, or deliberate lack thereof or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in contravention of public policy and their legal duties and obligations to Plaintiff MJR; and that such policies would subject them to injunctive relief Injunctive Relief which Plaintiff asserts herein.

**B. California's Foster System Increasingly Serves as a Child Snatching "" "Internal Diversion" System Taking Children from Families and Relatives and Letting Foster System Connected Staff Take Them**

236. 131.   This suit also addresses the failure of the Defendants to follow the laws relating to the minor children in California foster care Foster Care System and their biological relatives entitled to participate with those children, as provided by California and federal laws prioritizing the placement and permanency rights of biological and other family members.

237. 132.   To operate the system for internal diversion of children, Defendants executing their responsibilities [including Defendant DCFS, and DCF's Defendant

FIRST SECOND **AMENDED COMPLAINT FOR DAMAGES**

45

DCFS's contracted lead agencies] use a number of artifices and devices, and other outright unlawful actions, including, but not limited to:

    a.  Not providing the dependency court, or Birth Parents and their attorneys, with pertinent exculpatory information;

    b.  Taking advantage of many dependency judges' lack of knowledge of the foster system and the resulting inappropriate reliance on the Foster System Operators;

    c.  Playing "hide the ball" with information needed by family members, blocking family members from access to hearings and information about how the system works, and what the case plans for permanency for the child are;

    d.  Fabricating "evidence" against relatives and obstructing access to key information relating to parents and children needed by the dependency court for a fair and impartial hearing;

    e.  Failing to conduct the requisite diligent searches for biological relatives of the child when a child is sheltered and then again throughout the case, and again, as required after a TPR judgement judgment;

    f.  Choosing a nonrelative system-connected person for placement of a child instead of complying with the law and placing the child with relatives;

    g.  Having the lead agency [and, at times, a subcontracted case management agency] work with DCFS to divert children to favored non-relatives, rather than conducting the required diligent searches for relatives;

    h.  Willfully disregarding safety statutes and time limitations in the Rules of Juvenile Procedure in order to intentionally inflict further emotional stress on families ;

    i.  Tampering with witnesses and preventing them from testifying in court;

**Formatted:** Left

j.  Intentionally writing misleading statements in order to create a false record that will allow agencies to collect federal and state funds by taking children who do not fit the WIC definition of abused or neglected

k.  Ignoring frequently [if not as often as possible] the due process rights of Birth Parents and other Relatives to be present with advance notice of judicial review proceedings and blocking Relatives from being heard in dependency court proceedings by their misuse of the "Participant/Party" Rule of Juvenile Procedure and related California's statutory definitions.

l.  Compromising the ethical obligations of the attorneys for Birth Parents by paying the attorney for system-connected services inconsistent with the attorney's obligations to his or her clients;

m.  Fabricating false reports of abuse attributed to a relative to justify failing to approve a relative for placement while attempting to place a child with a non-relative.

238.133.   When relatives who realized how their related youngsters had been essentially kidnapped, snatched, or internally diverted, complained to ~~Defendant~~ Governor directly or through the Inspector General for one or more of the Departments, the Governor and his ~~minions~~subordinates, including the supposedly ~~independent~~Independent Inspector General, took no independent action other than to redirect the complaints to Defendant DCFS to handle, with no accountability or redress for the relatives of the snatched, diverted children.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION FOR VIOLATION OF 42 USC § 1983 ~~against ALL DEFENDANTS~~**
**(Against all Defendants)**

239.134.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

240.135.   To state a Section 1983 claim, the plaintiff is required to allege that (1) the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived the plaintiff of a constitutional right.

136.        Plaintiff MJR complied with Defendant DCFS's Court Ordered plan; yet, her children were removed without good cause by individuals who are/were employed for the government, acting under color of color, ignoring statutory law and refusing to adhere to Court orders.

137.        Judge, social work, court appointed did wrong, she filed a Writ.

138.        Plaintiff MJR took every legal remedy in the State of California to protect herself and her children from Kernell, Plaintiffs SB and PB's father, whom is violent, January 2017, they moved to North Carolina far away from him.

139.        On July 30, 2020, the Court of Appeal of the State of California, Second Appellate District, Division Three issued an order to show cause RE Intent to Decide the Matter on its Merits.

140.        On October 21, 2020, the Court of Appeal granted Plaintiff MJR's Petition for Extraordinary Relief and ruled that the Court violated Plaintiff MJR's rights to Due Process by denying her the opportunity to cross-examine the DIs and Defendant DCFS's Social Workers.

241.        On or about Feb. 29, 2016, several Social Workers and Police Officers who were sent by defendants entered Plaintiff's home without a warrant with LAPD when the kids were in no eminent danger.

242.141.   On or about Feb. 29, 2016, defendantsDefendants made comments about race and socioeconomic status that "black women are supposed to be strong "Defendants stated "That plaintiffs should have gone to school and got married before having kids".

243.        Carvin Hall denied children financial support. Plaintiff's oldest daughter was physically abused in foster care and Carvin Hall attempted to suppress this

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES
48

~~information Sonia Valiente misrepresented who she was and covered up child abuse that was inflicted by the County,~~Defendant DCFS's Social Workers ~~and by Foster parents as well Mary Theresa Meza and Sonia Valientes.~~

~~244.~~142.  ~~Social Workers~~ falsified their Detention ~~report~~Reports and Jurisdictional Reports ~~and made unreasonable searched in plaintiff's home, without a warrant, and without justified cause. Sonia also embellished her reports,~~ left out pertinent information regarding ~~the children's father~~Kernell in order to ~~favor~~reflect him,~~;~~ in a positive light, detained Plaintiff MJR and her children without good cause, lied to ~~plaintiff about how~~Plaintiff MJR and recommend therapy to get ~~my~~her children back ~~by recommending a specific mental health facility to go to. She did not attempt to~~, never attempted to reunify ~~plaintiff with the children as she had~~Plaintiff MJR and her children, suppressed material evidence including evidence of physical abused against Plaintiff MR, and made unreasonable searches in Plaintiff MJR's home without a warrant and without justified cause.  Defendant DCFS's Social Workers never attempted to reunify Plaintiff MJR with her children as they promised.

~~245.        She conspired with the child's father and encouraged him to lie about plaintiff, by telling him he could get custody and be relieved of child support obligation. Defendants further covered up evidence that the children was abused while in foster care.~~

~~246.~~143.  ~~ON OR 02/29/16,~~Commencing February 29, 2016, (WHO?) the Superior Court of California for ~~the County of Los Angeles~~Defendant LA COUNTY, Juvenile Dependency Court ~~ORDERED~~ordered that ~~the~~Defendant DCFS be ~~AUTHORIZED TO DETAIN PLAINTIFF'S CHILDREN~~authorized to detain Plaintiff MJR's children without a valid cause. ~~JERRY BROWN is the Governor of California and owes~~ The aforementioned government agencies owed a duty of care to Plaintiff MJR to ~~ascertain~~ensure that ~~the state~~Defendant State of California does not ~~MAKE NOR ENFORCE ANY LAW THAT ABRIDGES THE RIGHTS OF THE CITIZENS.~~make nor enforce any laws that abridges the rights of the citizens.

---

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES

49

247.144.   However, Defendants did endorse, contribute, and enforce the statutes within Welfare & Institutions Code §§ 300-378, which involve "one-sided" and unconstitutional Juvenile Dependency Laws that allow Social Workers to take a parents children without a warrant, that allow warrants to be issued without probable cause, that allow the quartering of Soldiers or Social Workers in the homes of families, and allow the violation of the Due Process Right of a Parentparent to Bringbring up a child without governmental interference.

248.145.   Commencing Feb. 29, 2016During the same time, Defendants made false statements to the public in regards to plaintiff'sPlaintiff MJR's criminal history, as means in preventing plaintiffPlaintiff MJR from obtaining gainful employment.  Additionally, Defendants prevented Plaintiff fromMJR adequate visits with her children (PC § 278.5) and never allowed "reunification services" as normally provided under Welfare & Institutions Code § 300 et. seq. On or about Feb. 29, 2016, Michel H. Eisner, the other defendants seq.  Defendants filed a Falsefalse Juvenile Dependency Petition against Plaintiff MJR and her children. 18. The restrained, CHILDREN and PLAINTIFF were denied due process and were denied the , which resulted in them being denied their right to present evidence on their behalf; denied their Due Process.

249.      The Los Angeles County DCFS's basis for their petition for Juvenile Dependency against the restrained, CHILDREN,Defendant MARPET was based on an allegation that the parents were not good parents.

250.      re.: Lonisha T   withheld minute orders when I request them from her and said she didn't have them   hired social worker investigator but the investigator was never available, out sick, then out on vacation, did not return emails; I have a voicemail proving that she purposely did not call me back until the morning of my court case which was too late to ask me for what evidence I wanted to present   said she got the date mixed up   was unavailable via phone and denied case information requests sent via email

---

**FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES**

**50**

**Formatted:** Indent: Left: 0", First line: 0.25"

251.146.  re.: Carvin Hall - told me that a therapist letter would be sufficient but then denied it as evidence when I have it to him - refused to give me minute orders after agreeing to email them to me. Ignored about 4 email requests for them - lied about turning in paperwork so my kids would have funding while partial judge, in foster care. Kids were without resources for four months - Claimed to be powerless in the case and often said he was just doing what he was told when in actuality he had the power to approve overnight visits for me with my children and to even encourage the case to be dismissed based on his frequent interactions with me - was trying to put my kids up for adoption behind my back and therefore was not putting forth effort to reunify me with my family - essentially withholding evidence of my good character which would have worked in my favor re.: Superior of Defendant DCFS's Officers of the Court of California Commissioner Stephen Marpet - he is not impartial and favors DCFS - day. Day one in his courtroom he yelled at me Plaintiff MJR and told me her to take medication without even hearing my side of the story - does not allow me to speak in court - does not listen to evidence or even seek evidence from my side and tries to silence me by not allowing me to represent myself. He keeps assigning me public defenders Plaintiff MJR's testimony; she was denied her right to be heard and denied her right to present her case until she agreed to Defendant HATAMIAN, as her counsel.  Defendant MARPET repeatedly assigned Public Defenders to Plaintiff MJR, who refuse refused to present my Plaintiff MJR's material evidence.

252.147.  Defendants participated with all other defendants Defendants and acted in concert, and denied plaintiff due process in the court, and Denied plaintiff Plaintiff MJR her Due Process, and denied Plaintiff MJR her right to bring up his child her children without governmental interference.  All of the defendants caused the results of the constitutional rights violations Defendants violated Plaintiffs Constitutional Rights and each participated in the acts. while acting under color of law.  Plaintiffs hereby allege that EACH DEFENDANT "CAUSED" and "PARTICIPATED IN" each Defendant caused and participated the acts or omissions regarding the facts herein alleged either by "direct

**FIRST SECOND AMENDED COMPLAINT FOR DAMAGES**

**51**

conduct, neglect or conspiracy". (See *Monell v. Department of Soc. Servs.* (1978) 436 US 658, 56 L Ed 2d 611, 98 S Ct 2018; *Pmerantz v County of Los Angeles* (9th Cir 1982) 674 F2d 1288, 1291.

148.   ~~TO ESTABLISH PERSONAL LIABILITY~~To establish personal liability, it is enough to show that an official, acting under color of state law, caused deprivation of federal right. (See *Kentucky v. Graham* (1985) 473 US 159, 165, 87 L Ed 2d 114, 121, 105 S Ct 3099. Local governments, municipal corporations, and their agents acting under color of "state" law (which may encompass implementation or enforcement of a municipal, local law, regulation, ~~POLICY~~policy, or custom, ~~ARE "PERSONS~~are "persons" subject to liability under 42 USC § 1983. *See Monell v. Department of Soc. Servs.* (1978) 436 US 658, 56 L Ed 2d 611, 98 S Ct 2018. ~~See Monell v. Department of Soc. Servs. (1978) 436 US 658, 56 L Ed 2d 611, 98 S Ct 2018.~~ California ~~COUNTIES~~counties have been treated as municipalities for § 1983 purposes. *See Moor v. County of Alameda* (1973) 411 US 693, 36 L Ed 2d 596, 93 S Ct 1785. Also, *see Hernandez v. County of San Bernardino* (2004) 117 CA4th 1055, 12 CR3d 452 (erroneous wage garnishment against plaintiff by county's family support division may render county liable under § 1983 if family support division is determined to be the policymaker for the county.

~~253.~~149.   Additionally, a ~~PUBLIC ENTITY~~public entity may be held liable for a constitutional violation caused by a ~~POLICY, CUSTOM, OR PRACTICE~~policy, custom, or practice of the public entity. *See Monell v. Department of Soc. Servs.* 436 US at 690, 56 L Ed 2d at 635. Plaintiffs hereby allege that each defendant participated, caused, conspired and acted under "color of law" to deprive plaintiffs of their ~~constitutional rights~~Constitutional Rights based on the policies, customs and practices of the entities sued as public entities, in addition to "malice" and intentional fraud" based on hatred towards the race, creed and religion of ~~plaintiffs~~Plaintiffs.

254.    The illegality of the restraint, custody or confinement, violation of constitutional rights and conspiracy against plaintiff's rights consists in the following STATEMENT OF FACTS:

255.    A Juvenile detention hearing for the restrained, CHILDREN was held recently at the CHILDREN'S Court in the County of Los Angeles.

256.    To sustain an action under Sec. 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right. Rinker v. Napa County, 831 F.2d 829, 831 (9th Cir.1987) (citing Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)). Plaintiff would review de novo the district court's dismissal of plaintiff's complaint under Rule 12(b)(6). Shah v. County of Los Angeles, 797 F.2d 743, 745 (9th Cir.1986). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of acts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). On a motion to dismiss, the court accepts the facts alleged in the complaint as true. Shah, 797 F.2d at 745. Plaintiffs claim that defendants breached a duty to protect the children and her parental rights imposed by the due process and equal protection clauses of the Fourteenth Amendment, and further claims a violation by defendants of his right to have a thorough investigation by the defendant County of Los Angeles employees. At all times mentioned defendants had a "special relationship" with plaintiff in that they owed plaintiff a duty and each of them breached their duty owed to plaintiff by preventing, dissuading, and conspiring against the constitutional rights of plaintiff and her daughter. Summarily

**FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES**

53

1  ~~defendants conspired "in concert" to deprive the plaintiff parents of their~~

2  ~~constitutional right to bringing up her children and her parental rights.~~

3  ~~257.~~150.   The heart of ~~Plaintiff, plaintiffs' civil rights~~Plaintiffs' Civil Rights claim is

4  that ~~the Defendant~~Defendants, directors, supervisors, and employees for ~~the County of~~

5  ~~Los Angeles DCFS~~Defendant LA COUNTY conspired against plaintiffs to

6  "~~WRONGFULLY SEPARATE THE FAMILY WITHOUT THAT STANDARD~~

7  ~~CAUSE OR PROCESS OF LAW,~~wrongfully separate the family without a standard of

8  care or process of law", which is an ~~abuse~~Abuse of ~~process.~~Process.   There is, in general,

9  no constitutional duty of state officials to protect members of the public at large from

10 crime and child neglect. See *Martinez v. California*, 444 U.S. 277, 284-85, 100 S.Ct. 553,

11 558-59, 62 L.Ed.2d 481 (1980); *Ketchum*, 811 F.2d 1243, 1247 (9th Cir.1987); *Bowers v.*

12 *DeVito*, 686 F.2d 616, 618 (7th Cir.1982). However, such a duty may arise by virtue of a

13 "special relationship" between state officials and a particular member of the public.

14 *Ketchum*, 811 F.2d at 1247; *Escamilla v. Santa Ana*, 796 F.2d 266, 269 (9th Cir.1986).

15 Several courts have held that, to determine whether a "special relationship" exists, a court

16 may look to a number of factors, including (1) whether the state created or assumed a

17 custodial relationship toward the plaintiff; (2) whether the state affirmatively placed the

18 plaintiff in a position of danger; (3) whether the state was aware of a specific risk of harm

19 to the plaintiff; or (4) whether the state affirmatively committed itself to the protection of

20 the plaintiff. *See Ketchum*, 811 F.2d at 1247; *Escamilla*, 796 F.2d at 269-70; *Jensen v.*

21 *Conrad*, 747 F.2d 185, 194 (4th Cir.1984).

22   ~~258.~~151.   In this particular circumstance, Defendants violated ~~Plaintiff's~~Plaintiffs'

23 rights to equal privileges and protection of the laws in that Defendants failed to provide a

24 ~~Fair Trial~~fair trial for Plaintiff MJR, prevented Plaintiff MJR from presenting evidence in

25 the trial.  Thereafter, ~~defendants~~Defendants placed ~~Plaintiff's child~~Plaintiff MJR's

26 children in a home with convicted criminals, knowing that they were likely to endanger

27 ~~Plaintiff's child.~~Plaintiff MJR's children.

28

---

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES

**54**

Formatted: Indent: Left: 0", First line: 0.25"

Formatted: Font: Italic

Formatted: Font: Italic

Formatted: Font: Italic

Formatted: Font: Italic

Formatted: Font: Italic

Formatted: Font: Italic

Formatted: Font: Italic

Formatted: Font: Italic

259.152.   Additionally, Defendants prevented Plaintiff MJR from having adequate visits with her childchildren (PC § 278.5) and never allowed "reunification services" as normally provided under Welfare & Institutions Code § 300 et. seq..

260.153.   In the recent case of *DeShaney v. Winnebago County of Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), however, the Supreme Court limited the circumstances giving rise to "a special relationship." Joshua DeShaney fell into a life-threatening coma after he was severely beaten by his father. Prior to this beating, the social services agency recorded multiple incidents indicating that someone in the DeShaney household was physically abusing Joshua and temporarily placed Joshua in the custody of the juvenile court. In the course of explaining its holding that Joshua DeShaney and his mother failed to make out an actionable Sec. 1983 claim, the Court explained that its previous decisions recognizing "affirmative [constitutional] duties of care and protection.... stand only for the proposition that when the State takes a person into its custody and hold him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general wellbeing.... The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* 109 S.Ct. at 1005-06. We conclude that the state'sState's knowledge of DeShaney's plight and its expressions of intent to help him were no greater than its knowledge of Balistreri's plight and its expressions of intent to help her. *See id.* at 1010-11 (*Brennan, J.*, dissenting) ("Wisconsin law invites--indeed, directs--citizens and other governmental entities to depend on local departments of social services such as respondent to protect children from abuse.... Through its child-protection program, the State actively intervened in Joshua's life and, by virtue of this intervention, acquired ever more certain knowledge that Joshua was in grave danger.").

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

55

**SECOND CAUSE VIOLATION OF 42 U.S.C. 1985(3) against ALL DEFENDANTS (Against all Defendant)**

261.154.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

155.        Section 1985, (1)Preventing officer from performing duties:

If two or more persons in pertinent part, prohibits conspiracies eitherany State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

156.        (2)Obstructing justice; intimidating party, witness, or juror:

262.    If two or more persons in any State or Territory conspire to deter, by force, threat, or intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully in a federal court, or to injure anysuch party or witness in his person or property because heon account of his having so attended or testified in federal court., or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering,

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

56

obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

157.   Finally, by virtue (3)Depriving persons of 42 U.S.C. § 1985(3)rights or privileges:

263.   If two or more persons are said to have conspired to deprive a third person's rights or privileges if such personsin any State or Territory conspire to:

264.   or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or theof equal privileges and immunities provided under the laws;

265.   under the laws; for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote as an elector in, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or membersas a Member of Congress;

266.   injure any citizen in person or property on account of support or advocacy rendered to voters in the election of President or Vice-President, or members of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES**

57

267.158.  If as a result of the conspiracy, one or more persons are injured in person or property, or is deprived of any of their rights or privileges, the party so injured or deprived may have an action for the recovery of damages, against the conspirators. However, it is necessary that a plaintiff suing under 42 U.S.C. § 1985 should show the existence of a conspiracy.  The existence of a conspiracy may also be inferred from the surrounding circumstances.

268.159.  State limitation periods apply to actions brought pursuant to 42 U.S.C. § 1985.  The plaintiff must plead facts with specificity and particularity.  Nominal, compensatory, and punitive damages are available to successful § 1985 plaintiffs Plaintiffs.

269.160.  The above-listed defendants Defendants have a policy, custom, and pattern of practice, and act under color of law in their capacities as employees for local, county and state public entities, and on a daily basis falsify reports, to engage in acts of abuse Abuse of process, to Process. defraud the general public by filing false reports in the juvenile courts for the County Juvenile Dependency Court to justify excessive expenditures of taxpayers' money and to fail to notify the courts as to the truth of matters and circumstances as their informed. Defendants conspired to deprive plaintiffs Plaintiff MJR of their constitutional right her Constitutional Right to bring up her child children without governmental interference and her right to bring her child in general. Defendants and each of them, knowingly and willfully conspired, "acted in concert" and agreed among themselves to damage the plaintiff be harm Plaintiff MJR by depriving him her of the privileges and rights within the Constitution of the United States of America, because she belongs to a protected class and because of HER her religious beliefs and creed. On or about Feb. 29, 2016, defendants made comments about race and socioeconomic status that "black women are supposed to be strong "Defendants stated "That plaintiff should have gone to school and got married before having kids".

270.        Carvin Hall denied children financial support. Plaintiff's oldest daughter was physically abused in foster care and Carvin Hall attempted to suppress this

FIRST SECOND AMENDED COMPLAINT FOR DAMAGES

58

information Sonia Valiente misrepresented who she was and covered up child abuse that was inflicted by the County, Social Workers and by Foster parents as well Mary Theresa Meza and Sonia Valientes.

161.    On or about Feb. 29, 2016, Defendants made comments about race and socioeconomic status "black women are supposed to be strong "Defendants stated "That plaintiffs should have gone to school and got married before having kids".

271.162.  Defendant DCFS's Social Workers falsified their Detention reportReports and Jurisdictional Reports and made unreasonable searched in plaintiff's home, without a warrant, and without justified cause. Sonia also embellished her reports, left out pertinent information regarding the children's fatherKernell in order to favorreflect him, and in a positive light, lied to plaintiff about how to get my children back byPlaintiff MJR recommending a specific mental health facility to go to.therapy to get her children back, never attempted to reunify Plaintiff MJR and her children, and made unreasonable searches in Plaintiff MJR's home, without a warrant, and without justified cause.  She did not attempt to reunify plaintiff with the children as she had promised.

272.    She conspired with the child's father and encouraged him to lie about plaintiff, by telling him he could get custody and be relieved of child support obligation. Defendants further covered up evidence that the children was abused while in foster care.

273.    ON OR 02/29/16, the Superior Court of California for the County of Los Angeles, Juvenile Court ORDERED that the DCFS be AUTHORIZED TO DETAIN PLAINTIFF'S CHILDREN without a valid cause. The Governor of California and owes a duty to Plaintiff to ascertain that the state does not MAKE NOR ENFORCE ANY LAW THAT ABRIDGES THE RIGHTS OF THE CITIZENS. However, The Governor did endorse, contribute, and enforce the statutes within Welfare & Institutions Code §§ 300-378, which involve "one-sided" and unconstitutional Juvenile Dependency Laws that allow Social Workers to take a parents children without a warrant, that allow warrants to be issued

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

59

without probable cause, that allow the quartering of Soldiers or Social Workers in the homes of families, and allow the violation of the Due Process Right of a Parent to Bring up a child without governmental interference.

274.       re.: Lonisha T—withheld minute orders when I request them from her and said she didn't have them—hired social worker investigator but the investigator was never available, out sick, then out on vacation, did not return emails; I have a voicemail proving that she purposely did not call me back until the morning of my court case which was too late to ask me for what evidence I wanted to present—said she got the date mixed up—was unavailable via phone and denied case information requests sent via email re.: Carvin Hall—told me that a therapist letter would be sufficient but then denied it as evidence when I have it to him—refused to give me minute orders after agreeing to email them to me. Ignored about 4 email requests for them—lied about turning in paperwork so my kids would have funding while in foster care. Kids were without resources for four months—Claimed to be powerless in the case and often said he was just doing what he was told when in actuality he had the power to approve overnight visits for me with my children and to even encourage the case to be dismissed based on his frequent interactions with me—was trying to put my kids up for adoption behind my back and therefore was not putting forth effort to reunify me with my family—essentially withholding evidence of my good character which would have worked in my favor re.: Superior Court of California—Commissioner Stephen Marpet—he is not impartial and favors DCFS—day one in his courtroom he yelled at me and told me to take medication without even hearing my side of the story—does not allow me to speak in court—does not listen to evidence or even seek evidence from my side and tries to silence me by not allowing me to represent myself. He keeps assigning me public defenders who refuse to present my evidence.

163.       Commencing Feb. 29, 2016, Commencing February 29, 2016, the Superior Court of California for Defendant LA COUNTY, Juvenile Dependency Court ordered

that Defendant DCFS be authorized to detain Plaintiff MJR's children without a valid cause.  The aforementioned government agencies owed a duty of care to Plaintiff MJR to ensure that Defendant State of California does not make nor enforce any laws that abridges the rights of the citizens.

275.   During the same time, Defendants made false statements to the public in regards to plaintiff'sPlaintiff MJR's criminal history, as means in preventing plaintiffPlaintiff MJR from obtaining gainful employment.

276.   Additionally, Defendants prevented Plaintiff fromMJR adequate visits with her children (PC § 278.5) and never allowed "reunification services" as normally provided under Welfare & Institutions Code § 300 et. seq. On or about Feb. 29, 2016, Defendant Michel H. Eisner, the other defendantsseq.  Defendants filed a Falsefalse Juvenile Dependency Petition against Plaintiff MJR and her children.

277.164.   The restrained, CHILDREN and PLAINTIFF were denied due process and were denied the, which resulted in them being denied their right to present evidence on their behalf.; denied their Due Process.

278.   The Los Angeles County DCFS's basis for their petition for Juvenile Dependency against the restrained, CHILDREN, was based on an allegation that the parents were not good parents.

165.   Defendant MARPET was a partial judge, in favor of Defendant DCFS's Officers of the Court.  Day one in his courtroom he yelled at Plaintiff MJR and told her to take medication without even hearing Plaintiff MJR's testimony; she was denied her right to be heard and denied her right to present her case until she agreed to Defendant HATAMIAN, as her counsel.  Defendant MARPET repeatedly assigned Public Defenders to Plaintiff MJR, who refused to present Plaintiff MJR's material evidence.

279.166.   Defendants participated with all other defendantsDefendants and acted in concert, and denied plaintiff due process in the court, and Denied plaintiffPlaintiff MJR her Due Process, and denied Plaintiff MJR her right to bring up his childher children

**FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES**
**61**

Formatted: Indent: Left:  0", First line:  0.25"

Formatted: Font: Not Bold

Formatted: Indent: Left:  0", First line:  0.25"

without governmental interference.  All of the ~~defendants caused the results of the constitutional rights violations~~Defendants violated Plaintiffs Constitutional Rights and each participated in the acts, while acting under color of law.

167.    Plaintiffs hereby allege that ~~EACH DEFENDANT "CAUSED" and "PARTICIPATED IN"~~each Defendant caused and participated the acts or omissions regarding the facts herein alleged either by "direct conduct, neglect or conspiracy". (See *Monell v. Department of Soc. Servs.* (1978) 436 US 658, 56 L Ed 2d 611, 98 S Ct 2018; *Pmerantz v County of Los Angeles* (9th Cir 1982) 674 F2d 1288, 1291. ~~TO ESTABLISH PERSONAL LIABILITY~~

~~280.~~168.  To establish personal liability, it is enough to show that an official, acting under color of state law, caused deprivation of federal right. (See *Kentucky v. Graham* (1985) 473 US 159, 165, 87 L Ed 2d 114, 121, 105 S Ct 3099. Local governments, municipal corporations, and their agents acting under color of "state" law (which may encompass implementation or enforcement of a municipal, local law, regulation, ~~POLICY~~policy, or custom, ~~ARE "PERSONS~~are "persons" subject to liability under 42 USC § 1983. *See Monell v. Department of Soc. Servs.* (1978) 436 US 658, 56 L Ed 2d 611, 98 S Ct 2018. California ~~COUNTIES~~counties have been treated as municipalities for § 1983 purposes.  *See Moor v. County of Alameda* (1973) 411 US 693, 36 L Ed 2d 596, 93 S Ct 1785. Also, *see Hernandez v. County of San Bernardino* (2004) 117 CA4th 1055, 12 CR3d 452 (erroneous wage garnishment against plaintiff by county's family support division may render county liable under § 1983 if family support division is determined to be the policymaker for the county.

~~281.~~169.  Defendants, and each of them, maintain, and at all times relevant to this Complaint maintained, customs and practices which were the driving force behind their conspiracy to interfere with ~~Plaintiff's~~Plaintiff MJR's civil rights in violation of 42 U.S.C. section 1985.  Such customs and practices include unlawful removal of minor children; and the procuring of false testimony, fabrication of evidence, and refusal to disclose exculpatory evidence in preparing and presenting reports and documents to the ~~court in~~

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**

**62**

relation to dependency proceedings Court, all in violation of the right to familial association under the Due Process Clause of the Fourteenth Amendment.

282.170.  Defendants and each of them, have, and at all times relevant to this complaint had, knowledge of the customs and practices that led to the conspiracy to interfere with Plaintiff's civil rights. [ All named defendants] Defendants knew that the other individual defendants were conspiring to commit the Co-Defendants' wrongs noted above. to be committed and that they were going to commit them.

283.171.  Defendants, and each of them, had the power to prevent the commission of these wrongs, through the notification of the proper superiors and authorities, and/or through the implementation of policies, procedures, and training programs that would educate and enlighten employees as to the civil rights of the citizens of the United States and the State of California.

284.172.  Despite their knowledge, Defendants, and each of them, refused or neglected to prevent the remaining Defendants from committing these wrongs in violation of 42 U.S.C. section 1985.

285.173.   Defendants, and each of them, engaged in said conspiracies for the purpose of depriving Plaintiffs of equal protection of the laws of the State of California and of the United States and depriving them of their rights under the Constitutions of the United States and the State of California.

286.174.   Defendants, and each of them, acting under color of state law, conspired to deprive and did deprive, Plaintiff Plaintiffs of her rights under the laws of the United States. Specifically, Defendants conspired to, and did act, agree and/or conspire to unlawfully examine, investigate, threaten, and make false reports resulting in the removal of the minor child from the custody of Plaintiff  MJR.  In addition, Defendants, and each of them, conspired to use trickery, duress, fabrication and/or false testimony or evidence and failed to disclose ***exculpatory evidence*** in preparing and presenting reports and court documents to the court.

**~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES**

**63**

287.175.   -Defendants, and each of them, took several acts in furtherance of the conspiracy, including but not limited to, acting, agreeing and/or conspiring to unlawfully examine, investigate, threaten, and make false reports resulting in the removal of the minor child from the custody of Plaintiff MJR; and by procuring false testimony, fabricating evidence, suppress evidence, and failing to disclose **_exculpatory evidence_** in preparing and presenting reports and court documents to the court in relation to [minor child's] **_dependency_** proceedings.

288.176.   -Children's Attorney of Los Angeles has conspired with the Attorney for the County and the Department of Children and Family Services to suppress evidence that the children have suffered no harm and want to come home and have continually expressed their desire to return home to mother. Despite lacking any evidence of harm, children are still being detained.

289.177.   -Defendants acted with malice and with the intent to cause injury to Plaintiff Plaintiffs or acted with a willful and conscious disregard to the rights of Plaintiff Plaintiffs in a despicable, vile, and contemptible manner.

290.178.   -Plaintiff's Plaintiffs' injuries were the direct and proximate result of the actions of [Defendants], which could have, through reasonable diligence, been prevented.

291.179.   -As the direct and proximate result of the Defendants' actions, Plaintiff has Plaintiffs have suffered and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.   Plaintiff has also incurred and will continue to incur, attorneys' fees, costs and expenses, including those authorized by 42 U.S.C. section 1988 to an extent and in an amount subject to proof at trial.

292.180.      As a result, Plaintiff is Plaintiffs are entitled to an award of punitive damages for the purpose of punishing Defendants and to deter them and others in the future.

**THIRD CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. 1986** ~~against ALL DEFENDANTS~~

**(Against All Defendants)**

~~293.~~181.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

~~294.~~182.  Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action ~~therefor~~therefore, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

183.    The following Defendants had the power by reasonbale diligence to prevent the wrongdoings or to stop the wrongdoing; yet, the wrongdoing was ignored, or they neglected and/or refused to prevent the wrongdoing:

184.    Defendant SUN, Judge of the Superior Court of Los Angeles County, Juvenile Dependency Court, acting under color of law, was to determine issues such as whether certain facts are true, whether the children should be removed from Plaintiff MJR, what types of services should be offered to the family and whether the child should be returned to the family and the community or placed permanently in another setting. Defendant SUN could have prevented the wrongfuldoing, as soon as, it was determined

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**

65

that the Court did not have subject matter jurisdiction; yet, Defendant SUN failed to dismiss and allowed the wrongdoing against Plaintiff to coitinue on.

185.    Defendant MARPET, Commissioner of the Superior Court of Los Angeles County, Juvenile Dependency Court, acting under color of law, is an attorney selected by the judges of the court to perform various judicial functions as prescribed by law and given powers to hear and make decisions concerning certain legal matters, including family and juvenile court cases… However, in Plaintiff MJR and her children's Juvenile Dependency Case, Defendant MARPET had a disregard for applying statutory law in the interest of the children when making a ruling, which contributed to the ongoing wrongdoing of Defendants.

186.    Defendant SANDATE, an employee of Defendant LAPD, acting under color of law, failed to acknowledge and enforce a Restraining Order to protect Plaintiff MJR and her children against children's father ("Kernell"), properly investigate, falsely imprisoned Plaintiff MJR, unlawfully detained Plaintiff MJR's children, falsified a report, and committed perjury on the stand, which resulted in Plaintiff MJR's children being removed from her home to present.

187.    Defendant CAGLE was the Director of the Los Angeles County Defendant DCFS, acting under color of law and at all times relevant to Plaintiff MJR and her children's Juvenile Dependency Case, Defendant CAGLE was a government employee for Defendant LA COUNTY, that had a duty to protect Plaintiffs and to ensure that Plaintiffs' constitutional rights were not violated.  Also, Plaintiff CAGLE was Defendant LA COUNTY's Foster Care System official, responsible for the proper operation of the Foster Care System and to ensure that the system operated in accordance with Federal and State laws, for which the federal government provides annual funding to operate the system.

188.    Defendant HATAMIAN, Plaintiff MJR's Court Appointed Attorney, by Defendant MARPET, acting under color of law, and represented Plaintiff MJR at all times relevant to the Juvenile Dependency Case involving Plaintiffs SB and PB.

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES

66

Defendant HATAMIAN suppressed evidence, denied Plaintiff MJR's right to be heard; moreover, denied Plaintiff MJR a fair trial.

189.     As a proximate result of Defendants' actions, Plaintiffs have suffered severe anguish, stress, anxiety and general damages.

190.     Plaintiffs allege that such severe emotional distress has included without limitations embarrassment, anger, chagrin, disappointment, shame, worry, nausea and other forms of mental and emotional anguish.

191.     As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered economic, psychological, emotional, and physical damages.

192.     Pursuant to California Civil Code §3294 "where is it proven by clear and convincing evidence that Defendants are guilty of oppression, fraud, or malice, Plaintiffs, in addition to the actual damages, may recover damages for the sake of example and by way of punishing Defendants."

193.     Defendants' conduct intentionally and recklessly caused extreme emotional distress to Plaintiffs and have been intentional, malicious and oppressive, thereby entitling Plaintiffs to recover punitive damages.

194.     Plaintiffs are obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

**FOURTH CAUSE OF ACTION FOR MONELL RELATED CLAIMS (LAW ENFORCEMENT EXCESSIVE FORCE/FALSE IMPRISONMENT/SOCIAL WORKER MISCONDUCT/PROSECUTORY MISCONDUCT)** ~~against ALL DEFENDANTS~~
**(Against All Defendants)**

~~295.~~195.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

~~296.~~196.   Monell claims are aimed at the government entity as the employer, supervisor and policymaker.  To successfully sue under the Monell doctrine and hold the

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES

67

city (or other government entity) liable for an officer's actions, the plaintiff must first show the officer violated a clearly established ~~constitutional right.~~Constitutional Right. Defendants denied Plaintiff MJR Due Process, under the fifth and fourteenth Amendments to the United States Constitution.

~~297.~~197.   The Monell decision allows plaintiffs a method to sue municipalities for unconstitutional policies and practices that led to an incident that harmed an individual or group. • Employees may be sued individually for misconduct.

~~298.~~198.   The agency failed to investigate and used the same old "recycled copy and ~~pasted~~paste "allegations which were unsubstantiated in an old case. They carried over old lies from a previous case to a recent case with ~~Symhony B~~Plaintiffs SB and ~~Preston B~~PB. At every hearing the prosecution ~~fails~~failed to present any evidence or present evidence that children are in danger. ~~They just show up for court late, and wink at the judge, while they grant them anything that they can dream up.~~

199.        Plaintiff MJR and her children became homeless due to financial hardship.

200.        On February 2016, Plaintiff MJR told her therapist; Defendant DCFS, ER Social Worker, Monica Rosenblum ("Rosenblum"), that she has been doing poorly in school and had wanted to drop her class.  Rosenblum falsely reported to Defendant DCFS that Plaintiff MJR had expressed or implied that she planned on harming her kids.

201.        On February 23, 2016, Plaintiff MJR was referred to Kedren Community Health Center.  On or about February 29, 2016, Michel H. Eisner, Deputy County Counsel, collectively with Co-Defendants filed a false Juvenile Dependency Petition against Plaintiff MJR and her children.

202.        On or about February 29, 2016, Defendant MARPET announced false statements to the public regarding Plaintiff MJR's criminal history, as means of preventing Plaintiff MJR from obtaining gainful employment. Additionally, Defendant DCFS prevented Plaintiff MJR from adequate visits with her children and never allowed "reunification services."

**~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES**
**68**

203.     On March 22, 2016, despite the many letters from Plaintiff MJR's Psychologist stating that she was fit to care for her children, Juvenile Dependency Court unlawfully found that Plaintiffs MR and HR were children described by section 300, subdivision (b)(l) without a valid cause. The sustained Section 300 Petition documented that Plaintiff MJR suffered from mental and emotional problems that rendered her incapable of providing regular care for Plaintiff MR and HR.

204.     On March 27, 2016, after Plaintiff MR informed her mother, Plaintiff MJR, that her Foster Parent spanked her, the police and Defendant DCFS's Social Worker stated that they found no evidence of abuse and returned Plaintiff MJR's children to that Foster Parent. However, the next month, April 06, 2016, Plaintiff MJR's children were placed with their maternal grandmother, Plaintiff JR.  Plaintiff MJR continued with therapy and despite the reports of Plaintiff MJR's compliance and good mental health, on September 20, 2017, Defendant DCFS recommended terminating family reunification services.

205.     Based on a misunderstanding, which escalated to a phsycial altercation with Plaintiff MJR and her grandmother, on November 15, 2017, Defendant DCFS filed an Ex-Parte Application pursuant to section 385 to modify Plaintiff MJR's visitations from unmonitored to monitored.  On February 13, 2018, Plaintiff MJR's family reunification services were terminated.  In May 2019, the Court ordered legal guardianship for Plaintiffs MR and HR with Plaintiff JR.

206.     2016 Plaintiff MJR began a relationship with Kernell, who eventually became very abusive; she was a victim of domestic violence.  Plaintiff MJR called the Police on several occasions and Kernell was never taken to jail.  Plaintiff MJR was working two (2) jobs, preparing to leave Kernell.  Kernell was suspecting that she was planning to leave him and he began accusing her of cheating and the abusive escalated. On September 19, 2018, during an argument, Kernell began hitting Plaintiff MJR with his baseball bat, stripped her naked and threw her outside, where neigbor came to her rescue. Kernell was finally arrested.

207.     On October 20, 2018, Plaintiff MJR had to call the police to get Kernell's adult daughter to leave the home after Kernell gave her the keys to enter Plaintiff MJR's home.  On October 26, 2018, Plaintiff MJR was granted a Restraining Order against Kernell and his adult daugther, as well as, sole physical custody of minor children, Plaintiffs SB and PB.  On December 23, 2018, Kernell and his daughter came back to Plaintiff MJR 's home, despite the Restraining Order, to abuse Plaintiff MJR forcing her to use a deadly weapon, acting in self-defense.  Kernell and his daughter called the police and Defendant SANDATE arrested Plaintiff MJR, the Domestic Violence victim, and ignored the fact the Kernell and his daugther violated their Restraining Order.  Defendant SANDATE also refused to take neigbors testimonies.

208.     On December 23, 2018, Defendant DCFS received a referral alleging that Plaintiffs SB and PB were victims of emotional abuse, due to a reported altercation between mother and father, falsely stating that mother attempted to attack father with a butcher knife and she was arrested.

209.     On January 2019, Defendant DCFS's Social Worker reported after an unannounced visit at Plaintiff MJR's home and found that Plaintiff MJR and her two minor children, Plaintiff SB and PB, were no longer in the home.  In an effort to protect Plaintiff MJR and her minor children from Kernell, Plaintiff MJR moved to North Carolina, her home state.

210.     On February 14, 2019, Defendant DCFS filed a Section 300 Petition on behalf of Plaintiff MJR's children, Plaintiffs SB and PB.  The Petition falsely alleged that the children "were at substantial risk of suffering serious physical harm based on the violent physical and verbal altercation between mother and father…"  Plaintiff MJR and children were safely living in North Carolina.

211.     On February 15, 2019, neither parent, Plaintiff MJR nor Kernell, appeared for the Detention Hearing due to never receiving a Notice.  Defendant DCFS did not exercise due diligence in attempting to locate Plaintiff MJR.  The Court made an order to

detain the children, Plaintiffs SB and PB, issued protective custody warrants for the children, and a no-bail arrest warrant for Plaintiff MJR.

212.      On July 31, 2019, Plaintiff MJR was in Los Angeles, California to address criminal charges pending against her; Plaintiff MJR was exonerated of all charges by an impartial jury who decided that Plaintiff MJR was acting in self-defense in her own home.  At the trial, Defendant SANDATE committed perjury during his testimony.

213.      After trial, Plaintiff MJR returned for her children at Kernell's sister's residence, Kernell had taken them, Plaintiff MJR went to Kernell residence to retreive her children, where Kernell forcibly locked her inside his bathroom.  Defendant MARPET sent law Enforcement Officer, Defendant SANDATE and Defendant DCFS's Social Workers to Kernell's home who refused to let them in without a warrant.  That evening, Defendant MARPET granted Defendant DCFS requests for an expedited removal order…, which was without probable cause and they both knew that Plaintiff MJR was a victim of domestic violence.  Defendant DCFS's Social Worker prepared a false report, stating that Plaintiff MJR and Kernell were actively concealing the children.  Plaintiff MJR had sole custody and she and her children lived in North Carolina, where they are safe against Kernell.  Plaintiff MJR did not pose any threat to her children based on actions taken in self-defense and charges dismissed.  Defendant DCFS's Social Workers detained the children and Defendant SANDATE arrested Plaintiff MJR pursuant to the no-bail arrest warrant.  As a result, Plaintiff MJR and her children never returned to North Carolina together again.

214.      On August 2, 2019, forty-eight (48) hours after the children were detained, the Detention Hearing was continued without reason; therefore, Defendant MARPET, after issuing a warrant to arrest Plaintiff MJR on a non-arrestable offense, held Plaintiff MJR in prison longer than the forty-eight (48) hour, depriving her of substantive and procedural Due Process Rights.

215.      On August 5, 2019, Defendant MARPET exacted cruel and unusual punishment upon Plaintiff MJR, when he refused to allow her to return to the location

that contained her clothing and personal property.  Defendant MARPET released Plaintiff MJR from jail, where she had to wear a black paper suit as clothing.  As a result of this suit, Plaintiff MJR faced public shame and humiliation and was regarded as a criminal although she never committed any crime.

216.    On August 23, 2019, Defendant DCFS filed an Amended Section 300 Petition on behalf of the children. The Amended Petition contained false allegations against Plaintiff MJR.  On December 17, 2019, the Court, along with its Officers of the Court, conspired together to prevent the Court from receiving evidence in Plaintiff MJR's favor.  Defendant SUN denied Plaintiff MJR's request to proceed pro se and refused to hear her case until Plaintiff MJR agreed to Court-Appointed Attorney, Defendant HATAMIAN, to represent her.  Defendant SUN suppressed Plaintiff MJR's right to present evidence and denied Plaintiff MJR's her right to have a fair and unbiased hearing; Plaintiff MJR was not allowed witnesses to present before the Court to testify on her behalf. Moreover, Defendant SUN continued the case beyond the statutory limits, which was to the convenience of the opposing side and to the detriment of Plaintiff MJR and her children.

217.    On February 15, 2020, Defendant DCFS's Social Worker Investigator, Allen, provided a report with knowingly false statements and intentional omissions of exculpatory evidence in order to obtain a court judgment against Plaintiff MJR. Specifically, Defendant DCFS's Social Worker falsely asserted that in December 2018, Plaintiff MJR struck father's back and chased him while holding a butcher knife and was arrested for assault with a deadly weapon…

218.    Defendants maliciously omitted to inform the Court that Plaintiff MJR had already obtained a Retraining Order against Kernell at the time of the incident and that Plaintiff MJR has been relocated to North Carolina, far away from the aggressor, to protect her and her children.

~FIRST~SECOND **AMENDED COMPLAINT FOR DAMAGES**

**72**

219. Defendant CAGLE, signed the aforementioned reports that did not contain any actual child abuse or neglect allegations to support a Petition under the Welfare and Institutions Code of California.

220. Defendant MARPET held a hearing for a continuance on his own motion, January 2021, more than 18 months past the children's detention on July 31, 2019.

221. Defendant MATAMIAN did not present exculpatory evidence, he did not cross-examine, he just merely denied Plaintiff MJR a fair trial and the Court agreed with his decisions. As a result, the Court declared the children Dependents of the Court and made an order to remove them from both parents' custody. The Court ordered "no Family Reunification Services for Plaintiff MJR.

222. At the same hearing, although Plaintiff MJR was exonerated from all charges due to self-defense, Defendant DCFS's Social Workers committed perjury in open Court and announced that Plaintiff MJR had been convicted of lesser charges.

223. Also, Defendant MARPET assisted Defendant DCFS's Social Workers make their arguments by suggesting they re-word phrases in such a way as to make it appear as if Plaintiff MJR was physically violent.

224. At each hearing and trial, Plaintiff MJR requested in open Court that her children be placed with their grandmother, Plaintiff JR and siblings, because it would be in the best interest of the children to be with family and her request was denied.

225. On February 27, 2020, Plaintiff MJR filed a Notice of Intent to file a Petition for Writ, challenging the February 20, 2020, Court Orders.

226. On June 05, 2020, Niti Gupta, assistant of Defendant HATAMIAN, filed a letter to the Appeals Court stating that Plaintiff MJR could find no reason to file an appeal.

227. On June 5, 2020, Plaintiff MJR's Counsel, Defendant HATAMIAN, advised the Court that he was unable to file a Petition for Writ on behalf of Plaintiff MJR.

228. On July 23, 2020, Plaintiff MJR, as an in pro per litigant, filed a Petition for Extraordinary Writ Relief, pursuant to 8.452 in the Court of Appeal, seeking to challenge

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

73

the juvenile court's jurisdiction and disposition orders at February 20, 2020, adjudication hearing.  In part of her brief, Plaintiff MJR. argues that there was insufficient evidence to sustain the domestic violence and mental health allegations pursuant to WIC § 300, subdivision (a) and (b).  Plaintiff MJR pointed out that Defendant DCFS's Social Workers did not testify and the statements in the reports were hearsay.

299.     On October 21, 2020, the Court of Appeal granted Plaintiff MJR's Petition for Extraordinary Relief and concluded that the Court violated Plaintiff MJR's right to Due Process by denying her the opportunity to cross-examine the Dependency Investigator and Social Workers. The Court guaranteed order that "A peremptory writ of mandate shall issue directing the juvenile court to reverse its jurisdictional findings sustaining counts b-1 and b-2, and dispositional orders as to Plaintiff MJR only, entered on February 20, 2020. In addition, the court shall vacate any subsequent order terminating parental rights. On remand, the court shall conduct a new jurisdiction and disposition hearing as to Plaintiff MJR consistent with the views expressed in this opinion." *Melody R., v. Super. Ct.* The court relies on old rehearsed hearsay evidence and lies from individuals whose sole purpose is to keep mother stuck in a cycle of domestic violence.

229.     In both cases it has been proven that mother was attacked and defended her but the department took the Side of the perpetuators of the violence because of their malice toward mother for standing up for herself and not allowing the abuse to continue. CA2/3.

230.     On March 11, 2021, Defendant CAGLE and Defendant DCFS's Social Workers, Marcal Maye-Henderson and Aliana Darted, submitted a report with the same fabricated evidence against Plaintiff MJR and ignored the order made by the Court of Appeal on October 21, 2020.

300.231.  It is apparent that many of the officials of the court are covert abusers and whenever they see a mother suffering from domestic violence they punish the mother for

speaking out against it by taking her children. They are trying to silence abuse victims with their Strategic Lawsuits against Public Participation.

**FIFTH CAUSE OF ACTION FOR MALICIOUS PROSECUTION/
ABUSE OF PROCESS** ~~against ALL DEFENDANTS~~
**(Against All Defendants)**

~~301.~~ 232.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

~~302.      On or about Feb. 29, 2016, defendants made comments about race and socioeconomic status  that "black women are supposed to be strong."Defendants stated that "plaintiffs should have gone to school and got married before having kids".~~

~~303.      Carvin Hall denied children financial support. Plaintiff's oldest daughter was physically abused in foster care and Carvin Hall attempted to suppress this information Sonia Valiente misrepresented who she was and covered up child abuse that was inflicted by the County, Social Workers and by Foster parents as well Mary Theresa Meza and Sonia Valientes.~~

~~304.      The Social Workers from DCFS and the County of Los Angeles falsified their Detention report and Jurisdictional Reports and made unreasonable searched in plaintiff's home, without a warrant, and without justified cause. Sonia also embellished her reports, left out pertinent information regarding the children's father in order to favor him, and lied to plaintiff about how to get my children back by recommending a specific mental health facility to go to. She did not attempt to reunify plaintiff with the children as she had promised.~~

~~305.      She conspired with the child's father and encouraged him to lie about plaintiff, by telling him he could get custody and be relieved of child support obligation. Defendants further covered up evidence that the children was abused while in foster care. 20. On or about 02/29/16, the Superior Court of California for~~

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**

75

the County of Los Angeles, Juvenile Court ORDERED that the DCFS be AUTHORIZED TO DETAIN PLAINTIFF'S CHILDREN without a valid cause. The Governor of California and owes a duty to Plaintiff to ascertain that the state does not MAKE NOR ENFORCE ANY LAW THAT ABRIDGES THE RIGHTS OF THE CITIZENS. However, the Governor did endorse, contribute, and enforce the statutes within Welfare & Institutions Code §§ 300-378, which involve "one-sided" and unconstitutional Juvenile Dependency Laws that allow Social Workers to take a parents children without a warrant, that allow warrants to be issued without probable cause, that allow the quartering of Soldiers or Social Workers in the homes of families, and allow the violation of the Due Process Right of a Parent to Bring up a child without governmental interference.

233.    On or about Feb. 29, 2016, Defendants made false statements to the public in regards to plaintiff's criminal history, as means in preventing plaintiff from obtaining gainful employment.  Additionally, Defendants prevented Plaintiff from adequate visits with her children (PC § 278.5) and never allowed "reunification services" as normally provided under Welfare & Institutions Code § 300 et. seq. Defendants filed frivolous claims againt Plaintiff MJR, not based on merits of the claim, rather some ulterior purpose and Plaintiff MJR suffered damages, as a result.

234.    On February 2016, Melody told her therapist; Defendant DCFS, ER Social Worker, Monica Rosenblum ("Rosenblum"), that she has been doing poorly in school and had wanted to drop her class.  Rosenblum falsely reported to Defendant DCFS that Plaintiff MJR had expressed or implied that she planned on harming her kids.

235.    On February 23, 2016, Plaintiff MJR was referred to Kedren Community Health Center.  On or about February 29, 2016, Michel H. Eisner, Deputy County Counsel, collectively with Co-Defendants filed a false Juvenile Dependency Petition against Plaintiff MJR and her children.

236.    On March 22, 2016, despite the many letters from Plaintiff MJR's Psychologist stating that she was fit to care for her children, Juvenile Dependency Court

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

76

unlawfully found that Plaintiffs MR and HR were children described by section 300,
subdivision (b)(l) without a valid cause. The sustained section 300 Petition documented
that Plaintiff MJR suffered from mental and emotional problems that rendered her
incapable of providing regular care for Plaintiff MR and HR.

237.    On November 15, 2017, Defendant DCFS filed an Ex-Parte Application
pursuant to section 385 to modify Plaintiff MJR's visitations from unmonitored to
monitored.

238.    On December 23, 2018, Defendant DCFS received a referral alleging that
Plaintiffs SB and PB were victims of emotional abuse, due to a reported altercation
between mother and father, falsely stating that mother attempted to attack father with a
butcher knife and she was arrested.

239.    On February 14, 2019, Defendant DCFS filed a Section 300 Petition on
behalf of Plaintiff MJR's children, Plaintiffs SB and PB.  The Petition falsely alleged that
the children "were at substantial risk of suffering serious physical harm based on the
violent physical and verbal altercation between mother and father…"  Plaintiff MJR and
children were safely living in North Carolina.

240.    On February 15, 2019, neither parent, Plaintiff MJR nor Kernell, appeared
for the Detention Hearing due to never receiving a Notice.  Defendant DCFS did not
exercise due diligence in attempting to locate Plaintiff MJR.  The Court made an order to
detain the children, Plaintiffs SB and PB, issued protective custody warrants for the
children, and a no-bail arrest warrant for Plaintiff MJR and arrested Plaintiff MJR and
detained the children on July 31, 2019.

241.    Defendant DCFS's Social Worker prepared a false report, stating that
Plaintiff MJR and Kernell were actively concealing the children.  Plaintiff MJR had sole
custody and she and her children lived in North Carolina, where they are safe against
Kernell.  As a result, Plaintiff MJR and her children never returned to North Carolina
together again.

242.     On August 23, 2019, Defendant DCFS filed an Amended Section 300 Petition on behalf of the children. The Amended Petition contained false allegations against Plaintiff MJR.

243.     On February 15, 2020, Defendant DCFS's Social Worker Investigator, Allen, provided a report with knowingly false statements and intentional omissions of exculpatory evidence in order to obtain a court judgment against Plaintiff MJR. Specifically, Defendant DCFS's Social Worker falsely asserted that in December 2018, Plaintiff MJR struck father's back and chased him while holding a butcher knife and was arrested for assault with a deadly weapon…

244.     Defendant MATAMIAN did not present exculpatory evidence, he did not cross-examine, he just merely denied Plaintiff MJR a fair trial and the Court agreed with his decisions.  As a result, the Court declared the children Dependents of the Court and made an order to remove them from both parents' custody.

245.     On March 11, 2021, Defendant CAGLE and Defendant DCFS's Social Workers, Marcal Maye-Henderson and Aliana Darted, submitted a report with the same fabricated evidence against Plaintiff MJR and ignored the order made by the Court of Appeal on October 21, 2020.

306.     On or about Feb. 29, 2016, Michel H. Eisner, the other defendants filed a False Juvenile Dependency Petition against Plaintiff and her children.

307.     The restrained, CHILDREN and PLAINTIFF were denied due process and were denied the right to present evidence on their behalf.

308.     The Los Angeles County DCFS's basis for their petition for Juvenile Dependency against the restrained, CHILDREN, was based on an allegation that the parents were not good parents.

309.246.   Defendants participated with all other defendantsDefendants and acted in concert, and denied plaintiff due process in the court, and Denied plaintiffPlaintiff MJR her Due Process, and denied Plaintiff MJR her right to bring up his childher children without governmental interference.  All of the defendants caused the results of the

**FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES**

**78**

Formatted: Indent: Left:  0", First line:  0.25"

Formatted: Font: 13 pt

constitutional rights violations Defendants violated Plaintiffs Constitutional Rights and each participated in the acts, while acting under color of law.

247.    Plaintiffs hereby allege that EACH DEFENDANT "CAUSED" and "PARTICIPATED IN" the acts or omissions regarding the facts herein alleged either by "direct conduct, neglect or conspiracy". (See Monell v. Department of Soc. Servs. (1978) 436 US 658, 56 L Ed 2d 611, 98 S Ct 2018; Pmerantz v County of Los Angeles (9th Cir 1982) 674 F2d 1288, 1291.  TO ESTABLISH PERSONAL LIABILITY The above-listed Defendants have a policy, custom, and pattern of practice, and act under color of law in their capacities as employees for local, county and state public entities, and on a daily basis falsify reports, engage in acts of Abuse of Process, defraud the general public by filing false reports in the Juvenile Dependency Court to justify excessive expenditures of taxpayers' money and fail to notify the courts as to the truth of matters and circumstances as their informed. Defendants conspired to deprive Plaintiff MJR of her Constitutional Right to bring up her children without governmental interference.  Defendants and each of them, knowingly and willfully conspired, "acted in concert" and agreed among themselves to harm Plaintiff MJR by depriving her of the privileges and rights within the Constitution of the United States of America, because she belongs to a protected class and because of her religious beliefs and creed.

310.248.  To establish personal liability, it is enough to show that an official, acting under color of state law, caused deprivation of federal right. (See *Kentucky v. Graham* (1985) 473 US 159, 165, 87 L Ed 2d 114, 121, 105 S Ct 3099. Local governments, municipal corporations, and their agents acting under color of "state" law (which may encompass implementation or enforcement of a municipal, local law, regulation, POLICY policy, or custom, ARE "PERSONS are "persons" subject to liability under 42 USC § 1983. *See Monell v. Department of Soc. Servs.* (1978) 436 US 658, 56 L Ed 2d 611, 98 S Ct 2018. California COUNTIES counties have been treated as municipalities for § 1983 purposes.  *See Moor v. County of Alameda* (1973) 411 US 693, 36 L Ed 2d 596, 93 S Ct 1785. Also, *see Hernandez v. County of San Bernardino* (2004) 117 CA4th 1055,

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

**79**

12 CR3d 452 (erroneous wage garnishment against plaintiff by county's family support division may render county liable under § 1983 if family support division is determined to be the policymaker for the county.

249.    The aforesaid acts that defendants committed, as alleged in the foregoing paragraphs were done to justify the inheritance of tax dollars, without any true basis, by fraud. In addition to the above-stated facts, employees employed by the County of Los Angeles, illegally ran criminal background checks on all plaintiffs and disseminated the findings in the criminal history reports to individuals "outside of the juvenile courts". [See California Penal Code § 13303] Any person authorized by law to receive a record or information obtained from a record who knowingly furnishes the record or information to a person who is not authorized by law to receive the record or information is guilty of a misdemeanor. Penal Code § 13304. Any person, except those specifically referred to in ~~Section1070~~Section 1070 of the Evidence Code, who, knowing he is not authorized by law to receive a record or information obtained from a record, knowingly buys, receives, or possesses the record or information is guilty of a misdemeanor. (A criminal record report is defined in Penal Code § 13300.)]

250.    These ~~defendants~~Defendants have a custom, policy and normal practice of obtaining criminal records to ~~all~~ family members who are a party or family member of a minor child involved in a ~~juvenile dependency case~~Juvenile Dependency Case and thereafter disseminate the record and its contents to "third parties" who are not entitled to receive such information. In fact, any record of criminal conviction to a potential caregiver ~~to~~of a child who is a party to a ~~juvenile dependency case~~Juvenile Dependency Case, should not even be subjected to having "irrelevant" convictions reported to any person, including the ~~court~~Court, that would not bar that person from being a good candidate as a caregiver for the child. ~~Worst of all, Defendants and each of them Abused Process, because they falsified information to the Superior Court by stating that Plaintiff was~~

---

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**

**80**

251.     As a proximate result of the actions of all Defendants have damaged all Plaintiffs in this action and have been damaged generally by loss of property, time, money, costs incurred, loss of liberty and damage to their emotional health.

252.     At all times mentioned herein, all Defendants acted willfully with the wrongful intention of injuring and from an improper or evil motive amounting to malice in that Defendants willfully and intentionally conspired to defraud and injure Plaintiffs.

### SIXTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (Against All Defendants)

253.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

254.     Criminal."The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct....

255.     Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.  It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware.

256.     On or about Feb. 29, 2016, Defendants made comments about race and socioeconomic status- that "black women are supposed to be strong "Defendants stated that "Plaintiffs should have gone to school and got married before having kids".

257.     Defendant DCFS's Social Workers falsified their Detention Reports and Jurisdictional Reports, left out pertinent information regarding Kernell in order to reflect him in a positive light, detained Plaintiff MJR and her children without good cause, lied to Plaintiff MJR and recommend therapy to get her children back, never attempted to

reunify Plaintiff MJR and her children, suppressed material evidence including evidence of physical abused against Plaintiff MR, and made unreasonable searches in Plaintiff MJR's home without a warrant and without justified cause.  Defendant DCFS's Social Workers never attempted to reunify Plaintiff MJR with her children as they promised.

258.     Commencing February 29, 2016, the Superior Court of California for Defendant LA COUNTY, Juvenile Dependency Court ordered that Defendant DCFS be authorized to detain Plaintiff MJR's children without a valid cause.  The aforementioned government agencies owed a duty of care to Plaintiff MJR to ensure that Defendant State of California does not make nor enforce any laws that abridges the rights of the citizens.

259.     During the same time, Defendants made false statements to the public in regards to plaintiff'sPlaintiff MJR's criminal history, as means in preventing plaintiffPlaintiff MJR from obtaining gainful employment.  Additionally, Defendants prevented Plaintiff MJR adequate visits with her children (PC § 278.5) and never allowed "reunification services" as normally provided under Welfare & Institutions Code § 300 et. seq.  Defendants filed a false Juvenile Dependency Petition against Plaintiff MJR and her children, which resulted in them being denied their right to present evidence on their behalf; denied their Due Process.

260.     Defendant DCFS's basis for its Juvenile Dependency Petition against Plaintiff MJR and her children, was based on an allegation that the parents were not good parents.

261.     Defendants participated with all other Defendants and acted in concert, and denied Plaintiff MJR her Due Process, and denied Plaintiff MJR her right to bring up her children without governmental interference.  All of the Defendants violated Plaintiffs Constitutional Rights and each participated in the acts, while acting under color of law.

262.     These Defendants have a custom, policy and normal practice of obtaining criminal records to family members who are a party or family member of a minor child involved in a Juvenile Dependency Case and thereafter disseminate the record and its contents to "third parties" who are not entitled to receive such information. In fact, any

**FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES**

**82**

record of criminal conviction to a potential caregiver of a child who is a party to a Juvenile Dependency Case, should not even be subjected to having "irrelevant" convictions reported to any person, including the Court, that would not bar that person from being a good candidate as a caregiver for the child.

311.263.   Worst of all, Defendants and each of them Abused Process, because they falsified information to the Superior Court by stating that Plaintiff MJR was a criminal. Defendants made false statements to the public in regards to Plaintiff MJR's criminal history, as means in preventing Plaintiff MJR from obtaining gainful employment. Additionally, Defendants prevented Plaintiff from adequate visits with her child (PC § 278.5) and never allowed "reunification services" as normally provided under Welfare & Institutions Code § 300 et. seq. On or about Feb. 29, 2016, Michel H. Eisner, the other defendants filed a False Juvenile Dependency Petition against Plaintiff and her children.

264.       On or about Feb. 29, 2016, Michel H. This useEisner, Deputy County Counsel, collective with Co-Defendants filed a false Juvenile Dependency Petition against Plaintiff MJR and her children.

312.    The conduct of the processDefendants and each of them as alleged herein was not authorized in the regular course and was not the outrageous, reckless, and intended purpose for juvenile dependency statutes when enacted into legislature.

313.      The ulterior purpose and motivation of defendants in so misusing the process in the above-described manner was to obtain the following collateral advantage over the defendants so they can help the local public entities build value in their proposals to the state and federal government in their requests for additional funds at the end of next year's, budget assessment.

314.      As a proximate result of the actions of all defendants, all plaintiffs in this action have been damaged generally by loss of time, money, costs incurred, loss of liberty and damage to their emotional health.

315.      At all times mentioned herein, all defendants acted willfully with the wrongful intention of injuring cross-complaints and from an improper or evil

motive amounting to malice in that defendants willfully and intentionally conspired to defraud and injure plaintiffs.

did cause SIXTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS Against ALL DEFENDANTS

316.265.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth hereinsevere emotional distress.

317.266.   On or about the above-mentioned dates, defendantsDefendants, and each of them, did each of their acts to intentionally inflict emotional distress upon plaintiffPlaintiffs, which resulted in "OUTRAGEOUS CONDUCT".outrageous conduct."  Wherefore, PlaintiffPlaintiffs did or does seek medical attention to sooth the anguish and mental suffering caused by defendantsDefendants.

318.267.   As a proximate result of defendants'Defendants' actions, plaintiff hasPlaintiffs have suffered severe anguish, stress, anxiety and general damages in an amount according to proof.

319.        WHEREFORE, plaintiffs pray for judgment against defendants regarding the all causes of action in his complaint for damages in an amount according to proof.

268.        Plaintiffs allege that such severe emotional distress has included without limitations embarrassment, anger, chagrin, disappointment, shame, worry, nausea and other forms of mental and emotional anguish.

269.        As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered economic, psychological, emotional, and physical damages.

270.        Pursuant to California Civil Code §3294 "where is it proven by clear and convincing evidence that Defendants are guilty of oppression, fraud, or malice, Plaintiffs,

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

84

in addition to the actual damages, may recover damages for the sake of example and by way of punishing Defendants."

271.    Defendants' conduct intentionally and recklessly caused extreme emotional distress to Plaintiffs and have been intentional, malicious and oppressive, thereby entitling Plaintiffs to recover punitive damages.

272.    Plaintiffs are obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

**SEVENTH CAUSE OF ACTION FOR** ~~SLANDER (Defamation)~~ **DEFAMATION OF CHARACTER (Slander and Libel)**
**(Against All Defendants)**
~~ALL DEFENDANTS~~

~~320.~~273.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

~~321.    On or about Feb. 29, 2016, Michel Eisner stated that plaintiff was a bad parent to many people. On or about Feb. 29, 2016 Monica Rosenblum falsely stated to DCFS that plaintiff had expressed or implied that she wanted to kill herself.~~

~~322.    On or about Feb. 29, 2016, Philip Browning stated that plaintiff was a bad parent to many people.~~

~~323.    On or about Feb. 29, 2016, Mary T. Meza stated that plaintiff was a bad parent to many people.~~

~~324.    On or about Feb. 29, 2016, DCFS stated that plaintiff was a bad parent to many people.~~

~~325.    On or about Feb. 29, 2016, County of Los Angeles stated that plaintiff was a bad parent to many people.~~

~~326.    On or about Feb. 29, 2016, Superior Court of California for the County of Los Angeles stated that plaintiff was a bad parent to many people.~~

---

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**
85

327.    On or about Feb. 29, 2016, Carvin Hall stated that plaintiff was a bad parent to many people.

328.    On or about Feb. 29, 2016, Theresa T. Meza stated that plaintiff was a bad parent to many people.

329.    On or about Feb. 29, 2016, Sonia Valiente stated that plaintiff was a bad parent to many people.

330.    On or about Feb. 29, 2016, PHILIP L. BROWNING; COUNTY OF LOS ANGELES; Los Angeles Department of Children and Family Services; Superior Court of California for the County of Los Angeles; MARY THERESA MEZA; CARVIN HALL; SONIA VALIENTE knowingly and willfully made false statements orally and in writing to the Superior Court of California for the County and to friends of plaintiff with intent to defame, humiliate and damage the reputation of  plaintiffs. These statements included, but are not limited to "The parents of the minor children in the underlying juvenile dependency case committed acts constituting neglect and abuse". Defendants further falsely stated that "PLAINTIFF is not a good PARENT and is a danger to CHILDREN". None of these statements were true and defendants knew them to be false when they made them. Whereas plaintiff suffered damages by these false statements by defendants, by the damage to her health, damage to her emotional state, loss of reputation, loss of her job, loss of income. Additionally, plaintiff suffered pecuniary losses including, but not limited to the companionship, comfort, affection, society, solace and moral support of her friends, family and son, based on the false allegations that the defendants intentionally disseminated to the general public.

331.    The false statements made by defendants were not protected rights of speech because they were false facts concerning Juvenile Dependency Issues.

332.    Juvenile Dependency Issues concerning a child are not a public issue, and are confidential by law. Therefore defendants are precluded from any defense

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

**86**

1   under a Anti-Slapp Motion.

2

3       274.      The elements of a California Defamation case:  An intentional publication

4   of a statement of fact; that is false; that is unprivileged; that has a natural tendency to

5   injure or causes "special damage;" and, the defendant's fault in publishing the statement

6   amounted to at least negligence.

7       275.      On December 12, 2021, Defendant CAGLE and Defendant DCFS's Social

8   Workers Regina Minor and Darryllisha Burch-Parker continued with malicious and

9   fraudulent intent, their practice of fabricating evidence and omitting exculpatory evidence

10  in their reports.  In addition to the previous false and inaccurate allegations against

11  Plaintiff MJR, Defendant DCFS's Social Worker reports that Clark stated that, when

12  Plaintiff MJR calls the children, Plaintiff SB's behavior noticeably changes and the calls

13  cause "more harm, then good." However, Ms. Clark, is ready to testify that she never

14  made such a statement.

15      276.      December 17, 2021, Defendant DCFS's Social Workers wrote

16  Dehumanizing, embarrassing reports about Plaintiff MJR, which they knew were untrue

17  and phrased it in a way to cast Plaintiff MJR in a false light.  As a result Plaintiff MJR

18  has suffered and continues to suffer emotional harm. One of the most hurtful things they

19  continued to say is that Plaintiff MJR is depressed, anxious, delusional among other

20  things.  The legal abuse that Plaintiff MJR has been put through has caused her to

21  experience emotional harm; yet, they are making it seem like she has a mental disease

22  that is incurable and putting forth ideas that she may harm her children as a result.

23      277.      The Court worked together with Defendants to deliberately and

24  intentionally prevent without exculpatory evidence from ever making it into the Court

25  Record.  There is evidence that Plaintiff MJR has been evaluated by several mental health

26  professionals, including going to therapy and Defendant DCFS's professional of choice.

27  These doctors and nurses provided reports that Plaintiff MJR was completely sane and fit

28

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

87

to care for her children, but Defendants collectively kept these documents from making it into the Court Record.

**EIGHTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY** ~~against ALL DEFENDANTS~~
**(Against All Defendants)**

~~333.~~278.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

~~334.~~279.   Breach of Fiduciary Duty Law and Legal Definition. A fiduciary duty is an obligation to act in the best interest of another party. ... A person acting in a fiduciary capacity is held to a high standard of honesty and full disclosure in regard to the client and must not obtain a personal benefit at the expense of the client ...

~~335.~~280.   A fiduciary duty is the highest standard of care. The person who has a fiduciary duty is called the fiduciary, and the person to whom he owes the duty, is typically referred to as the principal or the beneficiary.

~~336.~~281.   To state a cause of action for a breach of fiduciary duty, a plaintiff must allege (1) the existence of a fiduciary duty relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.

~~4 Elements of a Breach of Fiduciary Duty Claim; The defendant was acting as a fiduciary of the plaintiff; The defendant breached a fiduciary duty to the plaintiff; The plaintiff suffered damages as a result of the breach; and the defendant's breach of fiduciary duty caused the plaintiff's damages.~~

~~337.~~282.   "A fiduciary relationship is ' " 'any relation existing between parties to ~~a transaction~~a transaction wherein one of the parties is in duty bound to act with the utmost~~good~~ good faith for the benefit of the other party. Such a relation ordinarily ~~arises where~~arises where a confidence is reposed by one person in the integrity of another, and in~~such~~ such a relation the party in whom the confidence is reposed, if he voluntarily~~accepts~~ accepts or assumes to accept the confidence, can take no advantage from his ~~acts relating~~acts relating to the interest of the other party without the latter's knowledge

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**
**88**

orconsent. . . .' " ' " (*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29

[130Cal.Rptr.2d 860], internal citations omitted.)• "Whether a fiduciary duty exists is

generally a question of law. Whether ~~thedefendant~~the defendant breached that duty

towards the plaintiff is a question of fact." (*Marzecv. Public Employees' Retirement*

*System* (2015) 236 Cal.App.4th 889, 915 [187Cal.Rptr.3d 452], internal citation omitted.)

    283.    The following Defendants had a special relationship with Plaintiff MJR and

her children to protect them and to ensure that Plaintiffs' constitutional rights were not

violated.  Plaintiff MJR and her children should have been able to trust them with the

utmostgood faith for the benefit and interest of she and her children:

    284.    Defendant SUN, Judge of the Superior Court of Los Angeles County,

Juvenile Dependency Court, acting under color of law, was to determine issues such as

whether certain facts are true, whether the children should be removed from Plaintiff

MJR, what types of services should be offered to the family and whether the child should

be returned to the family and the community or placed permanently in another setting.

Defendant SUN could have prevented the wrongfuldoing, as soon as, it was determined

that the Court did not have subject matter jurisdiction; yet, Defendant SUN failed to

dismiss and allowed the wrongdoing against Plaintiff to cointinue on.

    285.    Defendant MARPET, Commissioner of the Superior Court of Los Angeles

County, Juvenile Dependency Court, acting under color of law, is an attorney selected by

the judges of the court to perform various judicial functions as prescribed by law and

given powers to hear and make decisions concerning certain legal matters, including

family and juvenile court cases… However, in Plaintiff MJR and her children's Juvenile

Dependency Case, Defendant MARPET had a disregard for applying statutory law in the

interest of the children when making a ruling, which contributed to the ongoing

wrongdoing of Defendants.

    286.    Defendant SANDATE, an employee of Defendant LAPD, acting under

color of law, failed to acknowledge and enforce a Restraining Order to protect Plaintiff

MJR and her children against children's father ("Kernell"), properly investigate, falsely

---

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**

89

imprisoned Plaintiff MJR, unlawfully detained Plaintiff MJR's children, falsified a report, and committed perjury on the stand, which resulted in Plaintiff MJR's children being removed from her home to present.

287.    Defendant CAGLE was the Director of the Los Angeles County Defendant DCFS, acting under color of law and at all times relevant to Plaintiff MJR and her children's Juvenile Dependency Case, Defendant CAGLE was a government employee for Defendant LA COUNTY, that had a duty to protect Plaintiffs and to ensure that Plaintiffs' constitutional rights were not violated.  Also, Plaintiff CAGLE was Defendant LA COUNTY's Foster Care System official, responsible for the proper operation of the Foster Care System and to ensure that the system operated in accordance with Federal and State laws, for which the federal government provides annual funding to operate the system.

288.    Defendant HATAMIAN, Plaintiff MJR's Court Appointed Attorney, by Defendant MARPET, acting under color of law, and represented Plaintiff MJR at all times relevant to the Juvenile Dependency Case involving Plaintiffs SB and PB. Defendant HATAMIAN suppressed evidence, denied Plaintiff MJR's right to be heard; moreover, denied Plaintiff MJR a fair trial.

338.289.  Three Potential Consequences of Breach of Fiduciary Duty:  Compensatory Damages. If an alleged breach of fiduciary duties leads to litigation then one of the most common outcomes is for the victim to receive compensatory damages. ...

290.    Punitive Damages. ... Professional Consequences.  Defendants' acts were intentional, malicious and oppressive, thereby entitling Plaintiffs to recover punitive damages.

339.    DEFENDANTS' acts were intentional, malicious and oppressive, thereby entitling Plaintiffs to recover punitive damages.

340.291.  As a direct and proximate result of the aforementioned conduct of DEFENDANTS, PLAINTIFFSDefendants, Plaintiffs have suffered economical, psychological, emotional, and physical damages.

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

90

341. 292. As a further direct and proximate result of the aforementioned conduct of DEFENDANTS, PLAINTIFFSDefendants, Plaintiffs are obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by PLAINTIFFSPlaintiffs.

**NINTH CAUSE OF ACTION FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING against ALL DEFENDANTS**

342.1. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

343. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

344. In order to sufficiently plead a bad-faith cause of action generally, PLAINTIFFS must plead that: ELEMENT 1: Valid Contract; An action for breach of the implied covenant of good faith and fair dealing requires an underlying agreement of some sort (contract, letter of intent, preliminary agreement to use best efforts to agree, etc.). (Racine v. Laramie, Ltd. v. Department of Parks & Recreation (1992) 11 Cal.App.4th 1026.) ; ELEMENT 2: Duty of Good Faith and Fair Dealing; The covenant imposes on each party to the contract the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, and also the duty to do everything that the contract presupposes that each party will do to accomplish its purpose. (Lueras v. BAC Home Loans Servicing, LP (2013) 221 Cal.App.4th 49.); ELEMENT 3: Breach of Implied Covenant; A party to a contract breaches the implied covenant of good faith and fair dealing by interfering with or failing to cooperate with the plaintiff in the performance of the contract. (L. Johnson, Inc. v. America West Airlines, Inc. (2003) Cal.App.Unpub. LEXIS 11455 (citing Sutherland v. Barclays American/Mortgage *Corp.* (1997) 53 Cal.App.4th

**FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES**
**91**

299).); and ELEMENT 4: Causation and Damage; The breaching party is liable
for all damages proximately resulting from the conduct. (PPG Industries, Inc. v.
Transamerica Ins. Co. (1999) 20 Cal.4th 310.).

345.   REMEDIES:  Compensatory Damages:
Damages for breach of implied covenant of good faith and fair dealing are limited
to damages which might reasonably be foreseen by the parties and exclude
punitive damages, pain and suffering and/or medical damages. (Quigley v. Pet
(1984) 162 Cal.App.3d 877.)

**TENTH CAUSE OF ACTION FOR LEGAL MALPRACTICE against ALL**
**DEFENDANTS**

**(Against All Defendants)**

346.293.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as
though fully set herein.

347.294.   To prove legal malpractice you must establish the following four elements:
(1) duty, (2) breach, (3) causation, and (4) harm. These are the basic elements for most
torts in California, as demonstrated herein.

348.   Mel Hatamian breached a fiduciary owed to mother Melody Rodgers which
obliged her to advocate for mother's interest. Mel Hatamian actively worked
against mother because she is part of the conspiracy to deprive mother a 1 nd
children and their right to be together.

295.   Mel Hatamian's role was to throw the case by not providing effective legal
counsel by way of legal research. Duty:  Defendant CLC, acting under color of law, bears
responsibility, in whole or in part, for the acts complained of in this Complaint, provides
legal representation for children and youth under the jurisdiction of the dependency court.
"Every staff member at CLC contributes to infusing every proceeding and decision that's
made with the premise that kids should be with their parents whenever possible."
Defendant CLC owed Plaintiffs a duty to examine the matter and uncover the truth;  yet,

**FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES**
**92**

it stuck its head in the sand while Plaintiff MJR children were being removed without probable cause and Plaintiff MJR was victimized; denied her right to be heard and denied her right to a fair trial.

296.    Defendants had a duty to protect Plaintiffs and to ensure that Plaintiffs' constitutional rights were not violated.

297.    Defendant HATAMIAN, Plaintiff MJR's Court Appointed Attorney, by Defendant MARPET, acting under color of law, and represented Plaintiff MJR at all times relevant to the Juvenile Dependency Case involving Plaintiffs SB and PB. Defendant HATAMIAN suppressed evidence, denied Plaintiff MJR's right to be heard; moreover, denied Plaintiff MJR a fair trial.

298.    Breach of Duty:  Defendants CLC and HATAMIAN breached it duty to Plaintiff MJR and children, when it conspired with Co-Defendants and falsified reports, ignored statutory laws, and denied Plaintiff MJR a fair trial.  Defendant CLC was charged to advocate for Plaintiff MJR's children, but instead it failed to adhere to statutory law and denied the children of a fair hearing/trial, resulting in their removal from their mother.  Defendant CLC did the opposite of its mission.

349.    Defendant HATAMIAN owed Plaintiff MJR a duty to advocate in her interest; instead, Defendant HATAMIAN actively worked against Plaintiff MJR in his legal writings, presentation of evidence, and objecting refused to object to untrue hearsay evidence.

350.299.   Mel Hatamian Defendant HATAMIAN refused to assist in providing arguments for Plaintiff MJR's appeal for mother, refuses to object to hearsay evidence, and refuses and refused to obtain court documents for the mother to Plaintiff MJR's review.  This dereliction and deviation from the standard of care and a failure to exercise reasonable care in fulfilling her his duties has resulted in tremendous loss to mother Plaintiff MJR by way of not having custody of her children, and the financial consequences of fighting a court case in other state Pro Per.

**FIRST** SECOND **AMENDED COMPLAINT FOR DAMAGES**

**93**

300.     Causation:  But for Defendants ignoring statutory laws, denying Plaintiff MJR fair hearings and trial, Plaintiff MJR's children would have never been removed from her, away from their mother and family since July 31, 2019, more than three (3) years ago.

301.     Harm:  As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered economical, psychological, emotional, and physical damages.

302.     Punitive Damages. ... Professional Consequences.  Defendants' acts were intentional, malicious and oppressive, thereby entitling Plaintiffs to recover punitive damages.

303.     As a further direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs are obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiffs.

**TENTH**

**ELEVENTH CAUSE OF ACTION FOR FRAUD UPON THE COURT**

**(Against ALL DEFENDANTSAll Defendants)**

351.304.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

352.305.  Fraud upon the court" makes void the orders and judgments of that court. It is also clear and well-settled California law that any attempt to commit "fraud upon the court" vitiates the entire proceeding.

353.306.  The court workCourt worked together with Defendants to deliberately and intentional without intentionally prevent exculpatory evidence from ever making it tointo the court record.Court Record.  There is evidence that I havePlaintiff MJR has been evaluated by several mental health professionals, including going to therapy and theirDefendant DCFS's professional of choice. These doctors and nurses provided reports

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

94

1  that ~~I~~Plaintiff MJR was completely sane and fit to care for ~~my~~her children, but ~~the~~
2  ~~prosecution and Judge are working overtime to keep~~Defendants collectively kept these
3  documents from making ~~it~~ into the Court Record.  The Court and Defendants committed
4  Fraud Upon the ~~court record~~Court, in an effort to remove Plaintiff MJR's children from
5  her on July 31, 2019, without probable cause.

6  ~~354.~~307.  ~~CHILDREN'S LAW CENTER OF LOS ANGELES deliberately~~Defendant
7  CLC's Attorney, Bashor lied to the ~~court~~Court in order to mislead the ~~court~~Court by
8  stating for the record on December 17, 2021 that the children and ~~foster mom~~Foster
9  Mom, Clark, were not present to testify in court, when indeed ~~I~~they were present in
10 ~~court~~Court and wanted to testify. ~~The children's appointed attorney~~ Bashor had in fact
11 told them to leave and come back later when she ~~called. She~~calls.  Bashor, never called
12 them to come back. When ~~mother~~Plaintiff MJR called ~~the foster mom during court,~~
13 ~~Nakeya~~Clark, she told her that she was still waiting to testify, but was told to come back
14 later.  Mother managed to get Ms. Clark admitted to court although her device was
15 muted.

16   308.        ~~The department of children and family services~~Defendant DCFS's Social
17 Workers wrote Dehumanizing, embarrassing reports about ~~mother~~Plaintiff MJR, which
18 they knew were untrue and phrased it in a way to ~~case mother~~cast Plaintiff MJR in a false
19 light. As a result ~~mother,~~ Plaintiff MJR has suffered and ~~is continuing~~continues to suffer
20 emotional harm. One of the most hurtful things they ~~continue~~continued to say is that ~~I~~
21 ~~am~~Plaintiff MJR is depressed, anxious, delusional among other things.  The legal abuse
22 that ~~mother~~Plaintiff MJR has been put through has caused her to experience emotional
23 harm; yet, they are making it seem like she has a mental disease that is incurable and
24 putting forth ideas that she may harm her children as a result. ~~Mother~~Plaintiff MJR is
25 happy and will continue to be happy when her children are returned and justice is served.

26 ~~355.~~309.  In *Fernandez v. Bailey, Finally,* concealment is a factor that may be taken
27 into account because concealment tactics, including frequent relocations, the use of
28 aliases, and abstaining from school or community activities to avoid detection, may

---

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES
95

preclude a child from forming stable attachments. *Lozano*, 134 S. Ct. at 1236 (*Alito, J.,* concurring). Thus, although analysis of the concealment factor examines the removing parent's behavior, the focus remains on the child's connections to their new environment.

356.310.   In *Heartland Academy Community Church v. Waddle*, Furthermore, Plaintiffs allege in this case that Mr. Waddle procured the orders through misrepresentations and material omissions, actions which are not protected by absolute immunity. "[I]t [is] clearly established law that government officials ' procurement `through distortion, misrepresentation and omission,'. . . of a court order to seize a child is a violation of the Fourth Amendment." *Malik*, (internal citation omitted). See also *Brokaw*, 235 F.3d at 1012 (noting "to the extent the defendants [a social worker and other government officers] knew the allegations of child neglect were false, or withheld material information, and nonetheless caused, or conspired to cause, [the juvenile's ] removal from his home, they violated the Fourth Amendment."). "The fact that the order was allegedly obtained by omissions, rather than affirmative misstatements, is irrelevant, so long as the `omissions are so probative they would vitiate probable cause.'"*Malik191Malik* 191 F.3d at 1316, (quoting *DeLoach v. Bevers31Bevers* 31, Thus, because Mr. Waddle did not merely execute the Juvenile Court's orders to seize the children from Heartland, but instead actually petitioned the court for such orders, as well as misstating material facts to the Juvenile Court Judge and omitting known material facts from his papers presented to the Juvenile Judge, the Court finds that his actions are not protected by the absolute immunity doctrine. As such, the Court will now address the issue of whether he violated the Plaintiffs' Fourth Amendment rights in procuring the orders for removal.

357.311.   Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself. It is where the court or a member is corrupted or

influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

312.      Punitive Damages. ... Professional Consequences.  Defendants' acts were intentional, malicious and oppressive, thereby entitling Plaintiffs to recover punitive damages.

313.      As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered economical, psychological, emotional, and physical damages.

314.      As a further direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs are obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiffs.

**ELEVENTH**

**TWELFTH CAUSE OF ACTION FOR ULTRA VIRES ACTS against ALL DEFENDANTS**
**(Against All Defendants)**

358.315.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

359.316.  An "ultra vires" act is one performed without legal authority; something done which is beyond the scope of a corporation's authority. Board Actions. Associations that act outside their authority may have their actions reversed by the courts.

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**
97

Formatted: Font: Bold
Formatted: Indent: Left: 0"

Formatted: Centered, Don't add space between paragraphs of the same style, Line spacing: single
Formatted: Indent: Left: 0", First line: 0.25"

360.317.  Ultra vires acts are any acts that lie beyond the authority of a corporation to perform. Ultra vires acts fall outside the powers that are specifically listed in a corporate charter or law. This can also refer to any action that is specifically prohibited by the corporate charter.

318.     Defendants did not have legal authority to perform the acts or practices detailed herein; acts performed lie beyond their authority:

319.     Defendant CALIF, acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint, failed to oversee official(s) to properly operate the Foster Care System, including the portions of the system operated by Defendant DCFS, relating to dependency cases, foster care, and termination of parental rights, *inter alia*, pursuant to the Adoption and Safe Families Act and the Family First Prevention Services Act of 2018.

320.     Defendant LAPD, acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint.  Defendant LAPD failed at accomplishing its mission on behalf of Plaintiffs; its mission to safeguard the lives and property of the people they serve, to reduce the incidence and fear of crime, and to enhance public safety while working with the diverse communities to improve their quality of life.

321.     Defendant LA COUNTY, acting under color of law, is a government that is defined and authorized under the California Constitution, California law, and the Charter of the County of Los Angeles.  The County government provides countywide services such as … law enforcement, jails, and social services.  Defendant LA COUNTY bears responsibility, in whole or in part, for the acts complained of in this Complaint.  Its government agencies failed Plaintiffs.

322.     Defendant DCFS, acting under color of law, bears responsibility, in whole or in part, for the acts complained of in this Complaint, and has a special relationship with Plaintiff MJR and owed a duty to comply with State laws, Federal Laws and the U.S. Constitution.  Defendant DCFS's operations involve investigating child welfare and

**FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES**
**98**

abuse allegations, foster care, and adoption.  Defendant DCFS breached its duties owed
to Plaintiff MJR by taking Plaintiff MJR's children and placed them with foster parents
or persons other than the biological parents without probable cause.  Defendant DCFS's
Deputy County Counsel, Dependency Investigators, and Social Workers falsified reports
and suppressed material evidence.

323.    Defendant CLC, acting under color of law, bears responsibility, in whole or
in part, for the acts complained of in this Complaint, provides legal representation for
children and youth under the jurisdiction of the dependency court.  "Every staff member
at CLC contributes to infusing every proceeding and decision that's made with the
premise that kids should be with their parents whenever possible"; yet, Plaintiff MJR
children were removed and she was victimized; denied her right to be heard and denied
her right to a fair trial.

324.    Punitive Damages. ... Professional Consequences.  Defendants' acts were
intentional, malicious and oppressive, thereby entitling Plaintiffs to recover punitive
damages.

325.    As a direct and proximate result of the aforementioned conduct of
Defendants, Plaintiffs have suffered economical, psychological, emotional, and physical
damages.

326.    As a further direct and proximate result of the aforementioned conduct of
Defendants, Plaintiffs are obligated to retain legal counsel and to expend or incur liability
for costs of suit, attorney's fees, and related expenses in an amount not yet fully
ascertained, but which will be submitted at time of trial for recovery by Plaintiffs.

**TWELFTH**

~~THIRTEENTH~~ **CAUSE OF ACTION FOR DECLARATORY RELIEF**
**(Against All Defendants)**

327.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as
though fully set forth herein.

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**
99

**ALL DEFENDANTS**

~~361.1.~~   ~~Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.~~

328.   The Declaratory Judgement Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

~~362.~~   In order to award declaratory relief, the Court must first determine whether there is "a case of actual controversy." *Id.*; see also *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 893 (9th Cir. 1986).  This requirement is "identical to the Article III's Constitutional Case or Controversy Requirement." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994) (citing *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981)). ~~"[D]eclaratory relief is designed in a large part as a practical means of resolving controversies, so that parties can conform their conduct to the law and prevent future litigation."  *Meyer v. Sprint Spectrum L.P., (2009) 45 Cal.4th 634, 648.*~~

329.   Because standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)." *White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).*

330.   A plaintiff has the burden of establishing the elements required for standing . . . ." *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996); see also In *re Dynamic Random Access Memory* (DRAM) *Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008) ("The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction.").  Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**

**100**

the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

363.331.   An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning respective rights and duties under the provisions of Dependency Court.Federal and State Laws.

364.      Plaintiff respectfully asks the court to adjudicate or make an opinion on this Federal question of law: "Are the current juvenile dependency laws under California state statutes unconstitutional?" [ See Troxel v. Granville (2000) 530 US 57, 147 L. Ed 2d 49, 120 S. Ct. 2054]

332.      In determining whether there is a case or controversy, the test is whether the alleged facts demonstrate there is a substantial controversy between parties, with adverse legal interests, of such immediacy and existence so to warrant a declaratory judgment.

365.333.   An actual LEGAL CONTROVERSYlegal controversy and DISPUTE existsdispute exist between plaintiffs against the defendant, State of CaliforniaPlaintiffs and Defendants as to the unconstitutionality conduct of Defendants, resulting in Plaintiff MJR being arrested and her children detained and placed in the Foster Care System, away from their family since July 31, 2019, more than three (3) years, without probable cause, violating their right to Due Process, the Fourteenth Amendment of the Juvenile Dependency Laws in CaliforniaUnited States Constitution, which reflect a VIOLATION OF a PARENT'S RIGHT TO DUE PROCESS which entitle entitles a parent to bring up his or her child without governmental interference.

334.      (1) Issue a declaratory judgment that arresting Plaintiff MJR and detaining her children on July 31, 2019 was arbitrary and capricious, not in accordance with law, and Defendants acted in excess of statutory authority; (2) Issue an order vacating and setting aside all orders and judgment(s) against Plaintiff MJR and return her children home forthwith; (3) Issue a declaratory judgment that all Defendants violated Plaintiff

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES
**101**

MJR and her children's United States Constitutional Rights, Due Process Clause; (4)
Issue an order enjoining Defendants to stop all prosecutory misconduct; otherwise,
unlawful conduct, against Plaintiffs and children.

366.     **THIRTEENTH** California statutes, Welfare and Institutions Codes §§ 300
et. seq. entitle a county, a county employee and social worker to "illegally search
and seize", interrogate a child without being in the presence of his or her parent,
and without having the "right to have counsel present", and without having the
right to retain counsel of choice, and subsequently allows a child to be detained as
if "incarcerated" for a crime duly committed without committing a crime, "without
having the right to bail", and to be indefinitely "detained or incarcerated" in a
foster home or foster care facility "up until the age of 21", and entitles the County
and Social Services to use the sole basis of "hearsay evidence" of a child, without
the parents having the right to confront and cross-examine the child, as a legal
grounds to TAKE A PARENT'S CHILD FROM THE PARENT'S CUSTODY
AND as a legal basis to terminate a parent's parental rights. These Juvenile
Dependency laws are controversial because they violate the "parent's right of
DUE PROCESS" in their right to bring up their children without governmental
interference.

367.     Additionally, another controversy arises, as to the County employees' and
Social Workers' motives and corrupt customs, policies and unethical practices, as
their intent is to JUSTIFY the entity for which employs them in the
INHERITANCE and AWARDS of government funds and allocation of federal tax
dollars to fund their corrupt system and secure their jobs.

368.     The abolishment or modification of these juvenile dependency laws and a
declaratory finding in this dispute and controversy could resolve the current state
budget deficit and re-allocate funds for areas that would better serve the best
interests of children in this state.

**~~FOURTEENTH~~ CAUSE OF ACTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION ~~Against ALL DEFENDANTS~~**

**(Against All Defendants)**

335.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

336.    Injunctive relief is generally only granted in extreme circumstances. The party seeking a preliminary injunctive relief must demonstrate: (1) irreparable injury in the absence of such an order; (2) that the threatened injury to the moving party outweighs the harm to the opposing party resulting from the order; (3) that the injunction is not adverse to public interest; and (4) that the moving party has a substantial likelihood of success on the merits. In considering these factors, courts have been described to apply a "sliding scale" approach where the more likely a movant will succeed on the merits, the less irreparable harm (to the movant) needs to be shown in granting the injunction. There is no mathematical means of balancing these factors, therefore, the "sliding scale" approach is based on a court's intuitive judgement. It is worth noting that courts will not find irreparable harm where the damages sustained are calculable. New York has held that in such situations, monetary damages serve as an adequate remedy.

337.    Pursuant to Federal Rules of Civil Procedure 65, (b)(3): …the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

338.    Plaintiff  MJR will be irreparably harmed if a Preliminary Injunction is not issued, because her children was removed from her July 31, 2019 and placed in the Foster Care System, away from family, for over three (3) years.

---

**~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES**

**103**

339.    A temporary injunction differs from a temporary restraining order, in terms of the duration of the restraint granted by a trial court's interlocutory order. Unlike a temporary restraining order, which is limited in duration, a temporary injunction is effective for as long as the Plaintiffs' cause of action remains pending and until final judgment has been entered on the merits of Plaintiffs' cause of action.

340.    Temporary injunctions, unlike temporary restraining orders, cannot be founded simply upon sworn pleadings or affidavits, but require the presentation of evidence. The standard for Temporary Injunction will be satisfied after hearing and presentation of the evidence to the Court.

341.    The wrongful conduct of the above specified Defendants, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiffs.  Plaintiffs will not have their right to bring up their children without the interference of the government.  Plaintiffs have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent further irreparable damage to Plaintiffs.

342.    Plaintiffs have suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined and it is impossible for Plaintiffs to determine an amount of damage that they have and will continue to suffer.

343.    Plaintiffs have alleged causes of actions against Defendants, as indicated in their Verified Second Amended Complaint for Damages, herein, demonstrating a probable right to relief and likelihood of success on the merits that Plaintiffs will suffer imminent and irreparable harm without Court intervention.

344.    Accordingly, Plaintiffs request that the Court provide temporary injunctive relief and a permanent injunction requiring Defendants and all others acting in concert with to:

> a) Stop, immediately, the current detention and placement of Plaintiff MJR's minor children and return them to her forthwith;

---

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**

**104**

b) operate the Foster Care System in accordance with the State and Federal Laws in effect;

c) stop the Foster Care System Operators and affiliates from ignoring the procedural and substantive Due Process Rights of parents, children, and other relatives;

d) require the Foster System Operators to immediately and promptly provide Juvenile Dependency Court Judges and birth parents with all exculpatory evidence;

e) compel the Foster System Operators to refrain from using perjured testimony in Juvenile Dependency Court proceedings and to notify the local State Attorney of any perjured testimony that has been offered before the Court;

f) Prohibit Foster System Operators from fabricating false reports in order to try to disqualify relatives as caregivers;

g) require the Foster System Operators to immediately provide any relative disqualified from serving as a relative caregiver the information needed to correct the errors in the reports;

h) require Foster System Operators to promptly correct false statements in home studies and to remove those whom they incorrectly listed on the abuse registry, and never use again;

i) require all attorneys and social workers on behalf of the California Foster Care System to submit an affidavit of personal knowledge certifying the facts in each case with out-of-state relatives of children in State Foster Care, to timely demonstrate California's compliance, at the time of shelter and the first hearing after a TPR judgment, with respect to the notice and hearing requirements of California's Uniform Child Custody Jurisdiction Enforcement Act; and

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

**105**

j)   a Temporary Injunction be issued, after notice to Defendants and an evidentiary hearing, restraining Defendants from directly or indirectly engaging in any of the actions discussed above during the pendency of this case.

**A. The Preliminary Injunction Should be Granted**

345.   Traditional equitable considerations weigh in favor of granting the preliminary injunction. The evidentiary record demonstrates that: Plaintiffs are likely to succeed on the merits of the claim, Plaintiffs are likely to suffer irreparable harm in the absence of preliminary injunctive relief, the balance of the equities tip in Plaintiffs' favor, and an injunction is in the public interest.

346.   In determining whether to grant a motion for a preliminary injunction, courts will generally consider the following equitable factors: (a) whether the moving party is likely to succeed on the merits, (b) whether the moving party is likely to suffer irreparable harm in the absence of preliminary relief, (c) whether the balance of equities tips in the moving party's favor, and (d) whether an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 14 555 U.S. 7, 20 (2008).

**B. Preliminary Injunctive Relief is Necessary to Protect Against Further Irreparable Harm**

347.   The requested preliminary injunction is necessary to prevent irreparable harm during the pendency of the litigation. Without this relief, the court will be unable to render a meaningful judgment on the merits.

369.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

**106**

370.    Beginning on or about Feb. 29, 2016, JERRY BROWN; PHILIP L. BROWNING; COUNTY OF LOS ANGELES; Los Angeles Department of Children and Family Services; Superior Court of California for the County of Los Angeles; MARY THERESA MEZA; CARVIN HALL; SONIA VALIENTE took plaintiff's children from her possession and control without cause in violation of Plaintiff's due process right to bring up her children without governmental interference.

A.  PRELIMINARY INJUNCTIVE RELIEF IS NECESSARY TO PROTECT AGAINST IRREPARABLE HARM.

371.1.  The requested preliminary injunction is necessary to prevent irreparable harm during the pendency of the litigation. Without this relief, the court will be unable to render a meaningful judgment on the merits.

372.C.    **The Court Has** *the* **Discretion to Grant Preliminary Injunctive Relief**.

348.    Plaintiff's motionPlaintiffs request for a preliminary injunction is properly within the Court's discretion. The preliminary relief requested is of the same character as the final relief sought in the complaint.  The court has the discretion to issue the preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. The injunctive relief requested does not exceed the court's jurisdiction or conflict with any federal law.

349.    Pursuant to Federal Rule of Civil Procedure 65, a federal court has the authority to issue a preliminary injunction in a case where it has jurisdiction. The court must have personal jurisdiction over the defendant as well as subject matter jurisdiction to issue the injunction. *Enterprise Intern. v. Corporacion Estatal*, 762 F.2d 464, 470 (5th Cir. 1985); Jones v. Cawley, 10-CV-712, at *2 (N.D.N.Y. June 21, 2010).

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

107

373. ***The Court Has Discretion to Issue the Preliminary Injunction***

1. The court has the discretion to issue the preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. The injunctive relief requested does not exceed the court's jurisdiction or conflict with any federal law.

374.1. Pursuant to Federal Rule of Civil Procedure 65, a federal court has the authority to issue a preliminary injunction in a case where it has jurisdiction. The court must have personal jurisdiction over the defendant as well as subject matter jurisdiction to issue the injunction. *Enterprise Intern. v. Corporacion Estatal*, 762 F.2d 464, 470 (5th Cir. 1985); Jones v. Cawley, 10-CV-712, at *2 (N.D.N.Y. June 21, 2010).

375. ***The Court Has Discretion to Issue the Preliminary Injunction***

The court has the authority to issue the preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure and state substantive law. The requested injunctive relief does not exceed the court's jurisdiction, and it is a proper remedy for Plaintiffs' state law claims.

376.350. For cases that are in federal court based on diversity jurisdiction, a court will consider state law in determining the substantive legal issues associated with the parties' dispute and will apply federal procedural law to determine whether the preliminary injunction should issue. *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 15 (2d Cir. 1987); *System Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1141 (3d Cir. 1977).

377.351. The procedure for obtaining an injunction is governed by federal law. Thus, if an issue pertaining to the preliminary injunction is procedural, federal law controls and overrides any contrary state law. *Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991) (holding that Rule 65 of the Federal Rules of Civil Procedure controlled whether a preliminary injunction could issue and rejecting the argument that state law should govern this issue in a diversity case); *Curtis 1000, Inc. v.*

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

**108**

*Youngblade*, 878 F. Supp. 1224, 1244 (N.D. Iowa 1995) (holding that federal procedure, not state law, governed whether a preliminary injunction should issue).

~~*Consolidation would Deprive*~~

~~378.~~**D.    Plaintiffs** ~~*of a Jury Trial on*~~**will Experience Irreparable Harm in** the ~~*Merits*~~ **Absence of the Preliminary Injunction**

~~1.~~ The ~~evidentiary record establishes sufficient grounds for granting PLAINTIFFS 'requested preliminary injunction, and~~evidence demonstrates that Plaintiffs ~~can present any additional evidence requested by the Court at the hearing. However, consolidating the hearing on the preliminary injunction with a trial on the merits would be improper, as Plaintiffs have not waived its right to a jury trial.~~

~~379.1.~~ ~~A request for a preliminary injunction that could negate the court's authority to render a final judgment in the action may be handled by the court as a request for permanent injunctive relief. In such a case, the court has the discretion to consolidate a hearing on a motion for a preliminary injunction with a trial on the merits. Fed. R. Civ. P. 65(a)(2).~~

~~380.        *The preliminary injunction should be granted*~~

~~Traditional equitable considerations weigh in favor of granting the preliminary injunction. The evidentiary record demonstrates that: Plaintiffs are likely to succeed on the merits of the claim, Plaintiffs are likely to suffer irreparable harm in the absence of preliminary injunctive relief, the balance of the equities tips in the moving party's favor, and an injunction is in the public interest.~~

~~FIRST~~SECOND **AMENDED COMPLAINT FOR DAMAGES**

**109**

381.1. In determining whether to grant a motion for a preliminary injunction, courts will generally consider the following equitable factors: (a) whether the moving party is likely to succeed on the merits, (b) whether the moving party is likely to suffer irreparable harm in the absence of preliminary relief, (c) whether the balance of equities tips in the moving party's favor, and (d) whether an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 14 555 U.S. 7, 20 (2008).

*382.      PLAINTIFFS will experience irreparable harm in the absence of the preliminary injunction*

352.    The evidence demonstrates that PLAINTIFFS cannot wait for relief from a final judgment on the merits. The irreparable injury that ~~PLAINTIFFS~~Plaintiffs would suffer in the interim would render any final judgment a nullity, and money damages would not be able to compensate Plaintiffs for that harm.

383.353.    An irreparable injury is an injury for which the court could not compensate the ~~moving~~Plaintiff if the ~~moving~~Plaintiff prevailed in the final judgment. Injuries that are generally not considered to be "irreparable" include lost income and other economic losses that ~~I~~are calculable and compensable by monetary damages. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).

384.1.    *An Adequate Remedy at Law is Unavailable for Plaintiffs' Harms*

There is no adequate remedy at law for Plaintiffs' harms. Any award of damages would not fully compensate Plaintiffs for the harm caused by ~~DEFENDANTS'~~Defendants' conduct.

385.    An adequate remedy at law may be deemed unavailable if legal redress may be obtained only by commencement of multiple actions, such

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES

110

as when the defendant repeatedly commits the allegedly harmful acts. *Ecolab Inc. v. Paolo*, 753 F. Supp. 1100, 1110 (E.D.N.Y. 1991).

~~386.~~      Each day that the Defendants delay their compliance with controlling laws, the children and their ~~Families~~families are further damaged. There is no plain, adequate, or complete remedy at law, as the ordeals ~~the Plaintiff Families~~Plaintiffs and her family have encountered, as courthouse doors and case remain locked and case information showing the wrongful deeds of the Foster System remain hidden by ~~the DEFENDANTS'~~Defendants' Foster System Operators.

~~387.~~2.      *The Parties' Relative Hardships Weigh in Favor of the Preliminary Injunction*

The evidence demonstrates that the hardship to ~~PLAINTIFFS~~Plaintiffs from denying the

injunction would outweigh the hardship experienced by ~~DEFENDANTS~~Defendants if the injunction were granted. The preliminary injunction is therefore warranted by the parties' relative hardships.

~~388.~~    In deciding a motion for a preliminary injunction, the court will assess the relative

hardships faced by the parties. This assessment involves balancing the injury faced by the moving party against the injury that would be sustained by the opposing party if the injunction were granted. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

~~389.~~E.      **The Injunction Should Be Granted, as ~~PLAINTIFFS~~Plaintiffs are Likely to Succeed on the Merits**

354.   The evidence demonstrates that ~~PLAINTIFFS~~Plaintiffs are likely to succeed on the merits of the underlying claims. At this stage, ~~PLAINTIFFS~~Plaintiffs do not need to demonstrate absolute certainty of success on its claims, but the evidence demonstrates that ~~PLAINTIFFS~~Plaintiffs have a strong likelihood of success.

~~390.~~355.   This factor weighs in favor of granting preliminary injunctive relief. In determining whether to grant a motion for a preliminary injunction, a court must assess the likelihood that the moving party will ultimately succeed on the merits. *Munaf v.Geren*, 553 U.S. 674, 3 (2008) (holding that it is abuse of discretion to grant preliminary injunction without considering merits of underlying claim).

~~391.~~356.   While the moving party must set forth evidence to support a likelihood of success on the merits, this factor is not dispositive in determining whether to grant injunctive relief. The moving party does not need to demonstrate an absolute certainty of success in order to prevail. *Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985).

**F.  Permanent Injunction Relief**

357.   "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. c. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993).

358.   If Plaintiffs can demonstrate that they would be greatly harmed by the Court's failure to grant an injunction, then the determination of success on the merits bears much less weight in the determination to grant an injunction. *Robbins v. Superior Court*, 38 Cal. 3d 199 (1985)

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES

112

**G. Consolidation would Deprive Plaintiffs of a Jury Trial on the Merits**

359.    The evidentiary record establishes sufficient grounds for granting Plaintiffs' requested preliminary injunction, and Plaintiffs can present any additional evidence requested by the Court at the hearing.  However, consolidating the hearing on the preliminary injunction with a trial on the merits would be improper, as Plaintiffs have not waived its right to a jury trial.

360.    A request for a preliminary injunction that could negate the court's authority to render a final judgment in the action may be handled by the court as a request for permanent injunctive relief.  In such a case, the court has the discretion to consolidate a hearing on a motion for a preliminary injunction with a trial on the merits. Fed. R. Civ. P. 65(a)(2).

**392.H.    Because the Statute Violates the First Amendment, the Injunction Must be Granted.**

PLAINTIFFS

361.    Plaintiffs have demonstrated a strong likelihood of success on the merits of its First Amendment claims.  Having made this showing, it is DEFENDANTSDefendants burden to demonstrate why an injunction should not issue.  Because DEFENDANTS.Defendants cannot justify the statute'sstatute infringement of First Amendment rights, the Preliminary injunction must be granted.

393.362.    In a First Amendment caseIn Plaintiffs' Second Amended Complaint, a showing of a substantial likelihood of success on the merits often also establishes irreparable harm. Thus, a showing of substantial likelihood of success on the merits can be the determining factor that warrants the issuance of a preliminary injunction. *Sindicato Puertorriqueño De Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir.  2012); Phelps-Roper v. Nixon, 509 F.3d 480, 485 (8th Cir. 2007).

---

394.363.    When thea plaintiff alleges that a statute violates 1 the First Amendment to the United States Constitution and seeks preliminary injunctive relief on that ground, the burden shifts to the government to show why an injunction should not issue. Specifically, the government must demonstrate that the plaintiff is unlikely to succeed on the merits of the First Amendment claim because the statute is constitutional. *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 666 (2004) (government burden of proving constitutionality of content-based restrictions on speech).

## 395.I.    The Injunction is Narrowly Tailored to Remedy Specific Harms

364.    The requested preliminary injunction is narrowly tailored to enjoin only DEFENDANTSDefendants and to remedy only the specific harms established by PLAINTIFFSPlaintiffs. It is therefore proper in scope and should be granted.

396.    A court will grant a preliminary injunction when necessary to protect civil rights. *Clemons v. Board of Education of Hillsboro*, 228 F.2d 853, 857 (6th Cir. 1956) (injunction will issue to protect and preserve basic civil rights); *Cent. Presbyterian Ch. v. Black Liberation Front*, 303 F. Supp. 894, 901 (E.D. Mo. 1969) (preliminary injunction granted to enjoin violation of civil rights laws guaranteeing plaintiffs' right to use their property for religious services).

397.366.    Irreparable injury may be presumed in cases involving certain deprivations of civil rights, including deprivation of First Amendment rights. *Elrod v. Burns*, 427 U.S. 47, 373 (1976).

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES

114

367.     A court will find that the civil rights Plaintiffs have established a likelihood of success on the merits when Defendant's proposed actions will clearly violate constitutionally protected rights. *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) (preliminary injunction was granted when plaintiffs established First Amendment violations); *American Federation of Government Employees, Afl-1 Cio, Council 33 v. Meese*, 688 F. Supp. 547, 548 (N.D. Cal. 1988) (compulsory drug testing enjoined as violation of Fourth Amendment "unless and until" plaintiff can show that such testing supersedes constitutional rights of employees).

399.     Plaintiff Families further request the Court to provide temporary injunctive relief and a permanent injunction requiring the Defendants to operate the foster care system in accordance with the state and federal laws in effect and to stop ignoring the procedural and substantive due process rights of Florida's Children and their Birth Parents and other relatives.

400.     The injunction must stop, immediately, the current detention and placement of minor children.  The injunction should compel Foster System Operators to refrain from using perjured testimony in dependency proceedings and to notify the local state attorney of any perjured testimony that is offered.

401.     Foster System Operators should be required to immediately and promptly provide dependency judges and Birth Parents with potentially exculpatory evidence not offered at trial.

402.     Foster System Operators should be prohibited from fabricating false reports in order to try to disqualify relatives as caregivers, and the Foster System Operators should be required to immediately provide any relative disqualified from serving as

**SECOND AMENDED COMPLAINT FOR DAMAGES**

115

a relative caregiver the information needed to correct the errors in the system fabricated reports.

403.     The injunction should require Foster System Operators to promptly correct false statements in home studies, and to remove those whom they listed on the abuse registry to remove the falsely labeled persons from the registry, and delete, and not use again, the false statements, including those relating to Melody Rodgers.

404.     The injunction should require all attorneys social workers on behalf of the California foster care system to submit an affidavit of personal knowledge certifying the facts in each case with out of state relatives of children in state foster care, to timely demonstrate California's compliance, at the time of shelter and the first hearing after a TPR judgment, with respect of the notice and hearing requirements of California's Uniform Child Custody Jurisdiction Enforcement Act.

**FIFTEENTH CAUSE OF ACTION FOR ~~CONSPIRACY~~ TO PARTICIPATE IN RACKETEERING; VIOLATION OF RICO ACT under 18 USC § 1962 [d] Against ALL DEFENDANTS**

~~405.~~1.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

406.     On or about Feb. 29, 2016, defendants engaged in a conspiracy to violate RICO. This means that plaintiff allege that the defendants conspired to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity and conspired to violated Plaintiff's Civil Rights. See 42 USC § 1985[3].

407.     As a result of the acts of defendants, plaintiff suffered damages in an amount of $500,000.

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES

116

408. The circumstances of the violation consisted of the defendants filing of a false Juvenile Dependency Petition, in contrary to legislature's intent for enacting the laws under Welfare and Institutions Codes § 300, et. seq., with the motive of milking the federal government for Financial Support, based on the false premises that the County and State needed funds to "protect" plaintiff's minor children.

409. Defendants have a pattern, custom and practice of filing false Juvenile Dependency Petitions, or twisting the meaning of "failure to protect" or "likelihood of emotional or physical harm" as the basis of defrauding the Federal Government and Tax payers of millions of dollars.

410. This custom and policy of Defendants is a violation of the RICO Act.

WHEREFORE, plaintiff prays judgment against defendant[s, and each of them,] as follows:

411. For actual damages in the amount of $500,000.00;

412. Plaintiff demands that defendants stop their (threatened) conduct defendants refusal, and resulting necessity for prompt judicial action to protect plaintiff. On or about Feb. 29, 2016, Plaintiff demanded that JERRY BROWN; PHILIP L. BROWNING; COUNTY OF LOS ANGELES; Los Angeles Department of Children and Family Services; Superior Court of California for the County of Los Angeles; MARY THERESA MEZA; CARVIN HALL; SONIA VALIENTE stop their conduct. Defendants, and each of them, have refused and still refuse to refrain from their threatened conduct.

413. Defendants' [threatened] wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to plaintiff.

414. Plaintiff has no adequate remedy at law for the injuries of "threatened forced eviction".

415. As a proximate result of defendants' wrongful conduct, plaintiff's health has been damaged in the sum of "at least" $50,000. Plaintiff will be further damaged in like manner so long as defendants' conduct continues. The full

**FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES**

**117**

amount of this damage is not now known to plaintiff, and plaintiff will amend this complaint to state this amount when it becomes known or on proof of the damages.

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment against all Defendants, as to all causes of action, as follows:

1.      A preliminary and permanent injunction against Defendants and its directors, officers, agents, employees and representatives and in and all persons acting in concert with them from engaging in each of the unfair, unlawful, and fraudulent business practices set forth herein;

2.      An Injunctive relief, both preliminary and permanent, as allowed by law, (including preliminary injunctive relief to be based upon a separate application);

2.3.    A declaratory judgment that the practices complained of in this Complaint are unlawful and violate 42 U.S.C. 1988;

3.4.    Plaintiff suffered damages as a result of the Violations of Civil Rights by Defendants in the amount of $500,00.00 $1,000,000.

4.5.    Plaintiffs pray for a judgment in the amount of $500,000.00 $1000,000.00 against each defendant Defendant for this cause of action;

5.6.    Plaintiffs suffered damages as a result of the Conspiracy Against Plaintiff's Rights by Defendants in the amount of $5,000.000.00 $1,000,000.00.

6.7.    General damages in the amount of $500,000.00 to be proven for all other damages deemed appropriate by the courts and as allowed by statute;

8.      Special damages according to proof;

7.9.    Plaintiff demands a jury trial as to the issues so triable;

8.1.    Special damages according to proof.

**FIRST SECOND AMENDED COMPLAINT FOR DAMAGES**

**118**

9.10.   AsPunitive damages as allowed by law, as against only the individual

defendantsDefendants and not any municipality, a total of $8,000,000.00;

10.11.   Attorneys fees pursuant to 42 U.S.C. § 1988, and any other appropriate

statute;

11.   Injunctive relief, both preliminary and permanent, as allowed by law (including preliminary injunctive relief to be based upon a separate application);

12.     Costs of suit incurred herein; and

13.     Such other and further relief as the Court deems proper.

Plaintiff hereby **DEMAND FOR JURY TRIAL**.

DATED:   July 25, June 15, 2023              THE LAW OFFICES OF ANGELA
                                             SWAN, APC



                                    By: _____
                                         Angela Swan,
                                         Attorney for PlaintiffPlaintiffs

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

**119**

## VERIFICATION

I am the Plaintiff in this action.  I have read the foregoing VERIFIED SECOND AMENDED CIVIL COMPLAINT FOR DAMAGES, and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*Executed on      June 15, 2023, 2023 at Torrance, California.*

BY:    /s/Melody J. Rodgers
MELODY J. RODGERS, Plaintiff


BY:    /s/Judy G. Rodgers
JUDY G. RODGERS, Plaintiff


BY:    /s/Lucille D. Gay
LUCILLE D. GAY, Plaintiff

FIRSTSECOND **AMENDED COMPLAINT FOR DAMAGES**

**120**